IN THE DISTRICT COURT IN AND FOR MUSKOGEE COUNTY
STATE OF OKLAHOMA

JACKIE GAIL CURTIS, individually; )
DONNIE R. YARBROUGH and CATHY )
YARBROUGH, individually and as husband )
and wife; Donnie R. Yarbrough and Cathy )
Yarbrough d/b/a D&C Custom Brush Hogging; )
COLTON YARBROUGH, individually; )
DALTON YARBROUGH, individually; )
JESSICCA YARBROUGH, individually, and as )
Class Representative, on behalf of herself and all )
others similarly situated: )
GARRETT KIZZIA, individually; )
ROBERT BRUCE FISHER, individually; )
The ESTATE OF BILLY TERRILL KIZZIA, Sheila )
Kizzia as Administrator of the Estate of Billy )
Terrill Kizzia (deceased); SHEILA KIZZIA, )
individually and wife of Billy Terrill )
Kizzia (deceased); DAN ROSSON, )
a/k/a WILLIAM D. ROSSON, )
individually: Dan Rosson d/b/a ROSSON )
SPEED & MARINE; Dan Rosson d/b/a )
R & S TRACTORS; DANNY KIZZIA, individually, )
RITA BALLINGER, individually; THE ESTATE )
OF JOESEPH SCHMIDGALL, (deceased); )
STEVEN L. HINDS, individually, and as Class )
Representative, on behalf of himself and all others )
similarly situated, and TAWNYA HINDS, )
individually, )
)
Plaintiffs, )
)
VS. ) Case No. CJ-2452
) JURY DEMAND
FIRSTAR FINANCIAL CORPORATION, an )
Oklahoma Corporation; FIRSTAR BANK, an )
Oklahoma Bank; FIRSTAR BANK, as )
successor by merger to Fort Gibson State Bank; )
FORT GIBSON STATE BANK, an )
Oklahoma Bank; TONY STOCKTON, deceased )

FILED BY ROBYN BOSWELL
DISTRICT COURT CLERK

FEB 20 2024

MUSKOGEE COUNTY, OK

1

Exhibit 1 Page 1 of 263

a/k/a ANTHONY RAY STOCKTON; FORT )
GIBSON BANCSHARES, INC.; an Oklahoma )
Corporation; THREE RIVERS )
BANKSHARES, INC., an Oklahoma )
Corporation; SUSAN CHAPMAN, individually )
And as Vice President of Fort Gibson State )
Bank; MATT HENDRIX, individually and as )
Officer of Fort Gibson State Bank, Firstar Bank )
and Fort Gibson Bancshares, Inc. )
)
              Defendants.              )

## PETITION

Plaintiffs, Jackie Gail Curtis, ("Jackie"), individually, Donnie R. Yarbrough, ("Donnie"), and Cathy Yarbrough, ("Cathy"), collectively ("the Yarboroughs")" individually and doing business as D & C Custom Brush Hogging, ("D & C"), Colton Yarbrough, ("Colton"), individually, Dalton Yarbrough, ("Dalton"), individually, Jessicca Yarbrough, ("Jessicca"), individually, (Garrett Kizzia, ("Garrett"), individually, Robert Bruce Fisher, ("Robert F."), individually, The Estate of Billy Terrill Kizzia, ("Kizzia Estate"), Sheila Kizzia, individually and as administrator of the Estate of Billy Terrill Kizzia, Dan Rosson, ("Dan") individually and doing business as Rosson Speed and Marine, ("Rosson Marine") and R & S Tractors, ("R & S"); Danny Kizzia, ("Danny"), individually, Rita Ballinger ("Rita"), individually, Joe Schmidgall, ("Joeseph"), individually, Steven L. Hinds, ("Steven"), and Tawnya Hinds, ("Tawnya"), by and through their attorneys, James Wilcoxen, Drew Wilcoxen, Wilcoxen and Wilcoxen and Jeff Potts, Jeff Potts Law Office, petitioning against defendants Firstar Financial Corporation, ("Firstar Financial"), Firstar Bank ("Firstar"), Firstar Bank, as successor by merger to Fort Gibson State Bank

2

Exhibit 1 Page 2 of 263

("Firstar Bank"), Fort Gibson State Bank ("Ft. Gibson State"), collectively, (Merged Banks"), Tony Stockton, a/ka Anthony Ray Stockton, deceased, ("Tony"), Fort Gibson Bancshares, Inc. ("Ft. Gibson Bancshares"), Three Rivers Bankshares, Inc. ("Three Rivers"), Susan Chapman ("Chapman") and Matt Hendrix ("Hendrix") alleges as follows:

## Nature of the Action

Nineteen bank customers at the former Fort Gibson State Bank – Jackie, Donnie, Cathy, D & C Brush Hogging, Colton, Dalton, Jessicca, Garrett, Robert F., the Kizzia Estate, Sheila, Dan, Rosson Speed and Marine, R&S Tractor, Danny, Rita, Joseph, Steven and Tawnya – bring this action against individuals, estates and corporate entities that conspired and violated both state and federal laws, thereby damaging the Plaintiffs, as well as other bank customers by the defendant's actions. Tony Stockton, deceased, Susan Chapman and Matt Hendrix directed and controlled secret agreements with each other to defraud and steal money from over 140 bank customers in an amount in excess of four million seven hundred thousand dollars – including the fourteen bank customers in this action. Through a series of fraudulent schemes, fabricated documents and cruel deceptive tactics, the Defendants unlawfully obtained the opportunity to steal money and property from the Plaintiffs. The Defendants fraudulently used their access to bank records, the bank's perceived goodwill in the community, the mental and physical frailties of the Plaintiffs, and the trust all the Plaintiffs placed in their local bankers to steal their money and property right under their noses. So stealth were the Defendants at

Exhibit 1 Page 3 of 263

their racket, had Tony not unexpectedly died and Chapman had not taken a required weeks' vacation, the fraud might have never been discovered. With two of the three co-conspirators out of the bank – Hendrix was left holding the bag unexpectedly. The Plaintiffs seek to enjoin the Defendants and recover the damages Plaintiffs suffered because of the schemes under section 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and title 12 O.S.A. §12-2023 regarding class actions.

## Jurisdiction and Venue

1. This Court has jurisdiction over federal law claims under 28 U.S.C. § 1331 and 18 U.S.C. §1965(a).

2. State courts have concurrent jurisdiction over federal civil RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 456 (1990).

3. The statute of limitations for a civil RICO claim is four (4) years. *Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996).*

4. The statute of limitations regarding the class action is during the relevant time period, but in most instances, the wrongful acts are continuous and ongoing.

5. Venue is proper in the District Court of Muskogee County, State of Oklahoma pursuant to 28 U.S.C. § 1391 and U.S.C. § 1965 because the Defendants reside in, are found in, have an agent in, and or transact affairs in Muskogee County, State of Oklahoma where a substantial part of the events complained occurred.

4

Exhibit 1 Page 4 of 263

6. The federal courts have uniformly held that regardless of the running of the state statute of limitations, a defendant is still "chargeable" with the state offense within the meaning of 18 U.S.C. § 1961(1)(A). See cases cited in *United States v. Licavoli*, 725 F.2d 1040, 1046-47 (6th Cir.), *cert. denied*, 467 U.S. 1252 (1984).

7. The class action section of this petition is governed by Oklahoma law pursuant to title 12 O.S.A. § 12-2023.

## Parties

8. Plaintiff Jackie Gail Curtis is a 79-year-old female retiree living on social security in Braggs, Oklahoma in Muskogee County. Jackie thought she was a special friend and customer since Defendant Chapman would hold annual birthday parties for her at the Fort Gibson State Bank. Not realizing birthday parties at a bank by your banker is not normal operating procedure for most bank customers. Jackie trusted Defendant Chapman not only as her banker – but as her friend – she thought. Jackie was shocked to learn what fraudulent banking schemes the Defendants had done to her. Jackie has had several heart attacks and heart surgery due to the Defendant's action against her.

9. Plaintiff Donnie R. Yarborough was the City of Fort Gibson's Chief of Police and was in the bank almost daily either professionally or personally. Donnie and his wife Cathy live in Muskogee, Oklahoma in Muskogee County. Donnie is the father of Colton and Dalton Yarbrough. Months later, Hendrix tried to

5

Exhibit 1 Page 5 of 263

put some stolen money back into Donnie's bank account while the Yarboroughs were on vacation. Donnie never suspected he would be a victim of Defendant's fraudulent schemes. Donnie & Cathy also ran a brush hogging business. Donnie has been hospitalized due to the stress to his heart from the actions of the Defendants. Donnie has been wrongfully sued by the Defendants and his credit has been ruined due to the fraudulent banking schemes of the defendants. His personal property has been wrongfully repossessed. Donnie's property has been encumbered by the Defendants not releasing his collateral.

10. Plaintiff Cathy Yarborough is Donnie's wife and mother of Colton and Dalton Yarbrough. Cathy has been diagnosed with stress related physical injuries to her body from the fraudulent banking schemes of the Defendants. Cathy's property has been encumbered by the Defendants not releasing his collateral.

11. Colton Yarbrough is a 33-year-old married man living in Muskogee, Oklahoma and the son of Donnie R. Yarbrough and Cathy Yarbrough. His bank account has been fraudulent used causing financial injury.

12. Dalton Yarbrough is a 34-year-old married man living in Muskogee, Oklahoma and the son of Donnie R. Yarbrough and Cathy Yarbrough. His bank account has been fraudulent used causing financial injury.

13. Plaintiff, and Class Representative, Jessicca Yarbrough is a 34-year-old woman living in Guthrie, Oklahoma. Jessicca is a Sergent with the Oklahoma County Sheriff's Office and the daughter of Donnie R. Yarbrough

6

Exhibit 1 Page 6 of 263

and Cathy Yarbrough. The Defendants have failed to provide lien releases to vehicles that have been paid off. The defendants' bank schemes used Jessicca's bank accounts as their personal piggy banks to pay unauthorized loans and damaged her credit.

14. Plaintiff Garrett Kizzia is the 32-year-old adult son of Sheila Kizzia and Billy Terrill Kizzia (deceased). Garret has been wrongfully sued by the Defendants and his credit has been ruined due to the fraudulent banking schemes of the defendants.

15. Plaintiff Robert Bruce Fisher is a 58-year-old single male living in Tahlequah, Oklahoma, Cherokee County. Robert is 100% mentally disabled. Robert's mother is his payee for his social security benefits. Robert lives alone and his mother receives his monthly bank statements. Robert is not allowed to even check his bank account balance at the bank. Robert has been wrongfully sued by the Defendants, had property wrongfully repossessed and his credit has been ruined due to the fraudulent banking schemes of the defendants.

16. Plaintiff Billy Terrill Kizzia suffered a massive heart attack prior to his untimely death. He subsequently died. He was 61 years old when he died. A probate case was filed in the District Court of Muskogee County, Case No. PB-2014-28. *In the Matter of the Estate of Billy Terrill Kizzia.*

17. Plaintiff Sheila Kizzia is the widow of Billy Terrill Kizzia. Sheila is a schoolteacher at Braggs Public School and lives in Braggs, Oklahoma,

7

Exhibit 1 Page 7 of 263

Muskogee County. Sheila has also suffered a heart attack and was hospitalized because of the fraudulent banking schemes of the Defendants. Sheila is now on heart medication. Sheila and the Estate of Billy Terrill Kizzia has been wrongfully sued by the Defendants and their credit has been ruined due to the fraudulent banking schemes of the defendants.

18. Plaintiff Dan Rosson is an 84-year-old married male living in Vian, Oklahoma, Sequoyah County. Dan has owned and operated Rosson Speed & Marine and R & S Tractors in Fort Gibson, Oklahoma, Muskogee County for the past 30 years. As a direct and proximate cause of Defendants' fraudulent banking schemes, Dan has suffered extreme physical and emotional distress. Dan has suffered a heart attack and had quadruple bypass surgery due to Defendants' fraudulent actions.

19. Plaintiff Danny Kizzia is a 65-year-old single male living in Braggs, Oklahoma, Muskogee County. Danny is retired and lives on social security. As a result of the fraudulent schemes of the Defendants, Danny has suffered a heart attack and is currently on heavy cardiac medication. Danny has been wrongfully sued by the Defendants and his credit has been ruined due to the fraudulent banking schemes of the defendants.

20. Plaintiff Rita Ballinger is a 71-year-old single woman living in Grove, Oklahoma. Rita's credit has been damaged because of the fraudulent banking schemes of the Defendants.

8

Exhibit 1 Page 8 of 263

21. Plaintiff Joseph Schmidgall is a single man 76 years of age living in Muskogee, Oklahoma, Muskogee County. Joseph has been wrongfully sued by the Defendants, property repossessed, and his credit has been ruined due to the fraudulent banking schemes of the defendants.

22. Plaintiff and Class Representative, Steven L. Hinds, is a married man 49 years of age living in Jenks, Oklahoma, Tulsa County. Steven is an IT Senior Administrator. Steven has been victimized by the Defendants through forged mortgage documents, illegally charged interest and fabricated accounting procedures. Defendants have refused to release mortgages that were previously paid off and therefore clouded his clear title to real estate.

23. Plaintiff Tawnya Hinds is a married woman 46 years of age living in Jenks, Oklahoma, Tulsa County. Tawnya is a schoolteacher at Jenks West Intermediate in Jenks, Oklahoma. Tawnya has been victimized by the Defendants through forged mortgage documents, illegally charged interest and fabricated accounting procedures. Defendants have refused to release mortgages that were previously paid off and therefore clouded her clear title to real estate.

24. Defendant Firstar Financial Corporation is an Oklahoma for profit corporation with its principal place of business in Muskogee, Oklahoma, Muskogee County.

Exhibit 1 Page 9 of 263

25. Defendant Firstar Bank is the successor by merger to Fort Gibson State Bank with its principal place of business in Muskogee, Oklahoma Muskogee County.

26. Defendant Fort Gibson State Bank was an Oklahoma bank has now merged with Firstar Bank with its principal place of business in Fort Gibson Oklahoma, Muskogee County. Its principal was Tony Stockton.

27. Defendant Tony Stockton a/k/a Anthony Ray Stockton, ("Stockton") deceased was the former President and majority shareholder of Fort Gibson State Bank. Stockton owned 57% of Fort Gibson State Bank and Three Rivers Bankshares, Inc.

28. Defendant Fort Gibson Bancshares, Inc. was an Oklahoma for profit corporation but is now suspended by the Oklahoma Tax Commission with its principal place of business formerly in Fort Gibson, Oklahoma, Muskogee, County. Its principal is Matt Hendrix and Matt Hendrix is listed as the service agent at 200 South Lee Street, Fort Gibson, Oklahoma, Muskogee, County.

29. The Defendant the Estate of Anthony Ray Stockton and Ruth Ann Stockton is a probate matter filed in Cherokee County, Oklahoma. *In Re Estate of Anthony Ray Stockton and Ruth Ann Stockton,* Case No. PB-00036. Defendants Darin Kent Stockton and Mindy Mae Hendrix are serving as co-administrators of the Estate.

Exhibit 1 Page 10 of 263

30. The Defendant Darin Kent Stockton is the only son of Tony Stockton and serves as co-administrator with his sister, Mindy Mae Hendrix. Darin Kent Stockton is an heir of the Tony Stockton and Ruth Ann Stockton. Darin Stockton lives in Oklahoma City, Oklahoma, Oklahoma County.

31. The Defendant Mindy Mae Hendrix is the only daughter of Tony Stockton and serves as co-administrator with her brother, Darin Kent Stockton. Mindy Hendrix lives in Tahlequah, Oklahoma, Cherokee County.

32. The Defendant Susan Chapman is married and a housewife and currently living in Tahlequah, Oklahoma, Cherokee County.

33. The Defendant Matt Hendrix is the ex-spouse of Defendant Mindy Mae Hendrix, the ex-son-in-law of Defendant Tony Stockton. Matt is the former President of Fort Gibson State Bank in Fort Gibson Oklahoma, Muskogee, County. Hendrix lives in Moody, Oklahoma, Cherokee County and is currently the Executive Vice President of Carson Community Bank and Cherokee County Market President.

## Factual Background To All Counts

34. Defendants Tony Stockton, Susan Chapman and Matt Hendrix throughout the course of their association with Fort Gibson State Bank defrauded customers to: (i) enrich themselves with customers deposits, (ii) cover up past fraudulent conduct by making fraudulent customer advances to accounts in order to cover up funds they had stolen from other customer's accounts, (iii) shielding each other from being discovered as frauds, (iv) forging bank

11

Exhibit 1 Page 11 of 263

documents, (v) violating banking laws, (vi) forging loan documents (vii) destroying customer records, (viii) changing documents after the customer had signed a document, (ix) committing wire fraud, (x) committing insurance fraud, (xii) committing mail fraud, and (xiii) and withholding the release of liens and mortgages.

35. Defendants Tony Stockton, Susan Chapman and Matt Hendrix's fraudulent conduct encompassed thousands of different transactions at the Bank. The fraudulent transactions by Defendants Tony Stockton, Susan Chapman and Matt Hendrix included:

a. Defendants fabricated loans in Plaintiff's names without the knowledge of the customers. For example, on or about August 8, 2005 the Defendants created a fraudulent (5) five year loan in the name of Jackie Gail Curtis in the amount of $12,745.50, loan# 60023 . See attached Exhibit "A". The collateral listed on the loan was a 2000 Progater boat and a 2000 Johnson 200 horsepower motor. Jackie has never owned a boat and motor. One year later on September 12, 2006, the Defendants renewed the fraudulent loan in the amount of $16,559.01, loan #61113, and again listed with the same collateral Jackie never owned. See attached Exhibit "B". But a little over one month later, Jackie Gail Curtis did apply for a loan for a 2003 Cadillac in the amount of $17,714.32, loan #61214. See attached Exhibit "C". However, the loan also

12

Exhibit 1 Page 12 of 263

fraudulently refinanced another note Jackie had no knowledge existed, loan #60067, in the amount of $10,264.00.

b. Advances on customer loans without being asked or authorized by the customers, then using the advanced funds for their own or another person's benefit and to fraudulently credit the fraudulent advance to another loan to conceal prior fraudulent transactions. For example, on January 28, 2010, one or more of the Defendants advanced $561.84 in cash on the loan of a Bank Customer Robert Bruce Fisher. These funds were withdrawn by one or more of the Defendants without the knowledge or consent of the Customer.

c. Creating a loan for a customer, but then days later, creating a second fraudulent loan in the near same amount for the personal use by the Defendants. For example, on October 20, 2006, Plaintiff Jackie Gail Curtis borrowed $17,635.22 for the purchase of a 2003 Cadillac with loan #61214. Sometime later, one or more of the Defendants created a new loan, back dated the loan to September 12, 2006, with a loan number of #61113 in the amount of $16,484.01 with collateral of a 2000 Progator Boat and 2000 Johnson Motor. Jackie has never owned a boat and motor and certainly did not secure two loans for the near same amount 40 days apart.

d. Diverting Bank income for their own benefit or an unrelated loan. For example, on or about January 21, 2011, bank customer Cathy

13

Exhibit 1 Page 13 of 263

Yarbrough borrowed $4,548.77 (loan # 64784) from the Defendants for a Honda Motorcycle with a monthly payment of $171.98 and a pay off date of July 21, 2013. The Defendants, however, rolled an unrelated loan (loan #64186) into loan #64784 and paid the note off on March 8, 2016. All 30 monthly payments were made from Cathy's personal bank account. Additionally, the Defendants wrongfully withdrew another 30 payments from Cathy's husband personal account. The additional payments were used to conceal prior fraudulent conduct.

e.  On May 26, 2016, the notary public for Tahlequah Abstract notarized a mortgage that Robert Bruce Fisher signed the mortgage in her presence on May 26, 2016. However, the mortgage that was actually filed with the Cherokee County Clerk's Office on June 7, 2016 states the date of the mortgage is June 3, 2016 – eight days later. The Defendants used the additional eight days to completely change the amount owed and the terms of the mortgage.

f.  Diverting sale proceeds for property that was collateral for a loan to one or more of the Defendants fraudulent accounts. For example, on or about November 17, 2017, Pioneer Abstract & Title Company of Muskogee, Inc., sent a check to the Bank for the sale of property that collateralized a loan made to a customer. Instead of using the funds to pay down the loan, one or more of the Defendants

14

Exhibit 1 Page 14 of 263

deposited the funds in another account to conceal the Defendant's prior fraudulent transactions.

g. The Defendants forged signatures on cashier's checks, causing fraudulent loan proceeds to be paid to the Defendants. For example, on or about August 6, 2013, one or more of the Defendants either forged the signature of Matt Hendrix, or Matt Hendrix forged loan proceeds in order to secure the cashier's check, and paid loan proceeds on a fraudulent loan. Under oath, Matt Hendrix said he did not recall signing the cashier's check but also did not deny signing the cashier's check. In any event, the forged cashier's check went to pay on a fraudulent loan.

h. The Defendants fabricated Real Estate Mortgage documents. For Example, Plaintiff Danny Kizzia was alleged to have signed a real estate mortgage on April 27, 2018. He denies signing a real estate mortgage for $278,783.13. But the Notary Affidavit signed under oath states that Danny acknowledged the instrument before the Defendant, Susan Chapman, on February 28, 2018 – 48 days before the date on the mortgage of April 27, 2018. The real estate mortgage was not actually filed with the County Clerk's Office of Cherokee County until May 18, 2018 – approximately 68 days after the mortgage was alleged to have been signed in front of the Public Notary, Susan Chapman.

15

Exhibit 1 Page 15 of 263

i. One might argue that the Danny Kizzia real estate mortgage fraud was an anomaly or scrivener's error, however, the same fraudulent banking scheme was perpetrated against Plaintiff Robert Bruce Fisher, Billy Terrill Kizzia, Sheila Kizzia and Joseph Schmidgall. The mortgage that the Defendants alleges that Robert signed, which he denies signing, was dated June 3, 2016. However, the Notary Affidavit signed under oath states, "Mortgagor agrees to the terms and covenants contained in this Security Instrument and in attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1. This instrument is acknowledged before me this 26th day of May 2016." Again, one week before the alleged mortgage was created.

j. Other fraudulently created mortgages with notary dates before the date of mortgage instrument include:

| Plaintiff | Notary Date | Mortgage Date | File Date |
|---|---|---|---|
| Terry & Sheila Kizza | January 13, 2009 | January 20, 2009 | February 4, 2009 |
| Danny Kizzia | November 12, 2009 | November 13, 2009 | November 19, 2009 |
| Joseph Schmidgall | June 15, 2016 | August 9, 2016 | August 9, 2016 |
| Danny Kizzia | November 16, 2017 But date scratched out to November 17, 2017, with JG initials | November 17, 2017 | November 17, 2017 |

16

Exhibit 1 Page 16 of 263

k.  The Defendants changed the dollar amount of a cash withdraw receipts by customers after the customer signed the withdrawal. One or more of the Defendants kept the difference. For example, on March 26, 2018, Plaintiff Robert Bruce Fisher signed a receipt for a $100 withdraw. One of the Defendants scratched out the original amount of $100 and hand wrote $900 next to the scratched-out dollar amount. See attached Exhibit "D". Given that Robert Bruce Fisher is 100% mentally disabled and has a payee for his bank accounts – one or more of the Defendants knew he did not receive a bank statement at his home and, therefore, was easily susceptible to fraud even when the fraud was clearly evidenced on his monthly bank statements.

l.  The Defendants advanced money against customer's loan accounts without the customer's authorization. The cash advances were for the Defendants personal benefit. For example, Plaintiff Cathy Yarbrough was notified by letter on October 21, 2019, by Fort Gibson State Bank President, Matt Hendrix, that the Defendants had received $4,932.35 in unauthorized cash advances. Mr. Hendrix also notified Cathy that they had credited back $6,917.041 to her loan account – but supplied no additional information as to how the fraud took place. While the notice was provided on October 21, 2019, the alleged replacement of funds in Cathy's account took

17

Exhibit 1 Page 17 of 263

place on March 29, 2019, for fraud that took place before June 25, 2018 – with no explanation.  See attached Exhibit "E".

m. Defendants created fraudulent loans with minors, under the age of 18, with collateral the minor never owned.  For example, On December 7, 2009, Defendants created a fraudulent loan contract with Garrett Thomas Kizzia in the amount of $7,599.69, a minor on December 7, 2009, loan# 63886.  Furthermore, the collateral was for a 2002 Jeep Cherokee.  See attached Exhibit "F".  Garrett has never owned a Jeep.  Garrett never made a payment on this fraudulent loan. Garrett, as a minor, was used as a shell customer for other fraudulent conduct by the defendants.

n. The Defendants would roll one or more fraudulent loans into a new, presumable new legitimate loan. For example, Garrett Thomas Kizzia, thinking he was coming to the bank to sign a loan for a $1,000 as a new young 20-year-old bank customer with virtually no credit.  What he ultimately learned after being sued by Firstar is that he had allegedly signed a new loan, rolling in the alleged loan he signed as a minor and another fraudulent loan. The new fraudulent loan was # 65075. See attached Exhibit "G". What Garrett thought was only a $1,000 loan was in fact a fraudulent $14,829.32. Again, the collateral was the 2000 Jeep he never owned nor never made a payment on along with the new fabricated

18

Exhibit 1 Page 18 of 263

collateral. This time, a 1993 Jayco Trailer was also added as collateral with the Jeep. Garrett has never owned either the Jeep or Jayco Trailer. Loan # 65075 was also a fraudulent refinance of loan# 63527 and loan# 63886. See attached Exhibit "H".

o. Even though Garrett did not know a $14,829,32 loan had been taken out in his name fraudulently, that did not stop the Defendants from creating fraudulent loan advances on the same fraudulent loan for their own personal use. For example, the following are fraudulent loan advances on a fraudulent created loan:

| Date of Fraud | Amount | Alleged Signatory | Bank Official |
|---|---|---|---|
| December 27, 2012 | $50.00 | Terry Kizzia (Dad) | SC |
| December 3, 2012 | $600.00 | None | SC |
| November 1, 2012 | $200.00 | Terry Kizzia (Dad) | SC |
| October 26, 2012 | $200.00 | Terry Kizzia (Dad) | SC |
| June 11, 2012 | $500.00 | Sheila Kizzia (Mother) | SC |
| April 23, 2012 | $600.00 | Sheila Kizzia (Mother) | SC |
| February 14, 2012 | $400.00 | Terry Kizzia (Dad) | Susan Chapman |
| July 15, 2011 | $625.00 | Terry Kizzia (Dad) | Susan Chapman |
| December 3, 2013 | $267.26 | None | SC |
| December 20, 2013 | $377.90 | None | SC |
| October 11, 2013 | $424.56 | None | SC |
| September 13, 2013 | $377.90 | None | SC |
| July 10, 2013 | $377.90 | None | None |
| May 8, 2013 | $380.00 | None | SC |
| February 25, 2014 | $377.90 | None | SC |
| April 8, 2014 | $267.26 | None | SC |
| October 21, 2014 | $250.00 | None | None |
| December 4, 2014 | $377.90 | None | SC |
| December 2, 2014 | $1265.04 | Check to Sheila Kizzia & Braggs Public School | SC |
| February 5, 2015 | $600 | None | Susan Chapman |
| February 17, 2015 | $250 | None | SC |

19

Exhibit 1 Page 19 of 263

The loan advances had the added cover of looking like they had been at the direction of his mother and father, which they were not. Even if his parents had authorized the fraudulent advances, neither his father nor his mother was on the fraudulent loan.

p. Defendants withdrew money from the Plaintiffs bank account for fraudulent loans. For example, Donnie R. Yarbrough had only one bank loan listed on his bank statement every month from October 26, 2011 through September 26, 2017. The loan was loan #65265, See attached Exhibit "I". However, as many as (7) seven loan payments were taken out of his personal bank account per month. See attached Exhibit "J". particularly the October 2013 bank statement. Each bank statement was mailed through the United States Post Office and each bank statement is an example of mail fraud. A summary of Donnie's bank statements for the (6) six years in question are as follows:

| Statement Date For Donnie R. Yarbrough Account # 1025740 | Authorized Loans Listed on Bank Statement for Account # 1025740 | Payments made from Account # 1025740 for authorized listed loans | Unauthorized loan numbers receiving payment from Account # 1025740 | Payments made to loans not listed on Bank Statement from Account # 1025740 |
|---|---|---|---|---|
| 9.26.17 | 65265 | 739.44 | 68694 | 200.00 |
| 8.28.17 | 65265 | 0.00 | 68694 | 582.91 |
| 7.24.17 | 65265 | 0.00 | 68694 | 582.91 |
| 6.26.17 | 65265 | 739.44 | ????? | 582.91 |
| 5.23.17 | 65265 | 739.44 | 68694 | 582.91 |

20

Exhibit 1 Page 20 of 263

| | | | | |
|---|---|---|---|---|
| 4.25.17 | 65265 | 739.44 | 68694 | 582.91 |
| 3.27.17 | 65265 | 739.44 | 68694 | 582.91 |
| 2.27.17 | 65265 | 750.00 | ????? | 160.00 |
| | | | 68694 | 582.91 |
| 1.24.17 | 65265 | 450.00 | ????? | 100.00 |
| | | 290.00 | 68694 | 182.91 |
| 12.27.16 | 65265 | 0.00 | ????? | 123.00 |
| | | | 68694 | 400.00 |
| 11.2216 | 65265 | 550.00 | 68694 | 165.00 |
| | | 158.00 | 68694 | 582.91 |
| 10.25.16 | 65265 | 0.00 | 68694 | 582.91 |
| 9.27.16 | 65265 | 739.44 | | 0.00 |
| 8.29.16 | 65265 | 0.00 | 68694 | 582.91 |
| | | | 68694 | 582.91 |
| 7.25.16 | 65265 | 0.00 | 68694 | 582.91 |
| 6.28.16 | 65265 | 0.00 | ????? | 397.90 per jr |
| 5.25.16 | 65265 | 300.00 | ????? | 300.00 |
| | | | ????? | 120.00 |
| | | | 68694 | 200.00 |
| | | | 68694 | 382.91 |
| 4.27.16 | 65265 | 739.44 | 68694 | 582.91 |
| 3.28.16 | 65265 | 150.00 | 66237 | 150.00 |
| 2.23.16 | 65265 | 300.00 | 66237 | 144.52 |
| | | 320.00 | | |
| 1.25.16 | 65265 | 600.00 | 66237 | 144.52 |
| | | | ????? | 250.30 |
| 12.28.15 | 65265 | 0.00 | | 0.00 |
| 11.25.15 | 65265 | 739.44 | ????? | 150.00 |
| | | | 65236 | 194.24 |
| | | | 65738 | 250.30 |
| | | | 67494 | 115.92 |
| 10.26.15 | 65265 | 240.00 | 66237 | 144.52 |
| | | | 67494 | 115.92 |
| | | | 65236 | 195.00 |
| | | | 66237 | 144.52 |
| | | | ????? - sc | 266.00 |
| 9.28.15 | 65265 | 300.00 | 66237 | 144.52 |
| | | | 65236 | 194.24 |
| 8.25.15 | 65265 | 0.00 | 65236 | 194.24 |
| 7.27.15 | 65265 | 200.00 | 66237 | 144.52 |
| | | | 64784 | 171.98 |
| | | | 65236 | 194.24 |
| 6.29.15 | 65265 | 739.44 | 65236 | 194.24 |
| | | | 64784 | 171.98 |
| | | | 62495 | 364.63 |
| 5.27.15 | 65265 | 739.44 | 66237 | 139.00 |
| | | 739.44 | 65236 | 194.24 |

21

Exhibit 1 Page 21 of 263

|  |  |  | 66237 | 23.86 |
|  |  |  | 66237 | 10.00 |
|  |  |  | 62495 | 100.00 |
|  |  |  | 64784 | 171.98 |
| 4.27.15 | 65265 | 0.00 | 66237 | 144.52 |
|  |  |  | 65236 | 194.24 |
|  |  |  | 62495 | 264.63 |
|  |  |  | 64784 | 171.98 |
| 3.17.15 | 65265 | 739.44 | 64784 | 171.84 |
|  |  | 500.00 | 66237 | 144.52 |
|  |  |  | 65236 | 194.24 |
|  |  |  | 64784 | 172.00 |
|  |  |  | 65265 | 239.20 |
| 2.24.15 | 65265 | 539.00 | 64784 | 171.98 |
|  |  |  | 66237 | 144.52 |
|  |  |  | 65236 | 194.24 |
| 1.26.15 | 65265 | 739.44 | 67484 | 171.98 |
|  |  |  | 66237 | 144.52 |
|  |  |  | 65236 | 194.24 |
| 12.29.14 | 65265 | 0.00 | 65236 | 194.24 |
| 11.25.14 | 65265 | 200.00 | 65236 | 195.00 |
|  |  |  | 65738 | 250.00 |
| 10.27.14 | 65265 | 54.00 | 64784 | 171.98 |
|  |  |  | 65738 | 250.30 |
|  |  |  | 62495 | 364.63 |
| 9.29.14 | 65265 | 540.00 | 64784 | 72.00 |
|  |  | 685.00 | 62495 | 50.00 |
|  |  |  | 65738 | 46.00 |
| 8.26.14 | 65265 | 200 | 66237 | 105 |
|  |  |  | 65738 | 200 |
|  |  |  | 62495 |  |
| 7.28.14 | 65265 | 0.00 | 64784 | 171.98 |
|  |  |  | 65236 | 194.24 |
| 6.25.14 | 65265 | 300.00 | 64784 | 100.00 |
|  |  | 40.00 | 65236 | 194.24 |
|  |  |  | 62495 | 364.63 |
| 5.27.14 | 65265 | 400.00 | 64784 | 171.98 |
|  |  |  | 66237 | 144.52 |
|  |  |  | 65236 | 194.24 |
| 4.28.14 | 65265 | 436.6 | 62495 | 365.00 |
|  |  |  | 65236 | 194.24 |
|  |  |  | 62495 | 250.00 |
|  |  |  | 62495 | 113.40 |
|  |  |  | 66237 | 40.02 |
| 3.25.14 | 65265 | 600.00 | 66237 | 144.52 |
|  |  |  | 64784 | 171.98 |
|  |  |  | 62495 | 364.63 |

22

Exhibit 1 Page 22 of 263

| | | | 66237 | 144.52 |
|---|---|---|---|---|
| | | | 65236 | 194.24 |
| | | | 64784 | 171.98 |
| 2.25.14 | 65265 | 680.00 | 64784 | 171.98 |
| | | 500.00 | 65738 | 250.30 |
| 1.27.14 | 65265 | 500.00 | 65236 | 194.24 Per Susan |
| | | 140.00 | 66237 | 144.52 |
| | | | 62495 | 364.63 |
| 12.19.13 | 65265 | 700.00 – per jr | 64784 | 171.98 |
| | | 140.00 | 65236 | 194.24 Per Susan |
| | | | 62495 | 364.63 Per Susan |
| 11.25.13 | 65265 | 739.44 | 64784 | 171.98 Per Susan |
| | | | 62495 | 364.63 Per Susan |
| | | | 66237 | 144.52 per jr |
| 10.28.13 | 65265 | 400.00 | 64784 | 171.98 Per Susan |
| | | 339.44 | 66237 | 144.52 Per Susan |
| | | | 65236 | 194.24 Per Susan |
| | | | 64784 | 171.98 Per Susan |
| | | | 65236 | 194.24 Per Susan |
| | | | 65738 | 250.30 Per Susan |
| | | | 62495 | 364.63 Per Susan |
| 9.25.13 | 65265 | 739.44 | 65236 | 194.24 |
| | | | 62495 | 364.63 |
| 8.26.13 | 65265 | 400 | 62495 | 65 |
| | | 329.44 | 66237 | 144.52 |
| 7.29.13 | 65265 | 511.28 | 64784 | 171.98 |
| | | 450.00 | 62495 | 364.63 |
| | | 300.00 | 66237 | 144.52 |
| | | | 65236 | 194.24 |
| | | | 64784 | 28.36 |
| | | | 66237 | 144.52 |
| | | | 65236 | 194.24 |
| | | | 62495 | 364.63 |
| 6.24.13 | 65265 | 220.00 | 66237 | 144.52 |
| | | | 65236 | 194.24 |
| | | | 62495 | 300.00 |
| 5.28.13 | 65265 | 495.62 | 66237 | 144.52 |
| | | 250 | 65236 | 194.24 |
| | | | 64784 | 171.98 |
| | | | 62495 | 364.53 |
| 4.23.12 | 65265 | 80.00 | 62495 | 85.59 |
| | | | 66237 | 144.52 |
| | | | 65236 | 194.40 |
| | | | 64784 | 171.98 |
| | | | 62495 | 279.63 |
| 3.25.13 | 65265 | 400.00 | 62495 | 364.63 |

23

Exhibit 1 Page 23 of 263

| | | 100.00 | 66237 | 144.52 |
| | | 554.10 | 64784 | 171.98 |
| | | | 62495 | 364.63 |
| 2.25.13 | 65265 | 115.00 | 65236 | 152.72 |
| | | | 66237 | 144.52 |
| | | | 64784 | 171.98 |
| 1.28.13 | 65265 | 450 | 64784 | 171.98 |
| | | | 62495 | 364.63 |
| | | | 65236 | 100.00 |
| | | | 64784 | 171.98 |
| 12.26.12 | 65265 | 739.44 | 64784 | 171.98 |
| | | 500.00 | 62495 | 364.63 |
| | | | 65236 | 130.00 |
| | | | 65236 | 200.00 |
| 11.26.12 | 65265 | 460.00 | 65236 | 194.24(per Susan) |
| | 65265 | 300.00 | 65424 | 1,149.96 per Susan |
| 10.29.12 | 65265 | 215.00 | 62495 | 84.63 (per sc) |
| | 65265 | 525.00 | 64784 | 171.98 (per sc) |
| | 65265 | 739.44 | 65236 | 194.24 (per Susan) |
| | | | 62495 | 364.63 (per Susan) |
| | | | 64784 | 150.00 |
| 9.24.12 | 65265 | 0.00 | 64784 | 171.98 |
| | | | 62495 | 364.63 |
| | | | 65236 | 194.24 |
| | | | 62495 | 280.00 |
| 8.27.12 | 65265 | 739.44 | 65236 | 194.24 (per Susan) |
| 7.24.12 | 65265 | 0.00 | | 0.00 |
| 6.26.12 | 65265 | 0.00 | | 0.00 |
| 5.29.12 | 65265 | 0.00 | 64784 | 171.98 per "THE" Susan C. |
| 4.25.12 | 65265 | 0.00 | | 0.00 |
| 3.26.12 | 65265 | 0.00 | 64784 | 171.98 |
| 2.27.12 | 65265 | 0.00 | 64784 | 171.98 |
| 1.25.12 | 65265 | 0.00 | 62495 | 364.63 |
| | | | 65236 | 194.24 |
| 12.28.11 | 65265 | 0.00 | 64784 | 171.98 |
| 11.29.11 | 65265 | 0.00 | 64784 | 171.98 (per Susan) |
| 10.26.11 | 65265 | 0.00 | 65127 | 68.66 |
| 9.26.11 | 61964 | 0.00 | | |
| | 63089 | | | |
| | 63368 | | | |
| | 64968 | | | |
| | 65265 | | | |
| 8.29.11 | 61964 | 0.00 | | 0.00 |
| | 63089 | | | |

24

Exhibit 1 Page 24 of 263

| | 63368<br>64968 | | | |
|---|---|---|---|---|

q. Defendants are fully aware that all customer loans are to be listed on the customer's monthly bank statement. Defendants listed (4) four and (5) five loans on Donnie's bank statements for August and September of 2011 respectively. Only (1) one loan listed beginning October 2011 through September 2017, because the other loans were consolidated into loan #65265. See attached Exhibit "K".

r. The Defendants defrauded Plaintiffs by intercepting Plaintiff's Guaranteed Asset Protection insurance ("GAP") insurance proceeds. For example, On or about March 3, 2016, Plaintiff Cathy Yarbrough purchased two vehicles, a 2011 Buick Enclave and a 2003 Honda VT Motorcycle. The 2011 Buick was subsequently totaled in an accident. The vehicle was insured with full coverage insurance and GAP insurance. Cathy paid $350 for the GAP insurance premium through the Defendants on March 3, 2016. See attached Exhibit "L". After the accident, Defendants intercepted the GAP proceeds for their own personal use. To this day, the loan balance not paid by the GAP insurance is demanded by the Defendants as an outstanding balance owed. The unpaid balance is continued to be reported monthly on Cathy's credit report as an outstanding debt.

s. The Defendants fabricated loan advance receipts without the customers knowledge if the Defendants knew the customer did not

25

Exhibit 1 Page 25 of 263

read their monthly bank statements or did not receive have access to monthly bank statements. For example, on or about January 28, 2010, the Defendants completely fabricated loan advance receipts on Robert Bruce Fisher's loan account of #61890. For example, the Defendants defrauded Robert in the amount of $561.84. The loan advance is without Robert's signature, nor did Robert receive the proceeds from the loan advance. The loan advance of $561.84 was for one or more of the Defendants' personal gain. Robert F.'s bank statements went to his payee and not to him at his home. This fact was known by the Defendants. See attached Exhibit "M".

t.  Falsifying bank customer loan records so that the Bank would lend money to customers who did not meet the Bank's lending guidelines. For example, Plaintiff Danny Kizzia is retired and makes $1,280 per month from social security, but the Defendants approved Danny for a loan with a monthly payment of $1,672 per month. Based upon information and belief, one or more of the Defendants clearly fabricated the credit score, credit worthiness and current income of Danny Kizzia to qualify Danny for a loan in any amount, much less $288,000.00. Furthermore, the loan Danny intended to apply for was for approximately $400 per month rather than $1,672 per month, $392 more than his entire monthly income.

26

Exhibit 1 Page 26 of 263

u. The Defendant's fraudulent banking schemes affected over 140 accounts of Fort Gibson State Bank customers and persisted for over 15 years – according to the admissions of the Defendants.

v. The Defendants used their positions as officers of Fort Gibson State Bank to hide their fraudulent conduct, going so far as to falsify bank and customer records (including customer social security numbers) so that certain loans would not show up on the bank's Past Due Loan Report and subsequently be discussed by the bank's Loan Committee, of which the Defendants were members or attended the Loan Committee meetings. This is a key tactical scheme for the Defendants to carry out their fraudulent conduct for decades without detection by most of the Committee Members.

w. Another tactical scheme used by the Defendants was to create confusion among several family members as to what family member pays what specific dollar amount to a specific loan account. If the Defendants' fraud was detected, it was convenient for the Defendants to blame the bank error on family confusion with another family members accounts. For example, Matt Hendrix mailed a letter to the Donnie Yarbrough on October 21, 2019, claiming the Defendants' banking errors were the result of simple confusion between Donnie's and his son, Colton's, loan accounts. While Matt did not state in the October 21, 3019 letter that the

27

Exhibit 1 Page 27 of 263

money was taken out of Donnie's account for Colton's loan, Matt advised Donnie on the phone. The simple account errors were over $17,799.22. See attached Exhibit "N".

x. Steven and Tawyna paid off their promissory note and mortgage in full on August 21, 2019. See attached Exhibit "T". The loan amount was $75,629.75 and originated September 2, 2009 and filed on September 3, 2009 at Book 4010 page 126-129.. See attached Exhibit "U". Steven and Tawyna have asked Matt Hendrix, President at the time of payoff, to release the mortgages. Hendrix and the Defendants have refused to release the mortgage lien.

y. To date, the Defendant's Fraudulent Banking Schemes includes $4,718,580.47 in false or unauthorized advances from customers' bank accounts, over $800,000.00 in fraudulently obtained cashier's checks by the Defendants.

z. On or about April 21, 2018, Tony Stockton a/k/a Anthony Ray Stockton died intestate. Tony was the majority shareholder of Fort Gibson State Bank and Three Rivers Bankshares, Inc. and a Defendant herein. Tony Stockton owned 57% of Fort Gibson State Bank and Three Rivers Bankshares, Inc. See attached Exhibit "O".

aa. On or about Friday June 15, 2018, Defendant Susan Chapman left the bank for a one week required annual vacation.

28

Exhibit 1 Page 28 of 263

bb. When Susan Chapman returned to the bank from vacation, she was fired by Matt Hendrix.

cc. Less than 60 days after Tony died, Defendant Susan Chapman was fired by Tony's ex son-in-law, the Newly appointed President of Fort Gibson State Bank, Matt Hendrix.

dd. What Tony couldn't discover in 20 years; Hendrix found in one week.

ee. Tony, Hendrix and Chapman had been at the bank together since the late 1990s. But suddenly, Tony dies and Hendrix stumbles upon previously unknown fraud and Chapman is out of the bank on vacation.

ff. Based upon information and belief, Tony had been covering fraudulent banking schemes for Chapman and Hendrix and Chapman and Hendrix have been covering fraudulent banking schemes for Tony for the past 20 years. Their actions constitute a Fraudulent Banking Schemes.

gg. According to Hendrix, the fraud was just accidently stumbled upon days before Tony died. Hendrix didn't even bother to notify Tony of the alleged "newly" discovered banking fraud before he passed away.

hh. Once Tony died, three members of the Fraudulent Banking Schemes suddenly became just two members. The question

29

Exhibit 1 Page 29 of 263

obviously became, could Hendrix trust Chapman? Could Chapman trust Hendrix?

ii. As the ex-son-in-law and newly appointed President of a bank and a Fraudulent Banking Scheme Enterprise, it is understandable that Hendrix might be a little nervous about his new executive position. Had Tony just set him up to hold the bag, or could someone else be held responsible? The obvious choice for Hendrix was Chapman. She just needed to take a short vacation for Hendrix to plan his attack.

jj. By the time Chapman returned from her vacation in late June of 2018, Tony was dead, Matt was the new President and the FBI had been notified about alleged fraud.

kk. Unfortunately, for the original members of the Fraudulent Banking Scheme Enterprise, the documents of the Fraudulent Banking Scheme Enterprise have survived. "I don't recall," is no longer a stock answer under oath worthy of credulity.

ll. On or about May 4, 2018, Defendants Darin Kent Stockton, son of Tony Stockton, and Misty Mae Hendrix, daughter of Tony Stockton, filed a petition to be appointed co-administrators and personal representatives of Tony Stockton in the matter of the *Estate of Anthony Ray Stockton and Ruth Ann Stockton.*

Exhibit 1 Page 30 of 263

mm.  On June 26, 2018, Fort Gibson State Bank filed a claim against their insurance company for the fraud of one or more of the Defendants.

nn. In 2019 Fort Gibson State Bank was ultimately merged with Defendants Firstar Bank and Firstar Financial Corporation.

oo. Even though Firstar Bank and Firstar Financial Corporation were fully aware of the fraud committed by Tony, Hendrix and Chapman when they purchased the bank in 2019, Firstar and Firstar Financial continued to mail out fraudulent bank statements and filed fictious and unsubstantiated lawsuits against the Plaintiffs.

pp. Firstar and Firstar Financial, in their dogged pursuit of the Fraudulent Banking Schemes Enterprises potential profits, Firstar and Firstar Financial furthered the conspiracy to defraud bank customers and the Plaintiffs herein by sending out fraudulent bank statements and loan statements to defrauded customers.

qq. Even though Darin Kent Stockton and Mindy Mae Hendrix are fully aware of the fraud committed by Tony, Hendrix and Chapman, they have actively pursued to inherit their father's stock, shares and ownership from the Fraudulent Banking Schemes. Darin Kent Stockton and Mindy Mae Hendrix, as the sole heirs of the Estate of Anthony Ray Stockton and Ruth Ann Stockton, should

31

Exhibit 1 Page 31 of 263

be enjoined from inheriting the fruits of the Stockton Estate's ill-gotten gain.

rr. Fort Gibson State Bank was purchased by Firstar and Firstar Financial Corporation at a "Fire Sale" price which is further evidence of Firstar and Firstar Financials' knowledge of the massive amount of fraud committed in furtherance of the Fraudulent Banking Schemes Enterprise.

ss. Banks are not sold at the price Fort Gibson State Bank was sold unless there is a huge problem with the bank. Firstar and Firstar Financial can not claim they did not know there were major problems with the bank they purchased, and they should tread cautiously and lightly after the purchase. For example, Firstar knew Danny Kizzia only made $1,280 per month on social security; Firstar knew he did not have a credit score to support a $288,000 loan; Firstar knew he could not afford a $1,672 per month payment.

tt. While Firstar may claim they didn't originally know when it instructed its attorney to pursue a lawsuit against Danny Kizzia for nonpayment of a loan, in Case No. CJ-2019-38 in the District Court of Muskogee County. But in the case, Fort Gibson State Bank and Firstar were advised of the many problems with the fraudulent loan. Danny Kizzia filed, through his attorney of record, an affidavit with the Court on June 7, 2019, advising the Court and

32

Exhibit 1 Page 32 of 263

Firstar Bank of the egregious fraud. See affidavit of Danny Kizzia. See attached Exhibit "O". On February 2, 2021, Firstar Bank, without permission from the Court, without an order from the Court, or an agreement with Danny Kizzia or his attorneys, dismissed the lawsuit unilaterally against Danny Kizzia without prejudice. It had appeared at the time that Firstar Bank had thought better of suing on a clearly Fraudulent Banking Scheme Enterprise loan.

uu. However, on November 17, 2021, with full knowledge of the obvious problems with the alleged Danny Kizzia loan of $288,000 as a matter of Court record, with no viable credit, and without adequate verified income, Firstar Bank refiled again the exact same case Danny Kizzia, with the exact same fraudulent documents. The new case is *Firstar Bank, an Oklahoma Banking Corporation as successor to Ft. Gibson State Bank, an Oklahoma Banking Corporation vs. Daniel Kizzia,* Case No. CJ-2021-289, Muskogee County District Court, State of Oklahoma.

vv. Rather than walk away from questionable loans and error on the side of caution, Firstar and Firstar Financial implemented an executive banking policy in furtherance of the original Fraudulent Banking Scheme Enterprise. With cover of an honest and respectable banking institution, Firstar and Firstar Financial

33

Exhibit 1 Page 33 of 263

picked up right where the Fraudulent Banking Scheme Enterprise left off.

ww.    Firstar and Firstar Financials' furtherance of the Fraudulent Banking Scheme Enterprise included mailing out fraudulent and fabricated bank statements; filing lawsuits against customers based upon clearly fraudulent and unbelievable facts and circumstances; repossessing assets known to be collateral of fraudulent loans; failing to deal in good faith with customers known to Firstar and Firstar Financial to be the victims of the Fraudulent Banking Scheme Enterprise; and taking full advance of the Fraudulent Banking Scheme Enterprise's RICO conduct for their own financial gain. See attached Exhibit "S".

xx. In December of 2021 the insurance company for Fort Gibson State Bank, Three Rivers Bankshares, Inc., Fort Gibson Bancshares, Inc., Firstar Bank and Firstar Financial Corporations, Inc. ("Merged Bank") settled the Merged Banks' claims for money damages because of the Defendants Fraudulent Banking Schemes Enterprise.

yy. All the proceeds from the Merged Banks' settlement went to Fort Gibson State Bank, Three Rivers Bankshares, Inc., Fort Gibson Bancshares, Inc., Firstar Bank and Firstar Financial Corporations, Inc. ("Merged Bank") and none of the insurance settlement proceeds

34

Exhibit 1 Page 34 of 263

was distributed to the victims of the Fraudulent Banking Scheme Enterprise.

zz. Firstar and Firstar Financial purchased the bank at the 2019 "Fire Sale" and then inherited a "Windfall" from the insurance settlement in 2021. Firstar and Firstar Financial has benefited more than any Defendant listed herein directly and indirectly from the Fraudulent Banking Scheme Enterprise.

aaa.   Firstar Bank, Firstar Financial, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Kent Stockton, Misty Mae Hendrix, Matt Hendrix and Susan Chapman should be enjoined from disposing of assets, from disposing of proceeds from sale of Fort Gibson State Bank, from disposing of assets of the Estate of Anthony Ray Stockton and Ruth Ann Stockton, from disposing of assets of Three Rivers Bankshares, Inc. and Fort Gibson Bancshares, Inc.

## RICO Predicate Acts

36. Plaintiffs incorporate by reference the allegations of paragraph 1 through 31 of the Petition as though fully set forth herein.

37. The Defendants mailed out through the United States Post Office thousands of fraudulent bank statements over a 15-year period. The fraudulent bank statements were the result of illegally withdrawn money, illegal bank loan

35

Exhibit 1 Page 35 of 263

advances, fraudulent bank loans, forged mortgages, fabricated cashier's checks, filing fraudulent lawsuits, fraudulent credit reporting information, and insurance fraud. The fraudulent conduct is mail fraud. This conduct violated 18 U.S.C. § 1341. See attached Exhibit "P", as small sampling of these mailings related to the Fraudulent Banking Schemes.

38. The Defendants conspired together to further their illegal enterprise. It was common knowledge at the bank that Susan Chapman maintained a significant number of loan files, separate from the regular loan files in her office, behind her desk. The loan files in Susan Chapman's office was open and obvious to Stockton and Hendrix.

WHEREFORE, Plaintiffs respectfully prays for judgment against the Defendants, Firstar Bank, Firstar Financial, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Kent Stockton, Misty Mae Hendrix, Matt Hendrix and Susan Chapman, and for relief as follows:

       (a) Treble damages;

       (b) Injunctive relief;

       (c) Reasonable attorney's fees and costs, and

       (d) Such other relief as the Court deems just and proper.

36

Exhibit 1 Page 36 of 263

## COUNT I
## Substantive Racketeering – 18 U.S.C. §§ 1962(c) and 1964
## (Against all Defendants)

39. Plaintiffs incorporate by reference the allegations of paragraph 1 through 33 of the Petition as though fully set forth herein.

40. At all relevant times, Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Kent Stockton, Mindy Mae Hendrix, Matt Hendrix and Susan Chapman were "persons" within the meaning of RICO, 18 U.S.C. § 1961 (3). This Count is brought against each of the defendants identified in this paragraph.

41. All Defendants constitute an association-in-fact "enterprise" (the "Fraudulent Banking Schemes") as that term is defined in 18 U.S.C. § 1964 (4), that engages in, and the activities of which effect, interstate commerce. The members of the Fraudulent Banking Schemes Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchical and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Specifically, Tony Stockton, Susan Chapman and Matt Hendrix pretended to act as legitimate and trustworthy local bankers. The Defendants gave the impression to unsuspecting Plaintiffs that they were transacting honest and legal banking business. The planning and carrying out of the scheme would

37

Exhibit 1 Page 37 of 263

have been beyond the capacity of each member of the Enterprise acting singly and without the aid of each other.

42. Each Defendant is or has been employed by and/or associated with the Fraudulent Banking Schemes Enterprise.

43. On information and belief, based upon previous insurance litigation, public records, depositions and statements under oath by certain Defendants, all of the individual defendants and most of the entity Defendants, have received, or will receive, a financial benefit for their participation in the scheme. Such financial benefits for the Defendants were the product of the Fraudulent Banking Scheme and could not have been realized had Tony Stockton, Susan Chapman and Matt Hendrix not been able to defraud 140 or more bank customers.

44. Each of the Defendants to this Count have mailed or caused to be mailed tens of thousands of mailings in the United States Postal Service in furtherance of the scheme to obtain money from fraudulent bank records and bank statements. A small sample of those mailings is identified in Exhibit "P". Further, each of the defendants to this Count has conducted and/or participated in the conduct of Fraudulent Banking Schemes Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c), by engaging in thousands of acts of mail fraud using the United States Postal Service.

Exhibit 1 Page 38 of 263

45. Plaintiffs have suffered the loss of money and property related to the Fraudulent Banking Scheme Enterprise. Plaintiffs do not have access to sufficient information to identify the amount of damages they have incurred because that information, the Fraudulent Banking Scheme Enterprise profits, is in the sole possession of the Defendants.

WHEREFORE, Plaintiffs respectfully prays for judgment against Defendants, Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Stockton, Mindy Hendrix, Matt Hendrix and Susan Chapman, and for relief as follows:

(a) Treble damages;

(b) Injunctive relief;

(c) Reasonable attorneys' fees and costs; and

(d) Such other relief as the Court deems just and proper.

## COUNT II
### Racketeering Conspiracy
### 18 U.S.C. §§ 1962(d) and 1964
### (Against all Defendants)

46. Plaintiffs incorporate by reference the allegations of paragraph 1 through 40 of the Petition as though fully set forth herein.

Exhibit 1 Page 39 of 263

47. Defendants Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Stockton, Mindy Hendrix, Matt Hendrix and Susan Chapman have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962 (c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Fraudulent Banking Scheme Enterprise's affairs through a pattern of racketeering activity based upon thousands of acts of mail fraud, in violation of 18 U.S.C. § 1962(d).

48. The object of the conspiracy was to defraud bank customers and improperly acquire money and property through violation of banking rules and regulations. Each Defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals – profits at all costs.

49. Plaintiffs have suffered the loss of money and property related to the Fraudulent Banking Schemes of the Defendants. Plaintiffs do not have access to sufficient information to identify the amount of damages they incurred because that information, the Fraudulent Banking Scheme Enterprise's profits from customer fraud, is in the sole possession of the Defendants.

50. Due to the extent and comprehensiveness of the fraud for over 15 years, it is impossible for Chapman to have accomplished as much fraud as alleged

40

Exhibit 1 Page 40 of 263

without the knowledge and assistance of at least one or more bank officer co-conspirators. Chapman did not act alone.

WHEREFORE, Plaintiffs respectfully prays for judgment against defendants Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Stockton, Mindy Hendrix, Matt Hendrix and Susan Chapman, and for relief as follows:

> (a) Treble damages;
>
> (b) Injunctive relief;
>
> (c) Reasonable attorney's fees and costs; and
>
> (d) Such other relief as the Court deems just and proper.

## COUNT III
### Substantive Racketeering – 18 U.S.C. §§ 1962(c) and 1964
### (Against Defendants Tony Stockton, Matt Hendrix and Susan Chapman)

51. Plaintiffs incorporate by reference the allegations of paragraph 1 through 44 of the Petition as though fully set forth herein.

52. At all relevant times, Tony Stockton, Matt Hendrix and Susan Chapman were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

53. Fraudulent Banking Scheme Enterprise at Fort Gibson State Bank is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4). Tony Stockton owned 57% of Fort Gibson State Bank and Three Rivers Bankshares, Inc. See attached Exhibit "Q".

Exhibit 1 Page 41 of 263

54. Tony Stockton, Matt Hendrix and Susan Chapman, mailed, or caused to be mailed, thousands of mailings in furtherance of the Fraudulent Banking Scheme Enterprise to obtain money and property for the Fraudulent Banking Scheme Enterprise. Tony Stockton, Matt Hendrix and Susan Chapman each conducted and/or participated in the conduct of the Fraudulent Banking Scheme Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962( c), by engaging in the thousands of acts of mail fraud.

55. Plaintiffs have suffered loss of money and property related to the Fraudulent Banking Scheme Enterprise. Plaintiffs do not have access to sufficient information to identify the amount of damages they incurred because that information, the Fraudulent Banking Scheme Enterprise's profits from customer fraud, is in the sole possession of the Defendants.

56. Tony Stockton, Matt Hendrix and Susan Chapman worked as a team to defraud the bank's customers.

WHEREFORE, Plaintiffs respectfully prays for judgment against Tony Stockton and Susan Chapman, and for relief as follows:

(a) Treble damages;

(b) Injunctive relief;

(c) Reasonable attorney's fees and costs; and

(d) Such other relief as the Court deems just and proper.

Exhibit 1 Page 42 of 263

## COUNT IV
## BREACH OF CONTRACT
### (Against All Defendants)

57. Plaintiffs incorporates by reference the allegations of paragraph 1 through 49 of the Petition as though fully set forth herein.

58. As indicated in detail above, Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Stockton, Mindy Hendrix, Matt Hendrix and Susan Chapman, each participated in one or more of the actions described above.

59. The Defendants in Count IV have breached their duty of good faith and fair dealing with regard to the Plaintiffs.

60. Based upon information and belief Defendants in Count IV have breached their duty to Plaintiffs for which they are entitled to recover.

61. Defendants' breach of contract damages is more than $10,000 to each Plaintiff.

WHEREFORE, Plaintiffs respectfully prays for judgment against the Defendants listed in Count IV, and for relief as follows:

        (a) Compensatory damages;

        (b) Restitution;

        (c) Punitive damages;

        (d) Accounting of Profits;

Exhibit 1 Page 43 of 263

(e) Pre and Post-Petition interest;

(f) Reasonable attorney's fees and costs; and

(g) Such other relief as the Court deems just and proper.

## COUNT V
## FRAUD
### (Against All Defendants)

62. Plaintiffs incorporates by reference the allegations of paragraph 1 through 54 of the Petition as though fully set forth herein.

63. As indicated in detail above, Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton, Darin Stockton, Mindy Hendrix and Susan Chapman, each participated in one or more of the actions described above.

64. The Defendants in Count V have committed fraud against the Plaintiffs.

65. Based upon information and belief Defendants in Count V have committed fraud against the Plaintiffs for which they are entitled to recover.

66. Defendants' fraud damages is more than $10,000 to each Plaintiff.

WHEREFORE, Plaintiffs respectfully prays for judgment against the Defendants listed in Count V, and for relief as follows:

(a) Compensatory damages;

(b) Lost Earnings;

(c) Lost Profits;

44

Exhibit 1 Page 44 of 263

(d) Emotional Distress;

(e) Damage to reputation;

(f) Damage to credit;

(g) Pre and Post-Petition interest;

(h) Reasonable attorney's fees and costs; and

(i) Such other relief as the Court deems just and proper.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

67. Plaintiffs incorporates by reference the allegations of paragraph 1 through 59 of the Petition as though fully set forth herein.

68. As indicated in detail above, Firstar Bank, Firstar Financial Corporation, Fort Gibson State Bank, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc., Tony Stockton, The Estate of Anthony Ray Stockton and Ruth Ann Stockton and Susan Chapman, each participated in one or more of the actions described above.

69. The Defendants in Count VI have intentionally caused emotional distress to the Plaintiffs.

70. More specifically, Jackie Gail Curtis, Donnie R. Yarbrough, Sheila Kizzia, Danny Kizzia, Dan Rosson and Joe Schmidgall have all suffered heart attacks as a direct and proximate cause of Defendants intentional actions.

45

Exhibit 1 Page 45 of 263

Billy Terrill Kizzia suffered a heart attack and subsequently died. Joe Schmidgall has also since died.

71. All the Plaintiffs suffered some level of emotional distress as a direct and proximate cause of Defendants intentional actions.

72. Based upon information and belief Defendants in Count VI have intentionally harmed the Plaintiffs physically and emotionally for which they are entitled to recover.

73. Defendants' intentional infliction of emotional distress damages is more than $10,000 to each Plaintiff.

WHEREFORE, Plaintiffs respectfully prays for judgment against the Defendants listed in Count VI, and for relief as follows:

        (a) Compensatory damages;

        (b) Past medical expenses;

        (c) Future medical expenses;

        (d) Past and Future pain and suffering;

        (e) Wrongful death;

        (e) Punitive damages;

        (e) Reasonable attorney's fees and costs; and

        (h) Such other relief as the Court deems just and proper.

46

Exhibit 1 Page 46 of 263

## COUNT VII
## CLASS ACTION
## (Against All Defendants)

### CLASS REPRESENTATIVES

74. Plaintiff Steven L. Hinds is a former customer of the Defendants. Steven paid off his real estate mortgage loan on August 21, 2019, but the Defendants have yet to release the mortgage. The Defendants continue to use Steven's real estate as a mortgaged asset for banking purposes.

75. Jessicca Yarbrough is a former customer of the Defendants. She paid off her 1966 Ford Mustang, but the Defendants have refused to provide her with a lien release.

76. Steven and Jessicca will serve as co-class representatives; Steven for issues related to mortgage claims and Jessicca for issues related to property claims.

### RULE 23 CLASS ACTION ALLEGATIONS

I. **CLASS DEFINITION**

77.    This is a class action pursuant to title 12 O.S.A. § 12-2023, brought by Plaintiff on behalf of a Proposed Class of similarly situated bank customers.

78. Proposed Class (subject to future revision as may be necessary), is defined as follows:

> All bank customers of Defendants with a loan secured by property or real estate during the applicable statute of limitations period.

79. The unlawful conduct suffered by Plaintiff and the members of the Proposed Class, includes, but is not limited to:

> Members of the Proposed Class have been denied clear title to their property after their loan was paid in full.
>
> Members of the Proposed Class have been subjected to sham security agreements.
>
> Members of the Proposed Class have been subjected to sham loan accounting.

47

Exhibit 1 Page 47 of 263

Members of the Proposed Class have been subjected to forged documents.

80. Upon information and belief, the Proposed Class contains more than 140 members during the applicable limitations period. The actual number of members could potentially be in the thousands.

81. The patters, practices and/or policies described in this Petition demonstrate that withholding lien releases and mortgage releases after the loan has been paid is not unusual by the Defendants, rather, it is part and parcel of the Defendant's standard operating patterns, practices and/or policies.

## II.    NUMBEROSITY AND IMPRACTICALITY OF JOINDER

82. The members of the Proposed Class are sufficiently numerous to make joinder of their claims impracticable.

83. The exact number of Proposed Class members is unknown because such information is in the exclusive control of Defendants and requires discovery.

84. Although precise determination of the number of Proposed Class members is immeasurable at this time, it is significant and satisfies the numerosity requirement of title 12 O.S.A. § 12-2023(A) (1).

## III.    COMMON QUESTIONS OF LAW AND FACT

85. The claims alleged on behalf of Plaintiff and the Proposed Class raise questions of law and fact common to all Plaintiff and Proposed Class members. Among these questions are:

    a.  Whether members of the Proposed Class have been denied a release of lien or mortgage after a loan has been paid in full.

    b.  Whether members of the Proposed Class have been subjected to sham or forged loan agreements.

48

Exhibit 1 Page 48 of 263

c.  Whether members of the Proposed Class have been subjected to sham or forged accounting procedures.

d.  Whether members of the Proposed Class have been subjected to forged documents.

e.  Whether members of the Proposed Class have been subjected to wrongfully clouded title to property and real estate.

f.  Whether members of the Proposed Class have been subjected to wrongfully impacted ability to access lending services.

g.  Whether members of the Proposed Class have been subjected to wrongful credit reporting.

86. Thus, the common question requirement of 12 O.S.A. § 12-2023(A) (2) is satisfied.

## IV.    TYPICALITY OF CLAIMS AND RELIEF SOUGHT

87. Plaintiff is a member of the Proposed Class he seeks to represent.

88. The claims of Plaintiff are typical of the claims of the Proposed Class in that they all arise from the same unlawful patterns, practices and and/or policies of Defendants, and are based on the legal theory that the patterns, practices and/or policies violate legal rights.

89. Plaintiff and the members of the Proposed Class all allege that they each are the victims of unlawful withholding of liens and release of mortgages as the result of forged or fabricated documents.

90. The relief that Plaintiff seeks as a result of Defendants' unlawful patterns, practices and/or policies is typical of the relief which is sought on behalf of the Proposed Class.

91. Thus, the typicality requirement of 12 O.S.A. § 12-2023(A) (3).

49

Exhibit 1 Page 49 of 263

## V.     ADEQUACY OF REPRESENTATION

92. The interests of Plaintiff are co-extensive with those of the Proposed Class he seeks to represent in the instant case.

93. Plaintiff is willing and able to represent the Proposed Class fairly and vigorously as they pursue their similar individual claims.

94. Plaintiff has retained counsel who are qualified and experienced in banking class action litigation and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

95. The combined interests, experience and resources of Plaintiff and his counsel to competently litigate the individual and class claims at issue in the instant case satisfy the adequacy of representation requirement of 12 O.S.A. § 12-2023(A) (4).

## VI.     REQUIREMENTS OF RULE 12 O.S.A. § 12-2023(B) (1).

96. Without class certification, the same evidence and issues would be subject to prelitigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

97. Specifically, all evidence of Defendants' patterns, practices and/or policies and the issue of whether they are in violation of the law would be exchanged and litigated repeatedly.

98. Accordingly, certification of the Proposed Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Proposed Class and Defendants.

99. By filing the Petition, Plaintiff is preserving the rights of Proposed Class members with respect to the statute of limitations on their claims. Therefore, not certifying a class would substantially impair and/or impede the other members' ability to protect their interests.

## VII.     REQUIREMENTS OF RULE 12 O.S.A. § 12-2023(B) (2).

100.     Defendants have acted on grounds, described herein, generally applicable to Plaintiff and the members of the Prosed Class, by adopting and following systemic

50

Exhibit 1 Page 50 of 263

patterns, practices and/or policies that a damaging the rights of the Proposed Class members to clear and unencumbered title to their property and real estate.

101.    These wrongful acts are fostered by Defendants' standard patterns, practices and/or policies, are not sporadic or isolated, and support the request for final injunctive and declaratory relief with respect to Plaintiff and the Proposed Class as a whole.

102.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic wrongful acts of withholding clear title to property and real estate.

103.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the Class Members' entitlement to monetary and non-monetary remedies for individual losses caused by, and exemplary purposes necessitated by, such systemic wrongful acts.

104.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

## VIII.    REQUIREMENTS OF 12 O.S.A. § 12-2023(b) (3).

105.    The common issues of fact and law affecting Plaintiff's claims and those of the Proposed Class, including, but not limited to, the common issues identified in the paragraphs above, predominate over issues affecting only individual claims.

106.    The class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the Proposed Class.

107.    The cost of providing Defendants' pattern and practice of wrongful withholding makes it impracticable for the members of the Proposed Class to pursue their claims individually.

108.    The class action will not be difficult to manage for reasons including, but not limited to, the discrete organizational nature of the Proposed Class, as well as the common questions of law and fact described above.

51

Exhibit 1 Page 51 of 263

## FIRST CLASS ACTION CAUSE
### (Breach of Contract)
*On Behalf of Plaintiff and the Proposed Class*
*As to all Defendants*

109.    Plaintiff, on behalf of himself and the Proposed Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

h.    As described above, Defendants have wrongfully withheld release of liens and mortgages for the purpose of inflating the Defendants bank value in violation of the terms and agreements of the loan agreements, promissory notes and mortgages. The wrongful acts include, (a) denied a release of lien or mortgage after a loan has been paid in full, (b) subjected to sham and/or forged loan agreements, promissory notes, bank accounts and mortgages, (c) subjected to sham or forged accounting procedures and bank statements, (d) subjected to forged official bank documents, (e) subjected to clouded title to property and real estate, (f) subjected to reduced ability to access lending, (g) and subjected to negative impact on credit reporting.

110.    Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy the wrongful withholding of lien releases or mortgage releases for their own financial benefit at the expense of the Proposed Class.

111.    As a direct and proximate result of Defendants' unlawful withholding of lien releases and mortgage releases, Plaintiff and the Proposed Class have suffered, an continue to suffer, economic damages, loss of opportunity, damaged credit, loss of reputation, physical damage and mental anguish for which they are entitled to an award of damages.

112.    Defendants' unlawful withholding of lien releases and mortgages constitute reckless, malicious, willful and wanton violations of law for which Plaintiff and the Proposed Class are entitled to an award of punitive damages.

## SECOND CLASS ACTION CAUSE
### (Actual and Constructive Fraud)
*On Behalf of Plaintiff and the Proposed Class*
*As to all Defendants*

52

Exhibit 1 Page 52 of 263

113.    Plaintiff, on behalf of himself and the Proposed Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

114.    Defendants have committed actual and constructive fraud against the Proposed Class through their pattern, policies and/or procedures for not releasing liens to property and real estate.

115.    Defendants' fraudulent withholding of lien releases and mortgages constitute reckless, malicious, willful and wanton violations of law for which Plaintiff and the Proposed Class are entitled to an award of damages and punitive damages.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against the Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the laws of the United States and the State of Oklahoma.

B. An award of injunctive relief necessary to cure the Defendants' wrongful practices, policies and procedures to withhold lien releases and mortgage releases;

C. Certification of this action as a class action pursuant to title 12 O.S.A. § 12-2023 and the Oklahoma Rules of Civil Procedure.

Dated February 20, 2024

Respectfully Submitted,

Jeff Potts, OBA# 13756
Jeff Potts Law Office
1300 North Main Street
Muskogee, OK 74401
918 949-8901
jeffpottslawoffice@att.net

and

James G. Wilcoxen, OBA #9605
Wilcoxen & Wilcoxen
P.O. Box 357
Muskogee, OK 74402

53

Exhibit 1 Page 53 of 263

## VERIFICATION

COUNTY OF MUSKOGEE    )
                     )    SS
STATE OF OKLAHOMA    )

I, Jackie Gail Curtis, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_Jackie Curtis_
Jackie Gail Curtis

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024

#8922    _Mike Pate_
Notary Public

Exhibit 1 Page 54 of 263

## VERIFICATION

COUNTY OF MUSKOGEE    )
                                 )    SS
STATE OF OKLAHOMA      )

I, Donnie R. Yarbrough, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Donnie R. Yarbrough

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

## VERIFICATION

COUNTY OF MUSKOGEE    )
                                 )    SS
STATE OF OKLAHOMA      )

I, Cathy Yarbrough, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Cathy Yarbrough

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

Exhibit 1 Page 55 of 263

## VERIFICATION

COUNTY OF MUSKOGEE    )
                            )    SS

STATE OF OKLAHOMA    )

I, Donnie Yarbrough, owner of D & C Custom Brush Hogging, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Donnie Yarbrough,
Owner of D & C Custom Brush Hogging

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6.26.2024
# 8922
_____
Notary Public

## VERIFICATION

COUNTY OF MUSKOGEE    )
                            )    SS

STATE OF OKLAHOMA    )

I, Dalton Yarbrough, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Dalton Yarbrough

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

0.26.2024
# 8922
_____
Notary Public

Exhibit 1 Page 56 of 263

## VERIFICATION

COUNTY OF MUSKOGEE    )
                     )    SS
STATE OF OKLAHOMA     )

I, Colton Yarbrough, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_Colton Yarbrough_

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2027
#8922

## VERIFICATION

Exhibit 1 Page 57 of 263

COUNTY OF MUSKOGEE )
) SS
STATE OF OKLAHOMA )

I, Jessica Yarbrough, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Jessica Yarbrough

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

Exhibit 1 Page 58 of 263

## VERIFICATION

COUNTY OF MUSKOGEE          )

                                              )          SS

STATE OF OKLAHOMA          )

I, Garrett Kizzia, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Garrett Kizzia

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2020
#8922 _____
Notary Public

## VERIFICATION

Exhibit 1 Page 59 of 263

## VERIFICATION

COUNTY OF MUSKOGEE )

                       )   SS

STATE OF OKLAHOMA )

I, Sheila Kizzia, administrator for the Estate of Billy Terrill Kizzia, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

Sheila Kizzia
As administrator of the Estate of
Billy Terrill Kizzia

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024
# 8922                 Notary Public

## VERIFICATION

COUNTY OF MUSKOGEE )

                       )   SS

STATE OF OKLAHOMA )

I, Sheila Kizzia, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

Sheila Kizzia

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024
#8922                 Notary Public

Exhibit 1 Page 60 of 263

COUNTY OF MUSKOGEE    )

                                  )    SS

STATE OF OKLAHOMA     )

I, Dan Rosson, a/k/a William D. Rosson, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

                                         Dan Rosson, a/ka William D. Rosson

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024
#8922                        Notary Public

## VERIFICATION

COUNTY OF MUSKOGEE    )

                                  )    SS

STATE OF OKLAHOMA     )

I, Dan Rosson, owner of Rosson Speed and Marine, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

                                       Dan Rosson, owner of
                                       Rosson Speed and Marine

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024
#8922                        Notary Public

## VERIFICATION

Exhibit 1 Page 61 of 263

COUNTY OF MUSKOGEE    )

                                 )    SS

STATE OF OKLAHOMA     )

I, Dan Rosson, owner of R & S Tractors, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

 

_____

Dan Rosson, owner of

R & S Tractors

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

6-26-2024

#8927  _____

                        Notary Public

VERIFICATION

Exhibit 1 Page 62 of 263

COUNTY OF MUSKOGEE      )
                       )    SS
STATE OF OKLAHOMA       )

I, Danny Kizzia, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Danny Kizzia

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

9-26-2024

#8922 _____
Notary Public

**VERIFICATION**

Exhibit 1 Page 63 of 263

COUNTY OF MUSKOGEE      )
                       )      SS
STATE OF OKLAHOMA       )

I, Rita Ballinger, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Rita Ballinger

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

JILL ARMSTRONG
Notary Public, State of Oklahoma
Commission # 17006136
My Commission Expires 07-03-2025

Exhibit 1 Page 64 of 263

VERIFICATION

COUNTY OF MUSKOGEE        )
                         )    SS
STATE OF OKLAHOMA        )

I, Joe Schmidgall, the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Joe Schmidgall

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

VERIFICATION

Exhibit 1 Page 65 of 263

COUNTY OF MUSKOGEE     )
                                )    SS

STATE OF OKLAHOMA     )

I, Steven L. Hinds the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Steven L. Hinds

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

## VERIFICATION

COUNTY OF MUSKOGEE     )
                                )    SS

STATE OF OKLAHOMA     )

I, Tawnya D. Hinds the Plaintiff herein, have read the above and foregoing Petition and state the same is true and correct to the best of my knowledge.

_____
Tawnya D. Hinds

SUBSCRIBED AND SWORN to before me, a Notary Public, this 20th day of February 2024.

_____
Notary Public

Exhibit 1 Page 66 of 263

# EXHIBIT "A"

Exhibit 1 Page 67 of 263

## Note, Disclosure, and Security Agreement

| | | |
|---|---|---|
| **Lender**<br>FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | **Borrower**<br>JACKIE GAIL CURTIS<br>2105 N MAIN STREET APARTMENT 204<br>MUSKOGEE OK 74401 | Loan Number ___ 60023<br>Loan Date ___ 08/10/05<br>Maturity Date ___ 02/15/10<br>Loan Amount ___ 12,745.50<br>Renewal of ___ |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 12.3000 % | $ 3,920.07 | $ 12,667.00 | $16,587.07 |

**My Payment Schedule Will Be:**

| Payments | Amount of Payments | When Payments Are Due | "e" means an estimate. |
|---|---|---|---|
| 53 | $307.17 | Monthly Beginning - 09/15/05 ✗ | |
| 1 | $307.06 | FEBRUARY 15, 2010 ✗ | |
| | $ | | |
| | $ | | |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ **Late Charge.** If a payment is late (more than ___ 11 ___ days after due) I will be charged
A FEE OF $16.50 OR 5% OF THE UNPAID AMOUNT OF THE PAYMENT, WHICHEVER IS GREATER

**Security.** I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR G04813599

**Filing Fees.** $ 42.00

**Non-filing Insurance.** $___

☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.

☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.

**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

☐ Other Terms.

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 12,745.50,
plus interest from AUGUST 10, 2005 at the rate of
12.0000 % per year until FEBRUARY 15, 2010.
Interest accrues on a Actual/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is DEBT CONSOLIDATION.

**Payment.** I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has 54 payments. The first payment will be in the amount of $ 307.17 and will be due 09/15/05. A payment of $ 307.17 will be due on the 15th day of each Month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 02/15/10.

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.

☐ Interest will accrue at the rate of ___ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ **Additional Finance Charge.** I also agree to pay a fee of $___. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $___ if I pay this note off before you have earned that much in finance charges.

☐ **Returned Payment Fee.** I agree to pay a service charge of $___ for each payment (check or automatic payment) returned unpaid.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $___ |
| Amount paid on my (loan) account | $___ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | $___ |
| To insurance companies | $___ |
| To public officials | $___ |
| SEE SEPARATE ITEMIZATION | $___ |
| ___ | $___ |
| (less) Prepaid Finance Charge(s) | $___ |
| Amount Financed | $___ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR G04813599

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.

☐ **Other Security.** This Loan Agreement is secured by

ExpereI Simple Interest Note, Disclosure, and Security Agreement<br>© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 68 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates.
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.
- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

**Insurance**

**Credit Insurance.** Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☒ None     Premium $_____
                            Term _____

**Credit Disability**

☐ Single ☐ Joint ☒ None     Premium $_____
                            Term _____

_____     Premium $_____
☐ Single ☐ Joint ☐ None     Term _____

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB_____

X_____ DOB_____

X_____ DOB_____

---

☒ **Single Interest Insurance.** I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ 65.00 _____ for _____ 54 MONTH(S) _____ of coverage.

☐ **Property Insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ N/A _____ for _____ N/A _____ of coverage.

**Federal Sale of Insurance Disclosure**

*Product* refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.
- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____
  JACKIE GAIL CURTIS

X_____ Date_____

X_____ Date_____

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**Signatures**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date. Cosigners. See Notice to Cosigner above before signing.

X_____
  JACKIE GAIL CURTIS

X_____

X_____

(Optional)

Signed _____ For Lender
Title  SUSAN CHAPMAN
       AVP

FORT GIBSON STATE BANK
NOTICE OF YOUR
FINANCIAL PRIVACY RIGHTS

Protecting your privacy is important to FORT GIBSON STATE BANK
and our employees. We want you to understand what information we
collect and how we use it. In order to provide our customers with
a broad range of financial products and services as effectively
and conveniently as possible, we use technology to manage and
maintain customer information. The following policy serves as a
standard for all FORT GIBSON STATE BANK employees for collection,
use, retention, and security of nonpublic personal information.

WHAT INFORMATION WE COLLECT
We may collect "nonpublic personal information" about you from
the following sources:
  * Information we receive from you on applications or other
    loan and account forms;
  * Information about your transactions with us or others; and
  * Information we receive from third parties such as credit
    bureaus.
"Nonpublic personal information" is nonpublic information about
you that we obtain in connection with providing a financial pro-
duct or service to you. For example, nonpublic personal informa-
tion includes information regarding your account balance, payment
history, and overdraft history.

WHAT INFORMATION WE DISCLOSE
We are permitted under law to disclose nonpublic personal infor-
mation about you to other third parties in certain circumstances.
For example, we may disclose nonpublic personal information about
you to third parties to assist us in servicing your loan or ac-
count with us, to government entities in response to subpoenas,
and to credit bureaus. We do not disclose any nonpublic personal
information about you to anyone, except as permitted by law.

If you decide to close your account(s) or become an inactive
customer, we will continue to adhere to the privacy policies and
practices described in this notice.

OUR SECURITY PROCEDURES
We also take steps to safeguard customer information. We restrict
access to your personal and account information to those employ-
ees who need to know that informtion to provide products or ser-
vices to you. Employees who violate these standards will be sub-
ject to disciplinary measures. We maintain physical, electronic,
and procedural safeguards that comply with federal standards to
guard your nonpublic personal information.

FORT GIBSON STATE BANK
200 S LEE STREET
FORT GIBSON, OK  74434
(918) 478-2437
MEMBER FDIC

Exhibit 1 Page 71 of 263

## Notice of Negative Information (Pre-sharing)

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. "Negative information" means information concerning delinquencies, late payments, insolvency, or any form of default. <u>This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement.</u>

After providing this notice, additional negative information may be submitted without providing another notice.

\* \* \* \*

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Experts® © 2004 Bankers Systems, Inc., St. Cloud, MN  Form REGV-NEG-PRE 8/10/2004

*(page 1 of 1)*

Exhibit 1 Page 72 of 263

# EXHIBIT "B"

Exhibit 1 Page 73 of 263

## Note, Disclosure, and Security Agreement

| | | |
|---|---|---|
| **Lender**<br>FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | **Borrower**<br>JACKIE GAIL CURTIS<br>2105 N MAIN APT 204<br>MUSKOGEE OK 74401 | Loan Number _____ 61113<br>Loan Date _____ 09/12/06<br>Maturity Date _____ 03/12/11<br>Loan Amount _____ 16,559.01<br>Renewal of _____ |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| **Annual Percentage Rate**<br>The cost of my credit as a yearly rate. | **Finance Charge**<br>The dollar amount the credit will cost me. | **Amount Financed**<br>The amount of credit provided to me or on my behalf. | **Total of Payments**<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 12.2226 % | $ 5,028.43 | $ 16,484.01 | $21,512.44 |

**My Payment Schedule Will Be:**

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 53 | $398.38 | Monthly Beginning - 10/12/06 |
| 1 | $398.30 | MARCH 12, 2011 |
| | $ | |
| | $ | |

"e" means an estimate.

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ **Late Charge.** If a payment is late (more than ____11____ days after due) I will be charged
A FEE OF $20.50 or 5% OF THE UNPAID AMOUNT OF THE PAYMENT, WHICHEVER IS GREATER

**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR G04813599

**Filing Fees.** $_____

**Non-filing Insurance.** $_____
☐ Required Deposit. The annual percentage rate does not take into account my required deposit.
☒ Assumption. Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 16,559.01 ____.
plus interest from ___SEPTEMBER 12, 2006___ at the rate of
12.00 % per year until ___MARCH 12, 2011___.
Interest accrues on a ___Actual/365___ basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is _____
DEBT CONSOLIDATION ____.

**Payment.** I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has ___54___ payments. The first payment will be in the amount of $ 398.38 ____ and will be due ___10/12/06___. A payment of $ 398.38 ____ will be due on the ___12th___ day of each ___Month___ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _03/12/11_____.

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ **Additional Finance Charge.** I also agree to pay a fee of $_____ This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.

☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

☐ Other Terms.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $_____ |
| To public officials | $_____ |
| SEE SEPARATE ITEMIZATION | $_____ |
| | $_____ |
| | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR G04813599

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.
☐ **Other Security.** This Loan Agreement is secured by

Expere™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 74 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates.

- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.

- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

Insurance. I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

· You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.

· The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.

· I will pay for the costs of any Property insurance you provide.

Authority to Perform. I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Third Party Agreement

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

## Insurance

Credit Insurance. Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

Credit Life

☐ Single ☐ Joint ☒ None       Premium $_____
                               Term _____

Credit Disability

☐ Single ☐ Joint ☒ None       Premium $_____
                               Term _____

☐ Single ☐ Joint ☐ None       Premium $_____
                               Term _____

Signature. My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X___Jackie Curtis_____ DOB_____
X_____ DOB_____
X_____ DOB_____

☒ Single Interest Insurance. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____5.00_____
for _____54 MONTH(S)_____ of coverage.

☐ Property Insurance. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____N/A_____ for
_____N/A_____ of coverage.

### Federal Sale of Insurance Disclosure

Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

· The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.

· The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.

· The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).

· The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.

· ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X___Jackie Gail Curtis_____ Date_____
  JACKIE GAIL CURTIS

X_____ Date_____

X_____ Date_____

### NOTICE TO COSIGNER

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### Signatures

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.

Cosigners. See Notice to Cosigner above before signing.

X___Jackie Curtis_____
  JACKIE GAIL CURTIS

X_____

X_____

(Optional)
Signed _____ For Lender
Title   SUSAN CHAPMAN
        AVP

## Note, Disclosure, and Security Agreement

| Lender | Borrower | |
|---|---|---|
| FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | JACKIE GAIL CURTIS<br>2105 N MAIN APT 204<br>MUSKOGEE OK 74401 | Loan Number ____ 61113<br>Loan Date ____ 09/12/06<br>Maturity Date ____ 03/12/11<br>Loan Amount ____ 16,559.01 |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

Renewal of ____

### Truth-in-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 12.2226 % | $ 5,028.43 | $ 16,484.01 | $21,512.44 |

"e" means an estimate.

**My Payment Schedule Will Be:**

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 53 | $ 398.38 | Monthly Beginning - 10/12/06 |
| 1 | $ 398.30 | MARCH 12, 2011 |
| | $ | |
| | $ | |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.

☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ **Late Charge.** If a payment is late (more than ___11___ days after due) I will be charged
A FEE OF $20.50 or 5% OF THE UNPAID AMOUNT OF THE PAYMENT, WHICHEVER IS GREATER

**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR GO4813599

**Filing Fees.** $____

**Non-filing Insurance.** $____

☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.

☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.

**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

☐ Other Terms.

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 16,559.01 ____, plus interest from __SEPTEMBER 12, 2006__ at the rate of __12.00__ % per year until __MARCH 12, 2011__. Interest accrues on a __Actual/365__ basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is ____ DEBT CONSOLIDATION ____.

**Payment.** I will pay this note as follows:

☐ Interest due

Principal due

☒ This note has __54__ payments. The first payment will be in the amount of $ 398.38 ____ and will be due __10/12/06__. A payment of $ 398.38 ____ will be due on the __12th__ day of each __Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __03/12/11__.

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.

☐ Interest will accrue at the rate of ____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ **Additional Finance Charge.** I also agree to pay a fee of $____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $____ if I pay this note off before you have earned that much in finance charges.

☐ **Returned Payment Fee.** I agree to pay a service charge of $____ for each payment (check or automatic payment) returned unpaid.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $____ |
| Amount paid on my (loan) account | $____ |
| ____ | $____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $____ |
| To public officials | $____ |
| SEE SEPARATE ITEMIZATION | $____ |
| ____ | $____ |
| (less) Prepaid Finance Charge(s) | $____ |
| Amount Financed | $____ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2000 PROGATOR BOAT GA004640B000
2000 JOHNSON 200 HP MOTOR GO4813599

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.

☐ **Other Security.** This Loan Agreement is secured by

Expere™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 77 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates:
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur:
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following:
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.
- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

**Insurance**

Credit Insurance. Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

Credit Life    Premium $_____
☐ Single ☐ Joint ☒ None   Term _____
Credit Disability   Premium $_____
☐ Single ☐ Joint ☒ None   Term _____
Premium $_____
☐ Single ☐ Joint ☐ None   Term _____

Signature. My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.
X_____ DOB_____
X_____ DOB_____
X_____ DOB_____

☒ Single Interest Insurance. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____5.00_____
for ___54 MONTH(S)___ of coverage.

☐ Property Insurance. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $___N/A___ for ___N/A___ of coverage.

**Federal Sale of Insurance Disclosure**

Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.
- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____
JACKIE GAIL CURTIS
X_____ Date_____
X_____ Date_____

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**Signatures**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.
Cosigners. See Notice to Cosigner above before signing.

X_____
JACKIE GAIL CURTIS
X_____
X_____

(Optional)
Signed _____ For Lender
Title SUSAN CHAPMAN AVP

# EXHIBIT "C"

Exhibit 1 Page 80 of 263

## Note, Disclosure, and Security Agreement

| Lender | Borrower | |
|---|---|---|
| FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | JACKIE GAIL CURTIS<br>2105 N MAIN APT 204<br>MUSKOGEE OK 74401 | Loan Number **61214**<br>Loan Date **10/20/06**<br>Maturity Date **04/20/11**<br>Loan Amount **17,714.32**<br>Renewal of |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 11.2236 % | $ 4,907.42 | $ 17,635.22 | $22,542.64 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 53 | $ 417.45 | Monthly Beginning - 11/20/06 |
| 1 | $ 417.79 | APRIL 20, 2011  X |
| | $ | |
| | $ | |

"e" means an estimate.

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ **Late Charge.** If a payment is late (more than __11__ days after due) I will be charged
A FEE OF $20.50 or 5% OF THE UNPAID AMOUNT OF THE PAYMENT, WHICHEVER IS GREATER

**Security.** I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2003 CADILLAC CTS# 1G6DM57N730106179

**Filing Fees.** $10.00

**Non-filing Insurance.** $

☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.

☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.

**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

☐ Other Terms.

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 17,714.32 , plus interest from OCTOBER 20, 2006 at the rate of 11.50 % per year until APRIL 20, 2011 .

Interest accrues on a Actual/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is PURCHASE CADILLAC .

**Payment.** I will pay this note as follows:

☐ Interest due

Principal due

☒ This note has 54 payments. The first payment will be in the amount of $ 417.45 and will be due 11/20/06 . A payment of $ 417.45 will be due on the 20th day of each Month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 04/20/11 .

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ **Additional Finance Charge.** I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.

☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $ |
| Amount paid on my (loan) account | $ |
| | $ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $ |
| To public officials | $ |
| SEE SEPARATE ITEMIZATION | $ |
| | $ |
| | $ |
| (less) Prepaid Finance Charge(s) | $ |
| Amount Financed | $ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2003 CADILLAC CTS# 1G6DM57N730106179

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.

☐ **Other Security.** This Loan Agreement is secured by

---

ExpereL™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDeS-SI-OK 5/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 81 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates.
• If this Loan Agreement is payable on demand, on the date you make demand for payment.
• If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
• On the date of the last scheduled payment of principal.
• On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.
I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.
• I fail to make a payment when due.
• I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
• Make all or any part of the amount owing by the terms of this Loan Agreement due.
• Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
• Make a claim for any and all insurance benefits or refunds that may be available on my default.
• Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
• Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
• Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law): keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

Insurance. I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

Authority to Perform. I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Third Party Agreement

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

### Insurance

Credit Insurance. Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

| Credit Life | Premium | $  964.22 |
| [X] Single [ ] Joint [ ] None | Term | 54 Months |
| Credit Disability | Premium | $ |
| [ ] Single [ ] Joint [X] None | Term | |
| | Premium | $ |
| [ ] Single [ ] Joint [ ] None | Term | |

Signature. My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB 03/18/1945

X_____ DOB_____

X_____ DOB_____

[K] Single Interest Insurance. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____5.00

for ___54 MONTH(S)___ of coverage.

[ ] Property Insurance. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____N/A_____ for _____N/A_____ of coverage.

### Federal Sale of Insurance Disclosure

Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- [ ] If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____
JACKIE GAIL CURTIS

X_____ Date_____

X_____ Date_____

### NOTICE TO COSIGNER

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### Signatures

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date. Cosigners. See Notice to Cosigner above before signing.

X_____
JACKIE GAIL CURTIS

X_____

X_____

X_____

(Optional)

Signed _____ For Lender
Title  SUSAN CHAPMAN
       AVP

ExperE™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NOaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 3 of 3

Exhibit 1 Page 83 of 263

```
JACKIE GAIL CURTIS                          FORT GIBSON STATE BANK
2105 N MAIN APT 204                         PO BOX 130 - 200 SOUTH LEE ST
MUSKOGEE OK  74401                          FORT GIBSON, OK 74434


        BORROWER'S NAME AND ADDRESS              LENDER'S NAME AND ADDRESS
```

| | |
|---|---|
| Loan Number | 61214 |
| Date | OCTOBER 20, 2006 |
| Maturity Date | APRIL 20, 2011 |
| Loan Amount | 17,714.32 |

# AMOUNT FINANCED ITEMIZATION

"Me" and "My" refer to each borrower above.

| | | | |
|---|---|---|---|
| Amount given to me directly | | | |
| Amount paid on my (loan) account | | | |
| AMOUNTS PAID TO OTHERS ON MY BEHALF: * | | | |
| Insurance Companies | 964.22 | | |
| Public Officials | 10.00 | | |
| Credit Report Fee | 4.10 | | |
| | | CC AUTO WORLD | 6,000.00 |
| | | PAY OFF FGSB LN 60067 | 10,264.00 |
| Document Preparation Fee | 75.00 | | |
| GAP INSURANCE | 320.00 | | |
| PAYMENT BOOK | 5.00 | | |
| VSI INSURANCE | 72.00 | | |
| | | (less) PREPAID FINANCE CHARGE(S) | 79.10 |

| AMOUNT FINANCED | 17,635.22 |
|---|---|

(Add all items financed and subtract prepaid finance charges.)
*Lender may retain or receive a portion of these amounts.

**BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.**

X _____     X _____
JACKIE GAIL CURTIS

X _____     X _____

AFI JHA 07/02

Exhibit 1 Page 84 of 263

FORT GIBSON STATE BANK
NOTICE OF YOUR
FINANCIAL PRIVACY RIGHTS

Protecting your privacy is important to FORT GIBSON STATE BANK
and our employees.  We want you to understand what information we
collect and how we use it. In order to provide our customers with
a broad range of financial products and services as effectively
and conveniently as possible, we use technology to manage and
maintain customer information.  The following policy serves as a
standard for all FORT GIBSON STATE BANK employees for collection,
use, retention, and security of nonpublic personal information.

WHAT INFORMATION WE COLLECT
We may collect "nonpublic personal information" about you from
the following sources:
*   Information we receive from you on applications or other
    loan and account forms;
*   Information about your transactions with us or others;  and
*   Information we receive from third parties such as credit
    bureaus.
"Nonpublic personal information" is nonpublic information about
you that we obtain in connection with providing a financial pro-
duct or service to you.  For example, nonpublic personal informa-
tion includes information regarding your account balance, payment
history, and overdraft history.

WHAT INFORMATION WE DISCLOSE
We are permitted under law to disclose nonpublic personal infor-
mation about you to other third parties in certain circumstances.
For example, we may disclose nonpublic personal information about
you to third parties to assist us in servicing your loan or ac-
count with us, to government entities in response to subpoenas,
and to credit bureaus.  We do not disclose any nonpublic personal
information about you to anyone, except as permitted by law.

If you decide to close your account(s) or become an inactive
customer, we will continue to adhere to the privacy policies and
practices described in this notice.

OUR SECURITY PROCEDURES
We also take steps to safeguard customer information. We restrict
access to your personal and account information to those employ-
ees who need to know that informtion to provide products or ser-
vices to you.  Employees who violate these standards will be sub-
ject to disciplinary measures.  We maintain physical, electronic,
and procedural safeguards that comply with federal standards to
guard your nonpublic personal information.

FORT GIBSON STATE BANK
200 S LEE STREET
FORT GIBSON, OK  74434
(918) 478-2437
MEMBER FDIC

Exhibit 1 Page 85 of 263

## Notice of Negative Information (Pre-sharing)

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. "Negative information" means information concerning delinquencies, late payments, insolvency, or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement.

After providing this notice, additional negative information may be submitted without providing another notice.

\* \* \* \*

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Expere® © 2004 Bankers Systems, Inc., St. Cloud, MN Form REGV-NEG-PRE 8/10/2004

# EXHIBIT "D"

Exhibit 1 Page 87 of 263

Robert Bruce Fisher

668861

# FORT GIBSON STATE BANK

Phone: 918 478 2437

PO Box 130

Fort Gibson Oklahoma 74434

I, the undersigned, do hereby confirm that I have received the sum stated below as an advance on that certain loan from Fort Gibson State Bank

Dated: _____ for $ _____

Dated this ____ 2u ____ day of ____ Mauu ____ 2018

Witness: ____ Su ____ Signed: Robert B. Fisher

The amount of this advance is $ ____ $000 900.00 ____ making the balance of this note $ _____.

EXHIBIT

Exhibit 1 Page 88 of 263

# EXHIBIT "E"

Exhibit 1 Page 89 of 263

# FORT GIBSON STATE BANK

October 21, 2019

Cathy Yarbrough
2811 W Davis Field Road
Muskogee
OK 74401

Dear Customer:

Re: Your Loan Account #68694

As you are aware, during an investigation of your loan account, we discovered that $4,932.35 was advanced on your account and the advance form(s) were not signed by you. In our transaction verification with you, it was determined that $4,932.35 of this amount was unauthorized.

This amount plus all accrued interest for a total of $6,917.041 was credited back to your loan #68694. If paid out, your current loan#_____ or deposit account #_____ on March 29, 2019. If you no longer have any accounts with us, a Cashier's Check was issued to you.

During the investigation of your account, reporting of your account information to the credit bureaus was temporarily suspended. Once the corrections were made and true balances were determined, any negative credit history was corrected, and reporting of your account information has resumed.

We regret any inconvenience that this may have caused you.

Sincerely,

Matt Hendrix
President and CEO

918-478-2437     P.O. BOX 130     FORT GIBSON, OKLAHOMA 74434



Exhibit 1 Page 90 of 263

# EXHIBIT "F"

Exhibit 1 Page 91 of 263

## Note, Disclosure, and Security Agreement

**Lender**
FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

**Borrower**
GARRETT THOMAS KIZZIA
PO BOX 25
BRAGGS OK 74423

| | |
|---|---|
| Loan Number | 63886 |
| Loan Date | 12/07/09 |
| Maturity Date | 12/07/12 |
| Loan Amount | 6,542.25 |
| Renewal of | |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| Annual Percentage Rate The cost of my credit as a yearly rate. | Finance Charge The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 11.1063 % | $ 1,161.69 | $ 6,438.00 | $7,599.69 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 35 | $ 211.10 | Monthly Beginning - 01/07/10 | "e" means an estimate. |
| 1 | $ 211.19 | DECEMBER 07, 2012 | |
| | $ | | |
| | $ | | |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge. ☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.
☒ **Late Charge.** If a payment is late (more than ____10____ days after due) I will be charged THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT
**Security.** I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2002 JEEP CHEROKEE #1J4GL58K32W201267

Filing Fees. $ 20.00

Non-Filing Insurance. $ _____
☐ Required Deposit. The annual percentage rate does not take into account my required deposit.
☒ Assumption. Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**By Renewal**

6-16-11

Ft. Gibson State Bank
P.O. Box 130
Ft. Gibson, OK 74434

☐ Other Terms.

### Promissory Note

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 6,542.25 plus interest from ____DECEMBER 07, 2009____ at the rate of ____10.00____ % per year until ____DECEMBER 07, 2012____. Interest accrues on a ____Actual/365____ basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is ____PURCHASE VEHICLE____.
**Payment.** I will pay this note as follows:
☐ Interest due

  Principal due

☒ This note has ____35____ payments. The first payment will be in the amount of $ 211.10 and will be due ____01/07/10____. A payment of $ 211.10 will be due on the ____7th____ day of each ____Month____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due 12/07/12.
**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of ____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☐ **Additional Finance Charge.** I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.
☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | $_____ |
| To insurance companies | $_____ |
| To public officials | $_____ |
| SEE SEPARATE ITEMIZATION | $_____ |
| | $_____ |
| | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2002 JEEP CHEROKEE #1J4GL58K32W201267

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.
☐ **Other Security.** This Loan Agreement is secured by

---

ExperD Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
_____ Page 1 of 3

G. Kizzia 0091
Exhibit 1 Page 92 of 263

**Additional Terms of the Promissory Note**

**Definitions.** As used in this Loan Agreement, ☑ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosure, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates:
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debt. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to my expenses of collection and enforcement and then to the Secured Debt; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debt.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other signer. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are your exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

**Additional Terms of the Security Agreement**

**Generally.** Property means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in household goods in connection with a consumer loan, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, in which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against one or on the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you to (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

ExpereE Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 2 of 3

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debt. If the insurance proceeds do not cover the amount I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debt. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

• You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.

• The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.

• I will pay for the costs of any Property insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debt. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower. I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

**Insurance**

**Credit Insurance.** Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

**Credit Life:**

☐ Single ☐ Joint ☒ None

Premium $_____
Term _____

**Credit Disability**

☐ Single ☐ Joint ☒ None

Premium $_____
Term _____

Premium $_____
Term _____

☐ Single ☐ Joint ☐ None

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB_____
X_____ DOB_____
X_____ DOB_____

☒ **Single interest insurance.** I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____99.00_____
for ____14 MONTH(S)_____ of coverage.

☐ **Property insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____N/A_____ for
_____N/A_____ of coverage.

**Federal Sale of Insurance Disclosure**

Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

• The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.

• The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.

• The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).

• The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.

• ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____
GARRETT THOMAS KIZZIA

X_____ Date_____

X_____ Date_____

**Notice to Cosigner**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**Signature**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date. Cosigners. See Notice to Cosigner above before signing.

X_____
GARRETT THOMAS KIZZIA

X_____

X_____

(Optional)
Signed _____ For Lender
Title _____ SUSAN CHAPMAN
AVP

ExpertN Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDeS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 3 of 3

# EXHIBIT "G"

Exhibit 1 Page 95 of 263

## Note, Disclosure, and Security Agreement

| Lender | Borrower | | |
|---|---|---|---|
| FORT GIBSON STATE BANK | GARRETT THOMAS KIZZIA | Loan Number | 65075 |
| PO BOX 130 - 200 SOUTH LEE ST | PO BOX 25 | Loan Date | 06/15/11 |
| FORT GIBSON, OK 74434 | BRAGGS OK 74423 | Maturity Date | 07/03/15 |
| | | Loan Amount | 14,829.32 |
| | ☐ Refer to the attached addendum for additional Borrowers and their signatures. | Renewal of | |

**Truth-In-Lending Disclosures**

| Annual Percentage Rate The cost of my credit as a yearly rate. | Finance Charge The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 10.3891 % | $ 3,416.77 | $ 14,722.82 | $18,139.89 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due | "e" means an estimate. |
|---|---|---|---|
| 47 | $377.90 | Monthly Beginning - 08/01/11 | |
| 1 | $378.29 | JULY 03, 2015 | |
| | $ | | |
| | $ | | |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.
☒ **Late Charge.** If a payment is late (more than ___11___ days after due) I will be charged
THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT.
**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2002 JEEP CHEROKEE #1J4GLS8K92M201267
1993 JAYCO 27FT TT #1UXBJ02N3PICK0147

**Filing Fees.** $_____
**Non-filing Insurance.** $_____
☐ **Required Deposit.** This annual percentage rate does not take into account my required deposit.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

☐ Other Terms.

**Promissory Note**

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 14,829.32 ,
plus interest from JUNE 15, 2011 at the rate of 10.00 % per year until JULY 03, 2015 .
Interest accrues on a Actual/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-In-Lending Disclosures. The purpose of this loan is REFINANCE .
**Payment.** I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has 48 payments. The first payment will be in the amount of $ 377.90 and will be due 08/01/11 . A payment of $ 377.90 will be due on the 1st day of each Month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 07/03/15 .
**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☐ **Additional Finance Charge.** I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.
☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

**Itemization of Amount Financed**

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | $_____ |
| To insurance companies | $_____ |
| To public officials | $_____ |
| SEE SEPARATE ITEMIZATION | $_____ |
| | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

**Security Agreement**

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2002 JEEP CHEROKEE #1J4GLS8K92M201267
1993 JAYCO 27FT TT #1UXBJ02N3PICK0147

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.
☐ **Other Security.** This Loan Agreement is secured by _____

**Exper** Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDe6-SI-OK 8/1/2002

Consumer Loan - Not for Open-End Credit
GK        Page 1 of 3

G. Kizzia 0001
Exhibit 1 Page 96 of 263

**Additional Terms of the Promissory Note**

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates:
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur:
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against any right I have to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay my reasonable attorneys' fee, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

**Additional Terms of the Security Agreement**

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in household goods in connection with a consumer loan, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debt. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debt. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following:
- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover any equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property Insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debt. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purpose of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, any interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

x _____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

**Insurance.**

Credit Insurance. Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☒ None      Premium $ _____   Term _____

**Credit Disability**

☐ Single ☐ Joint ☒ None      Premium $ _____   Term _____

☐ Single ☐ Joint ☐ None      Premium $ _____   Term _____

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

x 12/00/91 _____ DOB _____

x _____ DOB _____

x _____ DOB _____

☐ **Single Interest Insurance.** I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ 120.00

for ___ 48 MONTH(S) ___ of coverage.

☐ **Property Insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ ___ N/A ___ for ___ N/A ___ of coverage.

**Federal Sale of Insurance Disclosure**

*Product* refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.
- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

x _____ Date _____
   GARRETT THOMAS KIZZIA

x _____ Date _____

x _____ Date _____

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**Signatures**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date. Cosigners: See Notice to Cosigner above before signing.

x _____
   GARRETT THOMAS KIZZIA

x _____

x _____

(Optional)

Signed _____ For Lender
      SUSAN CHAPMAN
Title  AVP

G. Kizzia 0003
Exhibit 1 Page 98 of 263

# EXHIBIT "H"

Exhibit 1 Page 99 of 263

```
GARRETT THOMAS KIZZIA                    FORT GIBSON STATE BANK
PO BOX 25                                PO BOX 130 - 200 SOUTH LEE ST
BRAGGS OK  74623                         FORT GIBSON, OK 74434


        BORROWER'S NAME AND ADDRESS              LENDER'S NAME AND ADDRESS
```

Loan Number _____ 65075
Date _____ JUNE 15, 2011
Maturity Date _____ JULY 03, 2015
Loan Amount _____ 14,829.32

## AMOUNT FINANCED ITEMIZATION

"Me" and "My" refer to each borrower above.

Amount given to me directly _____
Amount paid on my (loan) account _____

AMOUNTS PAID TO OTHERS ON MY BEHALF: *
Insurance Companies _____
Public Officials _____

Credit Report Fee _____ 6.50

REFI FGSB LN 63527 _____ 6,224.96
REFI FGSB LN 63896 _____ 6,717.86
Document Preparation Fee _____ 95.00    CC _____ 1,000.00

GAP INSURANCE _____ 660.00
PAYMENT BOOK _____ 5.00
VSI INSURANCE _____ 120.00

(less) PREPAID FINANCE CHARGE(S) _____ 106.50

| AMOUNT FINANCED | 14,722.82 |
|---|---|

(Add all items financed and subtract prepaid finance charges.)
*Lender may retain or receive a portion of these amounts.

**BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.**

X _____    X _____
GARRETT THOMAS KIZZIA

X _____    X _____

AR JHA 07/02

G. Kizzia 0004
Exhibit 1 Page 100 of 263

# EXHIBIT "I"

Exhibit 1 Page 101 of 263

## Note, Disclosure, and Security Agreement

#25

**Lender**
FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

**Borrower**
DONNIE R YARBROUGH

| | |
|---|---|
| Loan Number | 55265 |
| Loan Date | 08/26/11 |
| Maturity Date | 09/10/17 |
| Loan Amount | 40,864.79 |
| Renewal of | |

*[handwritten]* Rolled into loan #69928 on 10-6-17 WHAT??

*[handwritten]* But according to letter Susan wrote during home re-fi, this note was included in/and paid off with the $36,000 check to FGSB.

### Truth-in-Lending Disclosures

**Annual Percentage Rate**
The cost of my credit as a yearly rate. **9.0965 %**

...vided to me

**Total of Payments**
The amount I will have paid when I have made all scheduled payments.
**$53,239.27**

"e" means an estimate.

**My Payment Schedule Will Be:**

| Payments | Amount of Payments |
|---|---|
| 71 | $739.44 |
| 1 | $739.03 |
| | $ |
| | $ |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.
☒ **Late Charge.** If a payment is late (more than __11__ days after due) I will be charged
THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT
**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) VEHICLES, MOWERS, MOTORCYCLE, TRACTOR

**Filing Fees.** $ 41.00
**Non-filing Insurance.** $
☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 40,864.79
plus interest from AUGUST 26, 2011 at the rate of 9.00 % per year until SEPTEMBER 10, 2017.
Interest accrues on a Actual/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is REFINANCE AND FIX TRACTOR.
**Payment.** I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has __72__ payments. The first payment will be in the amount of $ 739.44 and will be due 10/10/11. A payment of $ 739.44 will be due on the 10th day of each Month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 09/10/17.
**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☐ **Additional Finance Charge.** I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.
☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

☐ Other Terms.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $ |
| Amount paid on my (loan) account | $ |
| | $ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $ |
| To public officials | $ |
| SEE SEPARATE ITEMIZATION | $ |
| | $ |
| | $ |
| (less) Prepaid Finance Charge(s) | $ |
| Amount Financed | $ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:

*See Exhibit 'A' Attached Hereto and Incorporated Herein by Reference.

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.
☐ **Other Security.** This Loan Agreement is secured by

Exer! Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDaS-SI-OK 8/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 102 of 263

## Note, Disclosure, and Security Agreement

| Lender | Borrower | |
|---|---|---|
| FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | DONNIE R YARBROUGH<br>2811 W DAVIS FIELD ROAD<br>MUSKOGEE OK 74401 | Loan Number: 65265<br>Loan Date: 08/26/11<br>Maturity Date: 09/10/17<br>Loan Amount: 40,864.79<br>Renewal of: |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 9.0965 % | $ 12,480.98 | $ 40,758.29 | $ 53,239.27 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | $ 739.44 | Monthly Beginning - 10/10/11 |
| 1 | $ 739.03 | SEPTEMBER 10, 2017 |
| | $ | |
| | $ | |

"e" means an estimate.

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ **Late Charge.** If a payment is late (more than ___11___ days after due) I will be charged THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT

**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) VEHICLES, MOWERS, MOTORCYCLE, TRACTOR

**Filing Fees.** $ 41.00

**Non-filing Insurance.** $_____
☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 40,864.79, plus interest from AUGUST 26, 2011 at the rate of 9.00 % per year until SEPTEMBER 10, 2017.
Interest accrues on a Actual/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is REFINANCE AND FIX TRACTOR.
**Payment.** I will pay this note as follows:

☐ Interest due

Principal due

☒ This note has ___72___ payments. The first payment will be in the amount of $ 739.44 and will be due 10/10/11. A payment of $ 739.44 will be due on the 10th day of each Month thereafter. The final payment of the entire unpaid balance of principal and interest will be due 09/10/17

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ **Additional Finance Charge.** I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ **Minimum Finance Charge.** I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.

☐ **Returned Payment Fee.** I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

☐ **Other Terms.**

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $_____ |
| To public officials | $_____ |
| SEE SEPARATE ITEMIZATION | $_____ |
| | $_____ |
| _____ | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

### Security Agreement

**Security.** To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:

*See Exhibit 'A' Attached Hereto and Incorporated Herein by Reference.

☒ **All Debts.** The Property will also serve as collateral for all present and future debts.
☐ **Other Security.** This Loan Agreement is secured by

ExpereSM Simple Interest Note, Disclosure, and Security Agreement
©2002 Bankers Systems, Inc., St. Cloud, MN Form NDsS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 1 of 3

Exhibit 1 Page 103 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I*, *me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates.
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debt.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fees, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

insurance. I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable.

**Insurance**

**Credit Insurance.** Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

| Credit Life | Premium | $_____ |
|---|---|---|
| ☐ Single ☐ Joint ☒ None | Term | _____ |
| Credit Disability | Premium | $_____ |
| ☐ Single ☐ Joint ☒ None | Term | _____ |
| | Premium | $_____ |
| ☐ Single ☐ Joint ☐ None | Term | _____ |

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB_____

X_____ DOB_____

X_____ DOB_____

☒ **Single Interest Insurance.** I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ 120.00

for _____ 72 MONTH(S) _____ of coverage.

☐ **Property Insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ N/A _____ for

_____ N/A _____ of coverage.

**Federal Sale of Insurance Disclosure**

*Product* refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____

DONNIE R. YARBROUGH

X_____ Date_____

X_____ Date_____

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**Signatures**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date. Cosigners. See Notice to Cosigner above before signing.

X_____

DONNIE R. YARBROUGH

X_____

X_____

| (Optional) | |
|---|---|
| Signed _____ | For Lender |
| Title SUSAN CHAPMAN AVP | |

Rev. 12/2010

| FACTS | WHAT DOES FORT GIBSON STATE BANK DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Social Security number • Transaction history <br> • Account balances • Medical information <br> • Payment history • Checking account information <br> When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Fort Gibson State Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Fort Gibson State Bank share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - to offer our products and services to you | No | We don't share |
| For joint marketing with other financial companies | No | We don't share |
| For our affiliates' everyday business purposes - information about your transactions and experiences | No | We don't share |
| For our affiliates' everyday business purposes - information about your creditworthiness | No | We don't share |
| For nonaffiliates to market to you | No | We don't share |

| Questions? | Call 918-478-2437 or go to www.fortgibsonstatebank.com |
|---|---|

Privacy Model Disclosure <br> VMP® Bankers Systems™ <br> Wolters Kluwer Financial Services © 2010

2010.3/2492 2629526-010 EPRV2492

PRIV-MODEL 8/1/2010 <br> Page 1 of 2

Exhibit 1 Page 106 of 263

Page 2

## What We Do

| | |
|---|---|
| **How does Fort Gibson State Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. <br><br> We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does Fort Gibson State Bank collect my personal information?** | We collect your personal information, for example, when you <br><br> • Open an account     • Provide account information <br> • Apply for a loan     • Show your driver's license <br> • Make deposits or withdrawals from your account <br><br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only <br><br> • sharing for affiliates' everyday business purposes - information about your creditworthiness <br> • affiliates from using your information to market to you <br> • sharing for nonaffiliates to market to you <br><br> State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and non-financial companies. <br><br> • *Fort Gibson State Bank does not share with our affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and non-financial companies. <br><br> • *Fort Gibson State Bank does not share with nonaffiliates so they can market to you.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br><br> • *Fort Gibson State Bank doesn't jointly market.* |

Exhibit 1 Page 107 of 263

## Notice of Negative Information (Pre-sharing)

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. "Negative information" means information concerning delinquencies, late payments, insolvency, or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement.

After providing this notice, additional negative information may be submitted without providing another notice.

* * * *

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Express® © 2004 Bankers Systems, Inc., St. Cloud, MN  Form REGV-NEG-PRE 8/10/2004

(page 1 of 1)

Exhibit 1 Page 108 of 263

# EXHIBIT "J"

Exhibit 1 Page 109 of 263

Exhibit 1 Page 110 of 263

**FORT GIBSON STATE BANK**
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

Oct 2013

U.S. POSTAGE >> PITNEY BOWES

ZIP 74434    $ 000.46⁰
02 1W
0001384579 OCT 29 2013

Advance
1060.03

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK    74401

Matco Tools 80⁰⁰

74401$9045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 1 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date  10/28/13
Account Number
Enclosures

Page   1
1025740
1

## SUMMARY OF ACCOUNTS

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 261.28 |
| 65265 | Consumer Installment Loan | 37,465.38 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number                     1025740
Previous Balance                     81.92
    4 Deposits/Credits          2,515.69
   11 Checks/Debits             2,336.33
Service Charge                        .00
Interest Paid                         .00
Ending Balance                     261.28

Number of Images                              1
Statement Dates  9/26/13 thru 10/28/13
Days in the statement period        33
Average Ledger                               37
Average Collected                            37

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 9/27 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 10/04 | PAYROLL DD TN OF FT GIBSON<br>73-0753448          10/04/13<br>ID #-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<br>TRACE #-103101660100025 | 465.20 |
| 10/18 | PAYROLL DD TN OF FT GIBSON<br>73-0753448          10/18/13 | 365.46 |

Exhibit 1 Page 111 of 263

 

STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date  10/28/13       Page    2
Account Number      1025740
Enclosures                1

BASIC CHECKING                        1025740   (Continued)

Deposits and Additions
| Date | Description | Amount |
|---|---|---|
| | ID #-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 | |
| | TRACE #-103101660100025 | |
| 10/25 | DDA REGULAR DEPOSIT | 1,660.03 |

............................................................................................................

Checks and Withdrawals
| Date | Description | Amount |
|---|---|---|
| 9/26 | NSF PAID ITEM(S) CHARGE | ~~25.00~~ |
| 9/27 | transfer per Susan 1025740D-      64784L | 171.98 |
| 10/04 | transfer per Susan 1025740D-      66237L | 144.52 |
| 10/04 | transfer per Susan 1025740D-      65236L | 194.24 |
| 10/18 | in person Transfer per sc 1025740D-      65265L | 400.00 |
| 10/25 | TRANSFER PER SUSAN 1025740D-      64784L | 171.98 |
| 10/25 | TRANSFER PER SUSAN 1025740D-      65236L | 194.24 |
| 10/25 | TRANSFER PER SUSAN 1025740D-      65738L | 250.30 |
| 10/25 | TRANSFER PER SUSAN 1025740D-      65265L | 339.44 |
| 10/25 | TRANSFER PER SUSAN 1025740D-      62495L | 364.63 |
| 10/28 | WILLIE ZEILER MATCO MUSKOGEE O POS PUR CK 10/25/13 18:56 | 80.00 |

............................................................................................................

Daily Balance Information
| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 9/26 | 56.92 | 10/04 | 36.38 | 10/25 | 341.28 |
| 9/27 | 90.06- | 10/18 | 1.84 | 10/28 | 261.28 |

Exhibit 1 Page 112 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     9/26/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 171.98   | PD            |          |

Please deduct a handling charge of:                    0.00
                    Current Balance:          56.92

Exhibit 1 Page 113 of 263

# EXHIBIT "K"

Exhibit 1 Page 114 of 263

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK 74401

FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

BORROWER'S NAME AND ADDRESS

LENDER'S NAME AND ADDRESS

| | |
|---|---|
| Loan Number | 65265 |
| Date | AUGUST 26, 2011 |
| Maturity Date | SEPTEMBER 10, 2017 |
| Loan Amount | 40,864.79 |

# AMOUNT FINANCED ITEMIZATION

"Me" and "My" refer to each borrower above.

| | | | |
|---|---|---|---|
| Amount given to me directly | | | |
| Amount paid on my (loan) account | | | |
| AMOUNTS PAID TO OTHERS ON MY BEHALF: * | | | |
| Insurance Companies | | | |
| Public Officials | 41.00 | | |
| Credit Report Fee | 6.50 | | |
| | | REFI FGSB LN 64968 | 15,488.70 |
| | | REFI FGSB LN 63368 | 9,421.59 |
| | | REFI FGSB LN 63089 | 3,232.83 |
| Document Preparation Fee | 95.00 | REFI FGSB LN 61964 | 7,124.17 |
| | | CC YARBROUGH | 5,000.00 |
| GAP INSURANCE | 330.00 | | |
| PAYMENT BOOK | 5.00 | | |
| VSI INSURANCE | 120.00 | | |
| | | (less) PREPAID FINANCE CHARGE(S) | 106.50 |
| | | AMOUNT FINANCED | 40,758.29 |

(Add all items financed and subtract prepaid finance charges.)
*Lender may retain or receive a portion of these amounts.

BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.

X _____
DONNIE R YARBROUGH

X _____

X _____

X _____

AFI JHA 07/02

Exhibit 1 Page 115 of 263

# EXHIBIT "L"

Exhibit 1 Page 116 of 263

**Note, Disclosure,**

**#26**

**Lender**
FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

**Borrower**
CATHY YARBROUGH
2811 W DAVIS FIELD
MUSKOGEE OK 74401

68694
03/10/16
03/10/21
35,652.25

☐ Refer to the att
Borrowers and

**Truth in Lending Disclosures**

*Loan to Buy Buick + Yard from Gene Foster.*

credit will

Payments A
Beginning
, 2021

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on dem
**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund o
☒ **Late Charge.** If a payment is late (more than ___11___ days after due)
THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYM
**Security.** I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2011 BUICK ENCLAVE #5GAKRBI
2003 HONDA VT 600 MC, 2004
**Filing Fees.** $ _10.00_
**Non-filing insurance.** $_____
☐ **Required Deposit.** The annual percentage rate does not take into acco
☒ **Assumption.** Someone buying the property securing this obligation can
**Contract Documents.** I can see my contract documents for any additional i
date, and prepayment refunds and penalties.

**Promissory Note**

**Promise to Pay.** For value received, I promise to pay to you, or your order,
your address above, the principal sum of $ _35,652.25_
plus interest from ___MARCH 10, 2016___ at the rate of
_9.50_ % per year until ___MARCH 10, 2021___
Interest accrues on a _Actual/365_ basis. I agree
to pay late charges in accordance with the provisions shown in the
Truth-in-Lending Disclosures. The purpose of this loan is _____
_PURCHASE VEHICLE_.
**Payment.** I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has ___60___ payments. The first payment
will be in the amount of $ _582.91_ and
will be due ___04/10/16___. A payment of
$ _582.91_ will be due on the ___10th___
day of each ___Month___
thereafter. The final payment of the entire unpaid balance of principal
and interest will be due _03/10/21_

Post-Maturi
balance of th
unless a spec
☐ Interest v
of this note r
☐ Addition
This fee ☐
fee will be [
loan. ☐ wil
proceeds, the
☐ Minimur
charge of $_
earned that n
☐ Returne
for each payr

*sudden they "wrote the note off" as uncollectable & ruined my credit, without ever letting me know anything.*

**Handwritten notes (right side):**

*Susan advised she was using everything listed as collateral, but would release all but the Buick & just put the gap ins. on the Buick to cover the note in case of an accident, the Gap Ins. would cover the remaining balance. (I have lien releases for the Toyota & Honda but can't find one for the Dodge.) When Buick was wrecked & totaled out, Matt would never tell us how much our insurance paid towards the Buick or how much the gap ins. covered after our ins. paid them. Also, letter from FGSB dated 10/21/19 indicates $6,917.41 was credited to this note due to "Unauthorized transactions" (by Susan). This note should have been paid in full after the gap ins. paid the remaining balance, but Matt would never tell us anything, then all of a*

rts
have paid when I
eduled payments.

insta.

ear.

fore the scheduled

☒ All Debts. The Property will also serve as collateral for
all present and future debts.
☐ Other Security. This Loan Agreement is secured by

t, I give

JM400823

Experi™:
© 2002 Banks

## Note, Disclosure, and Security Agreement

| Lender | Borrower | | |
|---|---|---|---|
| FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | CATHY YARBROUGH<br>2811 W DAVIS FIELD ROAD<br>MUSKOGEE OK 74401 | Loan Number | 68694 |
| | | Loan Date | 03/10/16 |
| | | Maturity Date | 03/10/21 |
| | | Loan Amount | 35,652.25 |
| | ☐ Refer to the attached addendum for additional Borrowers and their signatures. | Renewal of | |

### Truth-In-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 9.6768 % | $ 12,186.67 | $ 35,480.00 | $47,666.67 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | $582.91 | Monthly Beginning - 04/10/16 |
| 1 | $13,274.98 | MARCH 10, 2021 |
| | $ | |
| | $ | |

"e" means an estimate.

Demand. ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
Prepayment. If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ Late Charge. If a payment is late (more than __11__ days after due) I will be charged
THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT

Security. I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) 2011 BUICK ENCLAVE #5GAXRBED9BJ318431
2003 HONDA VT 600 NC, 2004 TOYOTA MATRIX

Filing Fees. $ 10.00

Non-filing insurance. $_____

☐ Required Deposit. The annual percentage rate does not take into account my required deposit.
☒ Assumption. Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
Contract Documents. I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

☐ Other Terms.

Promise to Pay. For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 35,652.25,
plus interest from __MARCH 10, 2016__ at the rate of
__9.50__ % per year until __MARCH 10, 2021__.
Interest accrues on a __Actual/365__ basis. I agree
to pay late charges in accordance with the provisions shown in the Truth-In-Lending Disclosures. The purpose of this loan is __PURCHASE VEHICLE__

Payment. I will pay this note as follows:

☐ Interest due

Principal due

☒ This note has __60__ payments. The first payment
will be in the amount of $ 582.91 and
will be due __04/10/16__. A payment of
$ 582.91 will be due on the 10th
day of each __Month__
thereafter. The final payment of the entire unpaid balance of principal
and interest will be due __03/10/21__.

Post-Maturity Interest. Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ Additional Finance Charge. I also agree to pay a fee of $_____.
This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ Minimum Finance Charge. I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.

☐ Returned Payment Fee. I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $_____ |
| To public officials | $_____ |
| SEE SEPARATE ITEMIZATION | $_____ |
| | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

### Security Agreement

Security. To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
2011 BUICK ENCLAVE #5GAXRBED9BJ318431
2003 HONDA VT 600 MOTORCYCLE VIN#JH2PC21363M400823
2004 TOYOTA MATRIX VIN # 2T1KR32E14C1180075
1995 DODGE DUMP TRUCK # 1B6MC36C4S537070

☒ All Debts. The Property will also serve as collateral for all present and future debts.
☐ Other Security. This Loan Agreement is secured by

Experi™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDsS-SI-OK 5/1/2002

Consumer Loan - Not for Open-End Credit

Page 1 of 3

Exhibit 1 Page 118 of 263

## Additional Terms of the Promissory Note

**Definitions.** As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I, me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

**Payments.** Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on my payment record.

**Interest.** Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law.

**Post-Maturity Interest.** Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates.
- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

**Prepayment.** I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**Warranties and Representations.** I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party.

I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**Default.** Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur.
- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

**Remedies.** Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.
- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Real Estate or Residence Security.** If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

**Waivers.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

**Collection Expenses and Attorneys' Fees.** On or after Default, to the extent permitted by law, I agree to pay you reasonable attorneys' fees, not in excess of 15% of the unpaid debt, you incur if you hire an attorney to collect this Loan Agreement in the event of my default, plus all other costs you incur to realize upon any security. However, you are not entitled to attorneys' fees with respect to certain supervised loans except as awarded by a court in accordance with other statutes of this state. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provisions.** This Loan Agreement is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** *Property* means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in *household goods* in connection with a *consumer loan*, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

Express™ Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDsS-SI-OK 6/1/2002

Consumer Loan - Not for Open-End Credit
Page 2 of 3

Exhibit 1 Page 119 of 263

insurance. I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

I am required to maintain insurance on the Property to protect your interest. If I fail to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

Authority to Perform. I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

**Third Party Agreement**

For the purposes of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses"
Notice if Applicable.

**Insurance**

Credit Insurance. Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

| Credit Life | | | |
|---|---|---|---|
| ☐ Single ☐ Joint ☒ None | Premium | $_____ | |
| | Term | _____ | |
| Credit Disability | Premium | $_____ | |
| ☐ Single ☐ Joint ☒ None | Term | _____ | |
| | Premium | $_____ | |
| ☐ Single ☐ Joint ☐ None | Term | _____ | |

Signature. My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____ DOB_____

X_____ DOB_____

X_____ DOB_____

☒ Single Interest Insurance. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____120.00_____

for _____60 MONTH(S)_____ of coverage.

☐ Property Insurance. I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____N/A_____ for _____N/A_____ of coverage.

**Federal Sale of Insurance Disclosure**

Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.

- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.
- The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).
- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.
- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____
CATHY YARBROUGH

X_____ Date_____

X_____ Date_____

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**Signatures**

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.

Cosigners. See Notice to Cosigner above before signing.

X_____
CATHY YARBROUGH

X_____

X_____

| (Optional) |
|---|
| Signed _____ For Lender |
| Title    SUSAN CHAPMAN |
|          VP |

| | |
|---|---|
| CATHY YARBROUGH<br>2811 W DAVIS FIELD ROAD<br>MUSKOGEE OK 74401 | FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** |

Loan Number _____ 68694
Date _____ MARCH 10, 2016
Maturity Date _____ MARCH 10, 2021
Loan Amount _____ 35,652.25

# AMOUNT FINANCED ITEMIZATION

"Me" and "My" refer to each borrower above.

Amount given to me directly...........................
Amount paid on my (loan) account ......................

AMOUNTS PAID TO OTHERS ON MY BEHALF: *
Insurance Companies ..................................
Public Officials ............................................ 10.00

Credit Report Fee                7.25

CC US BANK                       8,274.98
CC GENE FOSTER                  26,725.02

Document Preparation Fee         160.00

GAP INSURANCE                    350.00
PAYMENT BOOK                       5.00
VSI INSURANCE                    120.00

(less) PREPAID FINANCE CHARGE(S)            172.25

| AMOUNT FINANCED | 35,480.00 |
|---|---|

(Add all items financed and subtract prepaid finance charges.)
*Lender may retain or receive a portion of these amounts.

**BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.**

X _____    X _____
CATHY YARBROUGH

X _____    X _____

AFI JHA 07/02

Exhibit 1 Page 121 of 263

# EXHIBIT "M"

Exhibit 1 Page 122 of 263

Exhibit 1 Page 123 of 263

Rob · Bruce Fisher
41890

# FORT GIBSON
## STATE BANK

PHONE: 918/478-2437
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

I, the undersigned, do hereby confirm that I have received the sum stated below as an advance on that certain loan from Fort Gibson State Bank to me dated_____ for the sum of $_____.

Dated this ___28___ day of ___January 2010___.

___dep dda___

Witness ___S. Chen___

The amount of this advance is $___561.84___ making the balance of This note $_____.

# EXHIBIT "N"

Exhibit 1 Page 124 of 263

# FORT GIBSON
# STATE BANK

October 21, 2019

Donnie Yarbrough
2811 W Davis Field Road
Muskogee
OK  74401

Dear Customer:

Re: Your Deposit Account #1036750

As you are aware, during an investigation of your deposit account, we discovered that $1,796.96 was transferred from your account and the transfer request(s) were not signed by you. In our transaction verification with you, it was determined that $198.48 of this amount was unauthorized.

This amount was credited back to your deposit account #1036750 on April 22, 2019. If you no longer have any accounts with us, a Cashier's Check was issued to you.

We regret any inconvenience that this may have caused you.

Sincerely,

Matt Hendrix
President and CEO



818-478-2437    P.O. BOX 130    FORT GIBSON, OKLAHOMA  74434

Exhibit 1 Page 125 of 263

# FORT GIBSON STATE BANK

October 21, 2019

Donnie Yarbrough
2811 W Davis Field Road
Muskogee
OK 74401

Dear Customer:

Re: Your Deposit Account #1025740

As you are aware, during an investigation of your deposit account, we discovered that $16,002.26 was transferred from your account and the transfer request(s) were not signed by you. In our transaction verification with you, it was determined that $11,754.57 of this amount was unauthorized.

This amount was credited back to your deposit account #1025740 on April 22, 2019. If you no longer have any accounts with us, a Cashier's Check was issued to you.

We regret any inconvenience that this may have caused you.

Sincerely,

Matt Hendrix
President and CEO



918-478-2437      P.O. BOX 130      FORT GIBSON, OKLAHOMA  74434

Exhibit 1 Page 126 of 263

# EXHIBIT "O"

Exhibit 1 Page 127 of 263

## AFFIDAVIT OF DANNY KIZZIA

COUNTY OF MUSKOGEE        )
                                 )    SS

STATE OF OKLAHOMA          )

Danny Kizzia, of Braggs, Oklahoma, after first being duly sworn under oath states as follows:

1. I am the defendant in *Ft. Gibson State Bank vs. Daniel Kizzia*, Case No. CJ-2019-38.
2. I am a mentally competent adult and have been duly sworn to tell the truth, the whole truth and nothing but the truth.
3. I do not owe the amount alleged in the Plaintiff's petition.
4. Based upon information and belief, the promissory note and mortgage alleged that I owe to the Plaintiff is a fabrication and the result of bank fraud on the part of either loan officer #1 or loan officer #2 or both.
5. Based upon information and belief, bank officer #1 and bank officer #2 either conspired together or operated independently of each other to commit bank fraud and fraud against me as it relates to this alleged loan.
6. Loan officer #1 is now deceased.
7. Based upon information and belief, loan officer #2 was fired by the Plaintiff after the death of loan officer #1 for violations of banking laws and regulations.
8. I was personally advised by Plaintiff personnel that, "Loan officer #2 was fired for a serious violation of bank policy. An investigation was currently being conducted."
9. My name is Danny Kizzia and is not Daniel Kizzia.
10. I have never gone by the name of Daniel Kizzia.
11. Based on information and belief the name Daniel Kizzia was a name created by either loan officer #1 or loan officer #2 in order to commit insurance fraud on previous loans with the bank.
12. I am on social security and my total income at the time the alleged loan was made was $1,280.
13. The monthly payment for the alleged loan is $1,672.
14. I never applied for this loan.
15. My credit was never been checked for this loan.
16. I have never received a payment book for this loan.
17. There is no possible way I could have qualified for this loan.
18. Based upon information and belief, this loan was created for the purpose of laundering illegal activity on behalf of loan officer #1 or loan officer #2 or both.
19. On more than one occasion, loan officer #2 advised me to commit bank fraud by saying things that were not true if asked by any one at the bank.

RESPONDENT'S EXHIBIT
1

Exhibit 1 Page 128 of 263

20. Loan officer #1 advised me that he had instructed others to commit bank and insurance fraud as it related to previous loans I had with the bank.
21. I believe I am a victim of predatory lending, bank fraud and insurance fraud on the part of loan officer #1 and or loan officer #2.
22. I do not believe I owe the amount alleged by the Plaintiff.
23. I believe the alleged loan is void as fraudulent.

**Further Affiants Sayeth Not.**

Danny Kizzia

I certify that Danny Kizzia appeared before me this 6th day of June, 2019 after first being duly sworn.

Notary

My Commission Expires:

6-26-2020
#8922

2

Exhibit 1 Page 129 of 263

# EXHIBIT "P"

Exhibit 1 Page 130 of 263

6:24-cv-00243-JFH-GLJ    Document 2-1    Filed in ED/OK on 07/12/24    Page 131 of 263

Exhibit 1 Page 131 of 263

# FORT GIBSON STATE BANK

### P.O. BOX 130
### FORT GIBSON, OKLAHOMA 74434

JANUARY 2013

$ 00.46³
JAN 29 2013

Acct #.
1025740

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

240⁰⁰ MATCO

100⁰⁰ - Donation ✓
FOP - Painting
Wall ✓
(Jake Ward)

7440149045 R004



STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437

 



Page: 1 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    1/28/13        Page    1
Account Number         1025740
Enclosures             1

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 201.26- |
| 65265 | Consumer Installment Loan | 39,224.11 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
| | | | |
|---|---|---|---|
| Account Number | 1025740 | Number of Images | 1 |
| Previous Balance | 170.21- | Statement Dates 12/27/12 thru 1/28/13 | |
| 3 Deposits/Credits | 1,990.16 | Days in the statement period | 33 |
| 13 Checks/Debits | 2,021.21 | Average Ledger | 28 |
| Service Charge | .00 | Average Collected | 28 |
| Interest Paid | .00 | | |
| Ending Balance | 201.26- | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $50.00 | $50.00 |
| Return item fees year to date | $.00 | $.00 |
| Overdraft item fees year to date  2012 | | $550.00 |
| Return item fees year to date  2012 | | $.00 |

Exhibit 1 Page 132 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date   1/28/13      Page   2
Account Number        1025740
Enclosures                  1

BASIC CHECKING                          1025740  (Continued)

**Deposits and Additions**

| Date | Description | Amount |
|------|-------------|--------|
| 12/28 | PAYROLL DD TN OF FT GIBSON<br>73-0753448         12/28/12<br>ID #-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<br>TRACE #-103101660100027 | 738.67 |
| 1/11 | PAYROLL DD TN OF FT GIBSON<br>73-0753448         01/11/13<br>ID #-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<br>TRACE #-103101660100027 | 667.73 |
| 1/25 | PAYROLL DD TN OF FT GIBSON<br>73-0753448         01/25/13<br>ID #-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<br>TRACE #-103101660100027 | 583.76 |

**Checks and Withdrawals**

| Date | Description | Amount |
|------|-------------|--------|
| 12/31 | PER SUSAN<br>        1025740D-       64784L | 171.98 |
| 12/31 | PER SUSAN<br>        1025740D-       62495L | 364.63 |
| 1/08 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 1/09 | FORCE PAY DEBIT | 100.00 |
| 1/11 | transfer per Susan<br>        1025740D-       65236L | 100.00 |
| 1/11 | transfer per Susan<br>        1025740D-       65265L | 450.00 |
| 1/15 | NETFLIX.COM NETFLIX.COM CA<br>POS PUR CK 01/14/13 08:26 | 7.99 |
| 1/16 | WILLIE ZEILER MATCO MUSKOGEE O<br>POS PUR CK 12/30/12 16:37 | 80.00 |
| 1/16 | WILLIE ZEILER MATCO MUSKOGEE O<br>POS PUR CK 01/14/13 15:59 | 80.00 |
| 1/25 | TRANSFER PER SC<br>        1025740D-       64784L | 171.98 |
| 1/25 | NSF PAID ITEM(S) CHARGE | 25.00 |

Exhibit 1 Page 133 of 263



STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 3 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date   1/28/13       Page    3
Account Number       1025740
Enclosures                 1

BASIC CHECKING                          1025740   (Continued)

Checks and Withdrawals

| Date | Description | Amount |
|------|-------------|--------|
| 1/28 | WILLIE ZEILER MATCO MUSKOGEE O | 80.00 |
|      | POS PUR CK 01/27/13 15:54 | |
| 1/28 | Telephone Transfer and Fee | 364.63 |
|      | 1025740D-     62495L | |

................................................................................................

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 12/27 | 170.21- | 1/09 | 93.15- | 1/25 | 243.37 |
| 12/28 | 568.46 | 1/11 | 24.58 | 1/28 | 201.26- |
| 12/31 | 31.85 | 1/15 | 16.59 | | |
| 1/08 | 6.85 | 1/16 | 143.41- | | |

Exhibit 1 Page 134 of 263

Page: 4 of 4

Check 1741 Amount $100.00 Date 1/9/2013

Exhibit 1 Page 135 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740        Date    1/08/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
| 1741    | 100.00   | PD            | 25.00    |

Please deduct a handling charge of:    25.00
Current Balance:    6.85



Check 1741 Amount $100.00 Date 1/8/2013

Exhibit 1 Page 136 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account      1025740          Date      1/15/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Suffcient Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 80.00    | PD            |          |
|         | 80.00    | PD            |          |

Please deduct a handling charge of:      0.00
                       Current Balance:     16.59

Exhibit 1 Page 137 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Account     1025740          Date     1/25/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 364.63   | PD            | 25.00    |

Please deduct a handling charge of:     25.00
                      Current Balance:     243.37

Exhibit 1 Page 138 of 263

6:24-cv-00243-JFH-GLJ   Document 2-1   Filed in ED/OK on 07/12/24   Page 139 of 263

Exhibit 1 Page 139 of 263

**FORT GIBSON STATE BANK**
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

Feb 2013

UNITED STATES POSTAGE
02
0004248914    $ 00.46
FEB 26 2013
MAILED FROM ZIP CODE 74434

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Income $1625.00 ✓

AT&T 621.86 ✓

Matco   160.00 ✓

Fuel   74.33 ✓

74401$9045 R004

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437



DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     1/29/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
| 1742    | 74.33    | PD            | 25.00    |

Please deduct a handling charge of:          25.00
                        Current Balance:     226.26-

Exhibit 1 Page 140 of 263

DONNIE R. YARBROUGH
2811 W DAVIS FIELD ROAD                                      1742
MUSKOGEE OK

Page: 3 of 3



Amount $625.00 Date 2/1/2013



Check 1742 Amount $74.33 Date 1/30/2013

Exhibit 1 Page 141 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    2/25/13      Page    2
Account Number         1025740
Enclosures                   2

BASIC CHECKING                    1025740  (Continued)

Deposits and Additions
Date       Description                                Amount
           ID #-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
           TRACE #-103101660100028

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals
Date       Description                                Amount
 1/29      NSF PAID ITEM(S) CHARGE                     25.00
 1/30      FORCE PAY DEBIT                             74.33
 1/30      NSF PAID ITEM(S) CHARGE                     25.00
 1/31      PAYMENT    AT&T                            621.86
           9991500008         01/30/13
           ID #-700535271TUL
           TRACE #-028000082171782
 2/05      CLASSMATES-MEMORY LANE 206-301              39.00
           POS PUR CK 02/02/13 16:08
 2/08      PER S C                                    115.00
              1025740D-        65265L
 2/08      PER S C                                    152.72
              1025740D-        65236L
 2/19      NSF PAID ITEM(S) CHARGE                     25.00
 2/20      transfer per jr                            144.52
              1025740D-        66237L
 2/25      NETFLIX.COM NETFLIX.COM CA                   7.99
           POS PUR CK 02/23/13 20:27
 2/25      WILLIE ZEILER MATCO MUSKOGEE O             160.00
           POS PUR CK 02/23/13 15:29
 2/25      transfer per Susan                         171.98
              1025740D-        64784L
 2/25      TELEPHONE TRANSFER FEE                       3.00

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Daily Balance Information
Date       Balance          Date       Balance          Date       Balance
 1/29      776.26-           2/05       361.45-          2/22       435.32
 1/30      325.59-           2/06         4.20           2/25        92.35
 1/31      947.45-           2/19        20.80-
 2/01      322.45-           2/20       140.32-

Exhibit 1 Page 142 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 1 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

| | |
|---|---|
| Date  2/25/13 | Page  1 |
| Account Number | 1025740 |
| Enclosures | 2 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 92.35 |
| 65265 | Consumer Installment Loan | 39,224.11 |

---- CHECKING ACCOUNTS ----

| BASIC CHECKING | | | |
|---|---|---|---|
| Account Number | 1025740 | Number of Images | 2 |
| Previous Balance | 201:26- | Statement Dates  1/29/13 thru  2/25/13 | |
| 4 Deposits/Credits | 1,859.01 | Days in the statement period | 28 |
| 13 Checks/Debits | 1,565.40 | Average Ledger | 97- |
| Service Charge | .00 | Average Collected | 208- |
| Interest Paid | .00 | | |
| Ending Balance | 92.35 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $50.00 | $100.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 2/01 | DDA REGULAR DEPOSIT | 625.00 |
| 2/08 | PAYROLL DD TN OF FT GIBSON | 633.37 |
| | 73-0753448          02/08/13 | |
| | ID #-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 | |
| | TRACE #-103101660100028 | |
| 2/20 | REVERSE NSF PAID ITEM(S) CHG | 55.55 |
| 2/22 | PAYROLL DD TN OF FT GIBSON | 575.64 |
| | 73-0753448          02/22/13 | |

Exhibit 1 Page 143 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437



NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     1/30/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Suffient Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 621.86   | PD            | 25.00    |

Please deduct a handling charge of:          25.00
                    Current Balance:         325.59-

Exhibit 1 Page 144 of 263

Fort Gibson State Bank·P O Box 130Fort Gibson OK 74434·(918) 478-2437

| Account: Basic Ck | 0005 | | | Time: 3/15/2013 11:18:56 PM | | |
|---|---|---|---|---|---|---|
| Date | Reference No. | Description | Debit | Credit | | Balance |
| 03/13/2013 | | WILLIE ZEILER MATCO MUSKOGEE OPOS PUR CK 03/11/13 16:38 | -$80.00 | | | -$40.88 |
| 03/08/2013 | | transfer per Susan@XXXXX@5740D-@XXXXX@2495L | -$364.63 | | | $39.12 |
| 03/08/2013 | | transfer per Susan@XXXXX@5740D-@XXXXX@4784L | -$171.98 | | | $403.75 |
| 03/08/2013 | | transfer per Susan@XXXXX@5740D-@XXXXX@6237L | -$144.52 | | | $575.73 |
| 03/08/2013 | | transfer per Susan@XXXXX@5740D-@XXXXX@5265L | -$100.00 | | | $720.25 |
| 03/08/2013 | | PAYROLL DD TN OF FT GIBSON73-0753448 03/08/13ID #-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TRACE #-103101660100028 | | $727.90 | | $820.25 |
| 02/28/2013 | | transfer per sc@XXXXX@5740D-@XXXXX@5265L | -$400.00 | | | $92.35 |
| 02/28/2013 | | transfer per sc@XXXXX@5740D-@XXXXX@2495L | -$364.63 | | | $492.35 |
| 02/28/2013 | View Image | DDA REGULAR DEPOSIT | | $764.63 | | $856.98 |

| Total Debits: | ($1,625.76) | Total Credits: | $1,492.53 |
|---|---|---|---|

Exhibit 1 Page 145 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740          Date    2/04/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 39.00    | PD            |          |

Please deduct a handling charge of:           0.00
                        Current Balance:     322.45-

Exhibit 1 Page 146 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740          Date    2/19/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---|---|---|---|
|  | 144.52 | PD |  |

Please deduct a handling charge of:                              0.00
                                   Current Balance:          20.80-

Exhibit 1 Page 147 of 263



TO BE DEPOSITED IN THE

**FORT GIBSON STATE BANK**

MEMBER FDIC

TO THE CREDIT OF

DATE 2/1/13

BY D. Yarbrough

ACCOUNT NO. 1035740

CHECKS AND OTHER ITEMS ARE RECEIVED FOR DEPOSIT
SUBJECT TO THE RULES AND REGULATIONS OF THIS
BANK'S COLLECTION AGREEMENT.
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE
WITHDRAWAL.

F  009FGSB 209 13113#004  $625.00 D

| | CENTS | DOLLARS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | | 625 |

TOTAL DEPOSIT  625

Exhibit 1 Page 148 of 263

Exhibit 1 Page 149 of 263

# FORT GIBSON STATE BANK
### P.O. BOX 130
### FORT GIBSON, OKLAHOMA 74434

March 2013

02 1M    $ 00.46
0004249914   MAR 26 2013
MAILED FROM ZIP CODE 74434

Advance
764.43

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Matco Tools 80⁰⁰ ✓

7440139045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 1 of 3

Date    3/25/13    Page    1
Account Number    1025740
Enclosures    1

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

## SUMMARY OF ACCOUNTS

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 5.00 |
| 65265 | Consumer Installment Loan | 39,500.19 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number               1025740    Number of Images                        1
Previous Balance               92.35    Statement Dates  2/26/13 thru  3/25/13
  3 Deposits/Credits        2,092.59    Days in the statement period         28
  8 Checks/Debits           2,179.94    Average Ledger                       27
Service Charge                   .00    Average Collected                    27
Interest Paid                    .00
Ending Balance                  5.00

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $100.00 |
| Return item fees year to date | $.00 | $.00 |

Deposits and Additions
| Date | Description | Amount |
|---|---|---|
| 2/28 | DDA REGULAR DEPOSIT | 764.63 |
| 3/08 | PAYROLL DD TN OF FT GIBSON | 727.90 |
| | 73-0753448          03/08/13 | |
| | ID #-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 | |
| | TRACE #-103101660100028 | 600.06 |
| 3/22 | PAYROLL DD TN OF FT GIBSON | |
| | 73-0753448          03/22/13 | |

Exhibit 1 Page 150 of 263



STATEMENT OF ACCOUNT

# FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    3/25/13      Page      2
Account Number         1025740
Enclosures                   1

BASIC CHECKING                          1025740  (Continued)

Deposits and Additions                              Amount
Date        Description
            ID #-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
            TRACE #-103101660100027

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals                           Amount
Date        Description                           364.63
  2/28      transfer per sc
              1025740D-       62495L              400.00
  2/28      transfer per sc
              1025740D-       65265L              100.00
  3/08      transfer per Susan
              1025740D-       65265L              144.52
  3/08      transfer per Susan
              1025740D-       66237L              171.98
  3/08      transfer per Susan
              1025740D-       64784L              364.63
  3/08      transfer per Susan
              1025740D-       62495L               80.00
  3/13      WILLIE ZEILER MATCO MUSKOGEE O
            POS PUR CK 03/11/13 16:58             554.18
  3/22      per susan chapman
              1025740D-       65265L

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Daily Balance Information
Date        Balance         Date       Balance        Date        Balance
  2/26         92.35         3/08         39.12         3/22          5.00
  2/28         92.35         3/13         40.88-

Exhibit 1 Page 151 of 263

Page: 3 of 3



Amount $764.63 Date 2/28/2013

Exhibit 1 Page 152 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Account     1025740          Date     3/12/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 80.00    | PD            |          |

Please deduct a handling charge of:                      0.00
                          Current Balance:               39.12

Exhibit 1 Page 153 of 263

6:24-cv-00243-JFH-GLJ    Document 2-1    Filed in ED/OK on 07/12/24    Page 154 of 263

Exhibit 1 Page 154 of 263

**FORT GIBSON STATE BANK**
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

March 2013

U.NITED STATES POSTAGE
$ 00.46
0004248814    APR 26 2013
MAILED FROM ZIP CODE 74434

Advance
264.63

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Matco Tools 80⁰⁰ ✓

7440139045 R004



STATEMENT OF ACCOUNT

# FT. GIBSON
# STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 1 of 3

| | |
|---|---|
| Date    3/25/13 | Page      1 |
| Account Number | 1025740 |
| Enclosures | 1 |

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## SUMMARY OF ACCOUNTS

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 5.00 |
| 65265 | Consumer Installment Loan | 39,500.19 |

---- CHECKING ACCOUNTS ----

| | | | | |
|---|---|---|---|---|
| BASIC CHECKING | | | Number of Images | 1 |
| Account Number | | 1025740 | Statement Dates  2/26/13 thru  3/25/13 | |
| Previous Balance | | 92.35 | Days in the statement period | 28 |
| 3 Deposits/Credits | | 2,092.59 | Average Ledger | 27 |
| 8 Checks/Debits | | 2,179.94 | Average Collected | 27 |
| Service Charge | | .00 | | |
| Interest Paid | | .00 | | |
| Ending Balance | | 5.00 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $100.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 2/28 | DDA REGULAR DEPOSIT | 764.63 ✓ |
| 3/08 | PAYROLL DD TN OF FT GIBSON | 727.90 ✓ |
| | 73-0753448          03/08/13 | |
| | ID #-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 | |
| | TRACE #-103101660100028 | |
| 3/22 | PAYROLL DD TN OF FT GIBSON | 600.06 ✓ |
| | 73-0753448          03/22/13 | |

Exhibit 1 Page 155 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    3/25/13         Page     2
Account Number          1025740
Enclosures                    1

BASIC CHECKING                        1025740  (Continued)

Deposits and Additions
Date        Description                           Amount
            ID #-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
            TRACE #-103101660100027

Checks and Withdrawals
Date        Description                           Amount
 2/28       transfer per sc                       364.63
              1025740D-       62495L
 2/28       transfer per sc                       400.00
              1025740D-       65265L
 3/08       transfer per Susan                    100.00
              1025740D-       65265L
 3/08       transfer per Susan                    144.52
              1025740D-       66237L
 3/08       transfer per Susan                    171.98
              1025740D-       64784L
 3/08       transfer per Susan                    364.63
              1025740D-       62495L
 3/13       WILLIE ZEILER MATCO MUSKOGEE O         80.00
            POS PUR CK 03/11/13 16:58
 3/22       per susan chapman                     554.18
              1025740D-       65265L

Daily Balance Information
Date        Balance         Date        Balance         Date        Balance
 2/26        92.35           3/08         39.12           3/22         5.00
 2/28        92.35           3/13         40.88-

Exhibit 1 Page 156 of 263

Page: 3 of 3



Amount $764.63 Date 2/28/2013

Exhibit 1 Page 157 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account      1025740        Date     3/12/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 80.00    | PD            |          |

Please deduct a handling charge of:        0.00
Current Balance:        39.12

Exhibit 1 Page 158 of 263

FORT GIBSON STATE BANK
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK 74401

74401890345 RC04

April 2013

Mateo tools 1000...

US POSTAGE PITNEY BOWES
ZIP 74434
02 1W
0001384579 NOV 07 2013

Exhibit 1 Page 159 of 263



STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 1 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    4/23/13    Page    1
Account Number        1025740
Enclosures

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | .95 |
| 65265 | Consumer Installment Loan | 39,500.19 |

---- CHECKING ACCOUNTS ----

| BASIC CHECKING | | | |
|---|---|---|---|
| Account Number | 1025740 | Number of Images | 0 |
| Previous Balance | 5.00 | Statement Dates  3/26/13 thru  4/23/13 | |
| | | Days in the statement period | 29 |
| 2 Deposits/Credits | 1,119.90 | Average Ledger | 6- |
| 8 Checks/Debits | 1,123.95 | Average Collected | 6- |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | .95 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $100.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 4/05 | PAYROLL DD TN OF FT GIBSON | 517.34 |
| | 73-0753448          04/05/13 | |
| | ID #-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 | |
| | TRACE #-103101660100027 | |
| 4/19 | PAYROLL DD TN OF FT GIBSON | 602.56 |
| | 73-0753448          04/19/13 | |

Exhibit 1 Page 160 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 2 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    4/23/13        Page    2
Account Number        1025740
Enclosures

BASIC CHECKING                1025740  (Continued)

Deposits and Additions
| Date | Description | Amount |
|---|---|---|
| | ID #-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 | |
| | TRACE #-103101660100027 | |

Checks and Withdrawals
| Date | Description | Amount |
|---|---|---|
| 3/26 | NETFLIX.COM NETFLIX.COM CA | 7.99 |
| | POS PUR CK 03/23/13 16:25 | |
| 4/05 | TRANSFER PER SUSAN | 85.59 |
| | 1025740D-        62495L | |
| 4/05 | TRANSFER PER SUSAN | 144.52 |
| | 1025740D-        66237L | |
| 4/05 | TRANSFER PER SUSAN | 194.24 |
| | 1025740D-        65236L | |
| 4/10 | WILLIE ZEILER MATCO MUSKOGEE O | 160.00 |
| | POS PUR CK 04/08/13 16:40 | |
| 4/19 | transfer per Susan | 80.00 |
| | 1025740D-        65265L | |
| 4/19 | transfer per Susan | 171.98 |
| | 1025740D-        64784L | |
| 4/19 | transfer per Susan | 279.63 |
| | 1025740D-        62495L | |

Daily Balance Information
| Date | Balance | Date | Balance |
|---|---|---|---|
| 3/26 | 2.99- | 4/10 | 70.00- |
| 4/05 | 90.00 | 4/19 | .95 |

Exhibit 1 Page 161 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740        Date    4/09/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 160.00   | PD            |          |

Please deduct a handling charge of:                 0.00
                          Current Balance:         -90.00

Exhibit 1 Page 162 of 263

Exhibit 1 Page 163 of 263

# FORT GIBSON STATE BANK
## P.O. BOX 130
## FORT GIBSON, OKLAHOMA 74434

May 2013

Advance
790.00

UNITED STATES POSTAGE

02 1W        $.00
0004249914    MAY
MAILED FROM ZIP C

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Matco 160⁰⁰

74401$9045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 1 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date   5/28/13
Account Number          1025740
Enclosures                    2

Page    1

....................................................................

### SUMMARY OF ACCOUNTS

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 8.49 |
| 65265 | Consumer Installment Loan | 39,288.12 |

---- CHECKING ACCOUNTS ----

| BASIC CHECKING | | | |
|---|---|---|---|
| Account Number | 1025740 | Number of Images | 2 |
| Previous Balance | .95 | Statement Dates   4/24/13 thru   5/28/13 | |
| 4 Deposits/Credits | 2,025.36 | Days in the statement period | 35 |
| 11 Checks/Debits | 2,017.82 | Average Ledger | 21- |
| Service Charge | .00 | Average Collected | 21- |
| Interest Paid | .00 | | |
| Ending Balance | 8.49 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $25.00 | $125.00 |
| Return item fees year to date | $.00 | $.00 |

....................................................................

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 4/29 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 5/03 | PAYROLL DD TN OF FT GIBSON | 612.51 |
| | 73-0753448          05/03/13 | |
| | ID #-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 | |
| | TRACE #-103101660100029 | |
| 5/17 | PAYROLL DD TN OF FT GIBSON | 597.85 |
| | 73-0753448          05/17/13 | |

Exhibit 1 Page 164 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    5/28/13    Page    2
Account Number    1025740
Enclosures    2

BASIC CHECKING                 1025740  (Continued)

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| | ID #-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 | |
| | TRACE #-103101660100028 | |
| 5/24 | DDA REGULAR DEPOSIT | 790.00 |

Checks and Withdrawals

| Date | Description | Amount |
|---|---|---|
| 4/26 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 4/29 | cover od account >90 days | 178.94 |
| | 1025740D-    1036750D | |
| 5/03 | in person | 144.52 |
| | 1025740D-    66237L | |
| 5/03 | per susan | 194.24 |
| | 1025740D-    65236L | |
| 5/06 | NETFLIX.COM NETFLIX.COM CA | 7.99 |
| | POS PUR CK 05/03/13 12:34 | |
| 5/09 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 5/10 | FORCE PAY DEBIT | 160.00 |
| 5/17 | in person Transfer per sc | 495.62 |
| | 1025740D-    65265L | |
| 5/24 | transfer per Susan | 171.98 |
| | 1025740D-    64784L | |
| 5/24 | transfer per Susan | 250.00 |
| | 1025740D-    65265L | |
| 5/24 | transfer per Susan | 364.53 |
| | 1025740D-    62495L | |

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 4/24 | .95 | 5/03 | 95.76 | 5/10 | 97.23- |
| 4/26 | 24.05- | 5/06 | 87.77 | 5/17 | 5.00 |
| 4/29 | 177.99- | 5/09 | 62.77 | 5/24 | 8.49 |

Exhibit 1 Page 165 of 263

Page: 3 of 3



Amount $790.00 Date 5/24/2013



Check 0 Amount $160.00 Date 5/10/2013

Exhibit 1 Page 166 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Account     1025740          Date     5/09/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 160.00   | PD            | 25.00    |

Please deduct a handling charge of:                25.00
                            Current Balance:       62.77

Check 0 Amount $160.00 Date 5/9/2013

Exhibit 1 Page 167 of 263

## MATCO TOOLS

Willie Zeiler
DISTRIBUTOR # 418326
5/7/2013 10:53:16 AM
Regular
PSA
INV # 47007

Section 1   Buyer

1.00's Butt Worth R                           TOOL
   cm demand                                  DAVE
Reference                                     PENDING
   C   dispand
Muskogee  OK  74401

Section 2   Goods Sold

Item             Qty   Amount Commend

91.375            1     47.95
   MATCO NEON CLOCK
MUH1221B          1     72.95 S/N NUN 34524
   12V  UAH LITHIUM BATTERY
MU1.1.16K         1     219.95 S/N NVN 44122
   12V 3/8" CORDLESS RATCHET
S85183E           1     280.95
   48 PC SE SOCKET BIT DRIVER SET
SC101UM           1      22.95
   KLUT. MAGN. PARTS TRAY
SC417M            1      33.90
   1 1/2" ANGLED SCRAPER - ORANGE

Purchase        673.29
Tax              52.40
FreightDelv        0

Totals            3

Section    Payment Schedule

| No. of Payments | Amount of Payments | Total | Weekly Payments |
|---|---|---|---|
| 208 | 30.80 | 6406.40 | 5/7/1 |

Section   Terms Of Sale

| | |
|---|---|
| (A) Total Cash Price | 673.29 |
| (B) Trade In | 0.00 |
| Subtotal (A-B) | 678.29 |
| (C) Sales Tax of  9.650% | 65.46 |
| (D) Cash Down Payment | 0.00 |
| (E) Net Cash Price | 743.75 |
| (F) Administration Fee | 0.00 |
| (G) Net Due On Prior | |
|     PSA  E2893729 | 3493.18 |
| (H) Principal Balance | 4236.93 |
| (I) Time Price Differential | 2169.47 |
| (J) Total Time Purchase Balance | 6406.40 |

Beginning Balance: 6406.40
Payment:            160.00

Current Balance:   6246.40

---

*may*

## MATCO TOOLS

5/7/2013 10:09:49 AM
PSA Sale or Payment #
Regular

donnie YARBROUGH
DAVES PERFORMANCE
N111001575                            E2893.

Beginning Balance:                    4430.03
Payment:                               160.00

Current Balance:                      4270.03

Next Weekly Pmt. Due*** 34.49 ***

all and payments must be paid in
full on our up in 2 week, or expect
to return and at that time  when you
but make all your payment on time as
on   all I cant give   as needed.
        I your employer to pay you
        as you can pay your bill.
   I ARE MY EMPLOYER
   COME TO ME WITH ANY PROBLEMS AS
SOON AS POSSIBLE SO WE IF WE CAN WORK
        IT OUT

                          THANK YOU
                          WILLIE TILER

        Willie Zeiler
Authorized Distributor of Matco Tools
        1001 KERSHAW DRIVE
        MUSKOGEE, OK 74401
Business Phone: (918) 869-2548
Mobile Phone: (918) 869-2548

Exhibit 1 Page 168 of 263

Exhibit 1 Page 169 of 263

# FORT GIBSON STATE BANK
### P.O. BOX 130
### FORT GIBSON, OKLAHOMA 74434

Advance 1900⁰⁰

June 2013

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

AT&T 1663.65 ✓
matco    80⁰⁰ ✓
Matco 160⁰⁰ ✓

APAC  38.95 ✓

Fuel   68.88 ✓

Fuel   23.07 ✓

74401$9045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 1 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    6/24/13     Page    1
Account Number     1025740
Enclosures     8

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 1.90 |
| 65265 | Consumer Installment Loan | 39,288.12 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING

| | | | |
|---|---|---|---|
| Account Number | 1025740 | Number of Images | 8 |
| Previous Balance | 8.49 | Statement Dates  5/29/13 thru  6/24/13 | |
| 3 Deposits/Credits | 3,429.03 | Days in the statement period | 27 |
| 19 Checks/Debits | 3,435.62 | Average Ledger | 186 |
| Service Charge | .00 | Average Collected | 186 |
| Interest Paid | .00 | | |
| Ending Balance | 1.90 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $50.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 5/30 | DDA REGULAR DEPOSIT | 1,900.00 |
| 5/31 | PAYROLL DD TN OF FT GIBSON<br>73-0753448          05/31/13<br>ID #-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<br>TRACE #-103101660100027 | 736.47 |
| 6/14 | PAYROLL DD TN OF FT GIBSON<br>73-0753448          06/14/13 | 792.56 |

Exhibit 1 Page 170 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    6/24/13     Page    2
Account Number        1025740
Enclosures                  8

BASIC CHECKING                          1025740   (Continued)

Deposits and Additions
Date        Description                         Amount
            ID #-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
            TRACE #-103101660100027

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals

| Date | Description | Amount |
|---|---|---|
| 5/31 | PROGRESSIVE  INSURANCE MAYFIEL | 75.00 |
|  | POS PIN CK 05/31/13 07:53 |  |
| 5/31 | in person Transfer per sc | 144.52 |
|  | 1025740D-     66237L |  |
| 5/31 | in person Transfer per sc | 194.24 |
|  | 1025740D-     65236L |  |
| 5/31 | in person Transfer per sc | 300.00 |
|  | 1025740D-     62495L |  |
| 5/31 | Payment    ATT | 663.65 |
|  | 9864031005        05/31/13 |  |
|  | ID #-591402003MYW9X |  |
|  | TRACE #-021000023322241 |  |
| 6/03 | WILLIE ZEILER MATCO MUSKOGEE O | 160.00 |
|  | POS PUR CK 05/31/13 18:09 |  |
| 6/03 | INS PREM   PROG DIRECT INS | 1,022.00 |
|  | 9409348047        06/03/13 |  |
|  | ID #-POL #901289893 |  |
|  | TRACE #-021000022225529 |  |
| 6/03 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 6/04 | FORCE PAY DEBIT 1747 CK# | 300.00 |
| 6/05 | NETFLIX.COM NETFLIX.COM CA | 7.99 |
|  | POS PUR CK 06/03/13 07:09 |  |
| 6/05 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 6/06 | FORCE PAY DEBIT CK# 1746 | 34.29 |
| 6/17 | WILLIE ZEILER MATCO MUSKOGEE O | 80.00 |
|  | POS PUR CK 06/14/13 18:39 |  |
| 6/24 | in person Transfer per sc | 220.00 |
|  | 1025740D-     65265L |  |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Exhibit 1 Page 171 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**

Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 3 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    6/24/13      Page     3
Account Number        1025740
Enclosures                   8

BASIC CHECKING                    1025740   (Continued)

Checks in Serial Number Order

| Date | Check No. | Amount | Date | Check No. | Amount |
|------|-----------|--------|------|-----------|--------|
| 5/30 | 1744 | 17.96 | 6/19 | 1749 | 38.95 |
| 5/30 | 1745 | 35.07 | 6/18 | 1750 | 23.07 |
| 6/18 | 1748* | 68.88 | | | |

*Indicates Skip in Check Number

. . . . . . . . . + . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 5/29 | 8.49 | 6/04 | 292.48- | 6/17 | 352.80 |
| 5/30 | 1,855.46 | 6/05 | 325.47- | 6/18 | 260.85 |
| 5/31 | 1,214.52 | 6/06 | 359.76- | 6/19 | 221.90 |
| 6/03 | 7.52 | 6/14 | 432.80 | 6/24 | 1.90 |

Exhibit 1 Page 172 of 263

Page: 4 of 4



Amount $1,900.00 Date 5/30/2013



Check 1744 Amount $17.96 Date 5/30/2013



Check 1745 Amount $35.07 Date 5/30/2013



Check 1746 Amount $34.29 Date 6/6/2013



Check 1747 Amount $300.00 Date 6/4/2013



Check 1748 Amount $68.88 Date 6/18/2013



Check 1749 Amount $38.95 Date 6/19/2013



Check 1750 Amount $23.07 Date 6/18/2013

Exhibit 1 Page 173 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740          Date    6/05/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
| 1746    | 34.29    | PD            | 25.00    |

Please deduct a handling charge of:          25.00
                         Current Balance:     325.47-



Check 1746 Amount $34.29 Date 6/5/2013

Exhibit 1 Page 174 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     6/03/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
| 1747    | 300.00   | PD            | 25.00    |

Please deduct a handling charge of:     25.00
                     Current Balance:    7.52



Check 1747 Amount $300.00 Date 6/3/2013

Exhibit 1 Page 175 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     6/26/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 511.28   | PD            |          |

Please deduct a handling charge of:                          0.00
                                    Current Balance:        23.10-

Exhibit 1 Page 176 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date    6/27/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 171.98   | PD            |          |
|         | 364.63   | PD            |          |

Please deduct a handling charge of:   - - - -    0.00
                          Current Balance:       22.77-

Exhibit 1 Page 177 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account      1025740          Date      7/03/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 14.10    | PD            |          |

Please deduct a handling charge of:      0.00
                        Current Balance:    413.68-

Exhibit 1 Page 178 of 263

Rec only

WELCOME TO
ALL 7 11 CONV... [...]
1010
WELLS CO...
HWY US ...
MUSKOGEE OK ...

qty          amount

85

88
0 00
88
88

T: 1

Exhibit 1 Page 179 of 263

Exhibit 1 Page 180 of 263

# FORT GIBSON STATE BANK

P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

July 2013

U.S. POSTAGE  PITNEY BOWES

ZIP 74434  $ 000.00
02 1W
0001334579 JUL 30 2013

*Advance*
*939.61*

Checks 14.10

O'Reilly 12.54

Fuel 29.12

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

74401$9045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 1 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    7/29/13        Page      1
Account Number        1025740
Enclosures                    2

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 15.66- |
| 65265 | Consumer Installment Loan | 38,682.11 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number                1025740
Previous Balance                  1.90
   10 Deposits/Credits        3,064.74
   21 Checks/Debits           3,082.30
Service Charge                     .00
Interest Paid                      .00
Ending Balance                  15.66-

Number of Images                      2
Statement Dates  6/25/13 thru  7/29/13
Days in the statement period         35
Average Ledger                       15
Average Collected                    15

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions
| Date | Description | Amount |
|---|---|---|
| 6/27 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 6/27 | DDA REGULAR DEPOSIT | 536.61 |
| 6/28 | REVERSE NSF PAID ITEM(S) CHG | 50.00 |
| 6/28 | PAYROLL DD TN OF FT GIBSON | 570.70 |
| | 73-0753448          06/28/13 | |
| | ID #-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 | |
| | TRACE #-103101660100027 | |
| 7/01 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |

Exhibit 1 Page 181 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    7/29/13        Page      2
Account Number          1025740
Enclosures                     2

BASIC CHECKING                    1025740    (Continued)

Deposits and Additions

| Date | Description | Amount |
|------|-------------|--------|
| 7/05 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 7/05 | DDA REGULAR DEPOSIT | 403.00 |
| 7/12 | PAYROLL DD TN OF FT GIBSON | 716.36 |
|      | 73-0753448        07/12/13 | |
|      | ID #-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 | |
|      | TRACE #-103101660100030 | |
| 7/26 | PAYROLL DD TN OF FT GIBSON | 688.07 |
|      | 73-0753448        07/26/13 | |
|      | ID #-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 | |
|      | TRACE #-103101660100028 | |
| 7/29 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals

| Date | Description | Amount |
|------|-------------|--------|
| 6/26 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 6/27 | transfer per Susan | 511.28 |
|      | 1025740D-        65265L | |
| 6/27 | NSF PAID ITEM(S) CHARGE | 50.00 |
| 6/28 | transfer per Susan | 171.98 |
|      | 1025740D-        64784L | |
| 6/28 | transfer per Susan | 364.63 |
|      | 1025740D-        62495L | |
| 6/28 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 7/01 | tranfer per jr | 450.00 |
|      | 1025740D-        65265L | |
| 7/03 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 7/05 | CHK ORDERS HARLAND CLARKE | 14.10 |
|      | 5580278260        07/03/13 | |
|      | ID #-0NWA24161011100 | |
|      | TRACE #-091000011028228 | |
| 7/12 | transfer per Susan | 144.52 |
|      | 1025740D-        66237L | |
| 7/12 | transfer per Susan | 194.24 |
|      | 1025740D-        65236L | |
| 7/12 | transfer per Susan | 300.00 |
|      | 1025740D-        65265L | |

Exhibit 1 Page 182 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON
STATE BANK**

Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 3 of 4

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    7/29/13       Page    3
Account Number         1025740
Enclosures                   2

BASIC CHECKING                          1025740   (Continued)

Checks and Withdrawals

| Date | Description | Amount |
|------|-------------|--------|
| 7/26 | OREILLY AUTO  00001925 MUSKOGE | 12.54 |
|      | POS PUR CK 07/25/13 21:19 | |
| 7/26 | ANDYS CONVENIENCE STORE MUSKOG | 29.12 |
|      | POS PUR CK 07/26/13 21:02 | |
| 7/26 | transfer per Susan | 28.36 |
|      | 1025740D-      64784L | |
| 7/26 | transfer per Susan | 144.52 |
|      | 1025740D-      66237L | |
| 7/26 | transfer per Susan | 194.24 |
|      | 1025740D-      65236L | |
| 7/26 | NSF PAID ITEM(S) CHARGE | ~~25.00~~ |
| 7/29 | ANDY'S CONVENIENCE STORE MUSKO | .07 |
|      | POS PUR CK 07/25/13 21:04 | |
| 7/29 | ANDY'S CONVENIENCE STORE MUSKO | 8.07 |
|      | POS PUR CK 07/25/13 21:04 | |
| 7/29 | transfer per Susan | 364.63 |
|      | 1025740D-      62495L | |

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 6/25 | 1.90 | 7/01 | 388.68- | 7/26 | 332.11 |
| 6/26 | 23.10- | 7/03 | 413.68- | 7/29 | 15.66- |
| 6/27 | 22.77- | 7/05 | .22 | | |
| 6/28 | 36.32 | 7/12 | 77.82 | | |

Exhibit 1 Page 183 of 263



Amount $536.61 Date 6/27/2013



Amount $403.00 Date 7/5/2013

Exhibit 1 Page 184 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date     7/26/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 364.63   | PD            |          |

Please deduct a handling charge of:        0.00
                        Current Balance:    332.11

Exhibit 1 Page 185 of 263

**FORT GIBSON STATE BANK**
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

august 2013

U.S. POSTAGE >> PITNEY BOWES

ZIP 74434     $ 000.46⁰
02 1W
0001384579 AUG 27 2013

Matco 240⁰⁰ ✓
Matco 160⁰⁰ ✓

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

74401$9045 R004

Exhibit 1 Page 186 of 263

 

STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 1 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    8/26/13        Page      1
Account Number         1025740
Enclosures

```
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 60.34 |
| 65265 | Consumer Installment Loan | 38,352.81 |

#### ---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number              1025740   Number of Images                      0
Previous Balance              15.66–   Statement Dates  7/30/13 thru  8/26/13
  2 Deposits/Credits       1,414.96   Days in the statement period         28
  6 Checks/Debits          1,338.96   Average Ledger                        9
Service Charge                  .00   Average Collected                     9
Interest Paid                   .00
Ending Balance                60.34

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

```
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

Deposits and Additions
| Date | Description | Amount |
|---|---|---|
| 8/09 | PAYROLL DD TN OF FT GIBSON<br>73-0753448        08/09/13<br>ID #-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<br>TRACE #-103101660100028 | 666.72 ✓ |
| 8/23 | PAYROLL DD TN OF FT GIBSON<br>73-0753448        08/23/13 | 748.24 ✓ |

Exhibit 1 Page 187 of 263

 

STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK

Ft. Gibson, Oklahoma 74434
918-478-2437

 FDIC

Page: 2 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date   8/26/13      Page    2
Account Number       1025740
Enclosures

BASIC CHECKING                    1025740   (Continued)

Deposits and Additions
Date        Description                              Amount
            ID #-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
            TRACE #-103101660100027

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals
| Date | Description | Amount |
|---|---|---|
| 8/07 | WILLIE ZEILER MATCO MUSKOGEE O<br>POS PUR CK 08/05/13 16:51 | 240.00 |
| 8/09 | in person Transfer per sc<br>1025740D-      65265L | 400.00 |
| 8/23 | treansfer per Susan<br>1025740D-      62495L | 65.00 |
| 8/23 | transfer per Susan<br>1025740D-      66237L | 144.52 |
| 8/23 | transfer per Susan<br>1025740D-      65265L | 329.44 |
| 8/26 | WILLIE ZEILER MATCO MUSKOGEE O<br>POS PUR CK 08/23/13 18:58 | 160.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Daily Balance Information
| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 7/30 | 15.66- | 8/09 | 11.06 | 8/26 | 60.34 |
| 8/07 | 255.66- | 8/23 | 220.34 | | |

Exhibit 1 Page 188 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740        Date    8/06/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 240.00   | PD            |          |

Please deduct a handling charge of:          0.00
                    Current Balance:        15.66-

Exhibit 1 Page 189 of 263

Exhibit 1 Page 190 of 263

# FORT GIBSON STATE BANK

### P.O. BOX 130
### FORT GIBSON, OKLAHOMA 74434

Sept 2013 ✓

U.S. POSTAGE PITNEY BOWES

ZIP 74434   $ 000.46⁰
02 1W
0001384579 SEP 26 2013

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

74401$9045 R004



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-476-2437

 FDIC

Page: 1 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    9/25/13        Page    1
Account Number        1025740
Enclosures

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 81.92 |
| 65265 | Consumer Installment Loan | 37,878.16 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number                    1025740    Number of Images                      0
Previous Balance                    60.34    Statement Dates  8/27/13 thru  9/25/13
  2 Deposits/Credits             1,319.89    Days in the statement period         30
  3 Checks/Debits                1,298.31    Average Ledger                       64
Service Charge                        .00    Average Collected                    64
Interest Paid                         .00
Ending Balance                     81.92

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Deposits and Additions
Date     Description
9/06     PAYROLL DD TN OF FT GIBSON                Amount
         73-0753448          09/06/13             560.25
         ID #-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
         TRACE #-103101660100028
9/20     PAYROLL DD TN OF FT GIBSON                759.64
         73-0753448          09/20/13

Exhibit 1 Page 191 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 2 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

| | | |
|---|---|---|
| Date   9/25/13 | Page | 2 |
| Account Number | | 1025740 |
| Enclosures | | |

BASIC CHECKING                          1025740  (Continued)

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| | ID #-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 | |
| | TRACE #-103101660100026 | |

Checks and Withdrawals

| Date | Description | Amount |
|---|---|---|
| 9/06 | transfer per Susan | 194.24 |
| | 1025740D-      65236L | |
| 9/06 | transfer per Susan | 364.63 |
| | 1025740D-      62495L | |
| 9/20 | loan payment per susan chapman | 739.44 |
| | 1025740D-      65265L | |

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 8/27 | 60.34 | 9/06 | 61.72 | 9/20 | 81.92 |

Exhibit 1 Page 192 of 263



FORT GIBSON STATE BANK
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK 74401

Exhibit 1 Page 193 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 1 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date  10/28/13          Page      1
Account Number         1025740
Enclosures                    1

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

S U M M A R Y  O F  A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 261.28 |
| 65265 | Consumer Installment Loan | 37,465.38 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number            1025740      Number of Images                    1
Previous Balance            81.92      Statement Dates  9/26/13 thru 10/28/13
   4 Deposits/Credits    2,515.69      Days in the statement period       33
  11 Checks/Debits       2,336.33      Average Ledger                     37
Service Charge               .00       Average Collected                  37
Interest Paid                .00
Ending Balance            261.28

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
| 9/27 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 10/04 | PAYROLL DD TN OF FT GIBSON 73-0753448        10/04/13 ID #-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 TRACE #-103101660100025 | 465.20 |
| 10/18 | PAYROLL DD TN OF FT GIBSON 73-0753448        10/18/13 | 365.46 |

Exhibit 1 Page 194 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

| | |
|---|---|
| Date  10/28/13 | Page    2 |
| Account Number | 1025740 |
| Enclosures | 1 |

BASIC CHECKING                        1025740   (Continued)

**Deposits and Additions**

| Date | Description | Amount |
|---|---|---|
| | ID #-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 | |
| | TRACE #-103101660100025 | |
| 10/25 | DDA REGULAR DEPOSIT | 1,660.03 |

**Checks and Withdrawals**

| Date | Description | Amount |
|---|---|---|
| 9/26 | NSF PAID ITEM(S) CHARGE | ~~85.00~~ |
| 9/27 | transfer per Susan | 171.98 |
| | 1025740D-        64784L | |
| 10/04 | transfer per Susan | 144.52 |
| | 1025740D-        66237L | |
| 10/04 | transfer per Susan | 194.24 |
| | 1025740D-        65236L | |
| 10/18 | in person Transfer per sc | 400.00 |
| | 1025740D-        65265L | |
| 10/25 | TRANSFER PER SUSAN | 171.98 |
| | 1025740D-        64784L | |
| 10/25 | TRANSFER PER SUSAN | 194.24 |
| | 1025740D-        65236L | |
| 10/25 | TRANSFER PER SUSAN | 250.30 |
| | 1025740D-        65738L | |
| 10/25 | TRANSFER PER SUSAN | 339.44 |
| | 1025740D-        65265L | |
| 10/25 | TRANSFER PER SUSAN | 364.63 |
| | 1025740D-        62495L | |
| 10/28 | WILLIE ZEILER MATCO MUSKOGEE O | 80.00 |
| | POS PUR CK 10/25/13 18:56 | |

**Daily Balance Information**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 9/26 | 56.92 | 10/04 | 36.38 | 10/25 | 341.28 |
| 9/27 | 90.06- | 10/18 | 1.84 | 10/28 | 261.28 |

Exhibit 1 Page 195 of 263



Amount $1,660.03 Date 10/25/2013

Exhibit 1 Page 196 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account      1025740          Date      9/26/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 171.98   | PD            |          |

Please deduct a handling charge of:                    0.00
                          Current Balance:             56.92

Exhibit 1 Page 197 of 263



Exhibit 1 Page 198 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**

Ft. Gibson, Oklahoma 74434
918-478-2437

 **FDIC**

Page: 1 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date   11/25/13         Page   1
Account Number         1025740
Enclosures                   1

```
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

### SUMMARY OF ACCOUNTS

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 4.73 |
| 65265 | Consumer Installment Loan | 37,090.60 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
Account Number                    1025740     Number of Images                       1
Previous Balance                   261.28     Statement Dates 10/29/13 thru 11/25/13
    5 Deposits/Credits           1,374.02     Days in the statement period         28
    8 Checks/Debits             1,630.57     Average Ledger                        4-
Service Charge                        .00     Average Collected                     4-
Interest Paid                         .00
Ending Balance                      4.73

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

```
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

Deposits and Additions
Date      Description                                    Amount /
11/01     PAYROLL DD TN OF FT GIBSON                     481.92 /
          73-0753448            11/01/13
          ID #-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
          TRACE #-103101660100025
11/15     PAYROLL DD TN OF FT GIBSON                     542.10 /
          73-0753448            11/15/13

Exhibit 1 Page 199 of 263



STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2497



Page: 2 of 3

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date  11/25/13          Page    2
Account Number          1025740
Enclosures                    1

BASIC CHECKING                    1025740   (Continued)

Deposits and Additions

| Date | Description | Amount |
|---|---|---|
|  | ID #-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 |  |
|  | TRACE #-103101660100026 |  |
| 11/18 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 11/19 | REVERSE NSF PAID ITEM(S) CHG | 25.00 |
| 11/22 | DDA REGULAR DEPOSIT | 300.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checks and Withdrawals

| Date | Description | Amount |
|---|---|---|
| 11/01 | TRANSFER PER SUSAN | 739.44 |
|  | 1025740D-      65265L |  |
| 11/06 | WILLIE ZEILER MATCO MUSKOGEE O | 80.00 |
|  | POS PUR CK 11/04/13 15:58 |  |
| 11/15 | TRANSFER PER SUSAN | 171.98 |
|  | 1025740D-      64784L |  |
| 11/15 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 11/18 | WILLIE ZEILER MATCO MUSKOGEE O | 80.00 |
|  | POS PUR CK 11/16/13 18:06 |  |
| 11/18 | TRANSFER PER SUSAN | 364.63 |
|  | 1025740D-      62495L |  |
| 11/18 | NSF PAID ITEM(S) CHARGE | 25.00 |
| 11/19 | transfer per jr | 144.52 |
|  | 1025740D-      66237L |  |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 10/29 | 261.28 | 11/15 | 268.88 | 11/22 | 4.73 |
| 11/01 | 3.76 | 11/18 | 175.75- |  |  |
| 11/06 | 76.24- | 11/19 | 295.27- |  |  |

Exhibit 1 Page 200 of 263



Amount $300.00 Date 11/22/2013

Exhibit 1 Page 201 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account     1025740          Date    11/18/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 144.52   | PD            |          |

Please deduct a handling charge of:
Current Balance:                    0.00
                                  175.75-

Exhibit 1 Page 202 of 263

**Fort Gibson State Bank**
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK 74401

Account     1025740          Date     11/05/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention. The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 80.00    | PD            |          |

Please deduct a handling charge of:          0.00
                    Current Balance:          3.76

Exhibit 1 Page 203 of 263

**HOW TO USE THIS REGISTER:**

**1. The Double Line Method.**
The unshaded (white) lines are used to enter payment or descriptions of deposit. The shaded lines are used to record the purpose of the payment. Balance is computed after each entry in the shaded area of the Balance column.

*An illustration is shown below.*

**2.** This Register includes code letters identifying different non-check transactions that may be recorded in the Code column.
Use the symbol (✓) when reconciling your statement for items posted. You can see at a glance outstanding items and amounts.

**CÓMO UTILIZAR EL REGÍSTRO:**

**1. El método del doble renglón:**
El renglón blanco (no sombreado) se utiliza para anotar pagos o descripciones de depósitos. Los renglones sombreados se utilizan para registrar la razón del pago. El balance se calcula al final de cada anotación en el área sombreada de la columna del balance.

*A continuación se muestra una ilustración.*

**2.** El registro incluye códigos que identifican muchas transacciones y éstos se escriben en la columna titulada código.
Utilice una marca (✓) cuando concilie en su estado de cuenta los cheques ya registrados. Así puede ver a simple vista las transacciones y cantidades pendientes.

YEAR/AÑO ____

| DATE FECHA | NUMBER NÚMERO | TRANSACTION DESCRIPTION / DESCRIPCIÓN DE LA TRANSACCIÓN | CODE CÓDIGO | ✓ T | PAYMENT/DEBIT | DEPOSIT | BALANCE 620 70 |
|---|---|---|---|---|---|---|---|
| 7 14 | 101 | Venture Sporting Goods | | | 45 62 | | 45 62 |
| | | ball and glove | | | | | 575 08 |
| 7 15 | | Deposit | | | | 350 00 | 350 00 |
| | | dividend check | | | | | 925 08 |
| 7 16 | 102 | Corner Grocery Store | | ✓ | 75 10 | | 75 10 |
| | | groceries | | | | | 849 98 |

| | | | | ✓ T | | | BALANCE |
|---|---|---|---|---|---|---|---|
| | 10/29 | Bal w/ Statement ————→ | | | | | 30 60 |
| ACH | 11/2 | Deposit | | ✓ | | 609 33 | 609 33 / 639 93 |
| ACH | 11/2 | FGSB | | ✓ | 460 00 | | 460 00 / 179 93 |
| ACH | 11/5 | matco | | ✓ | 172 45 | | 172 45 / 7 48 |
| ACH | 11/13 | Deposit | | ✓ | | 110 00 | 110 00 / 117 48 |
| ACH | 11/13 | Deposit | | ✓ | | 1744 20 | 1744 20 / 1861 68 |
| ACH | 11/13 | FGSB | | ✓ | 194 24 | | 194 24 / 1667 44 |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 204 of 263

**YEAR/AÑO** _____

Transfer = T   Direct Deposit = DD   Debit Card = DC   Teller Machine = ATM   Automatic Payment = AP   Loan Payment = LP   Expense = E   Tax Deductible = TD

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL (−) | DEPOSIT (+) | BALANCE 1662.44 |
|---|---|---|---|---|---|---|---|
| ACH | 11/13 | FGSB | | ✓ | 300 00 | | 1367 44 |
| ACH | 11/13 | FGSB | | ✓ | 114 96 | | 217 48 |
| ACH | 11/14 | Net Flix | | ✓ | 7 99 | | 209 49 |
| ACH | 11/16 | Deposit | | ✓ | | 657 07 | 866 56 |
| ACH | 11/16 | Matco | | ✓ | 80 00 | | 786 56 |
| 1712 | 11/12 | Andy's (Fuel) | | ✓ | 109 87 | | 676 69 |
| 1713 | 11/17 | Andy's (Fuel) | | ✓ | 56 60 | | 620 09 |
| | 11/19 | Deposit | | ✓ | | 60 00 | 680 09 |
| D/C | 11/19 | O'Reilly's | | ✓ | 21 82 | | 658 27 |
| | 11/26 | Bal w/ Statement | | ✓ | | | 658 27 |
| ACH | 11/27 | FGSB | | ✓ | 171 98 | | 486 29 |
| ACH | 11/27 | FGSB | | ✓ | 364 63 | | 121 66 |
| ACH | 11/30 | FGSB | | ✓ | 130 00 | | (8 34) |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 205 of 263

**YEAR/AÑO** _____

Transfer = T  Direct Deposit = DB  Debit Card = DC  Teller Machine = ATM  Automatic Payment = AP  Loan Payment = LP  Expense = E  Tax Deductible = TD

| DATE / FECHA | NUMBER / NUMERO | TRANSACTION DESCRIPTION / DESCRIPCION DE LA TRANSACCION | CODE / CODIGO | ✓ T | PAYMENT/WITHDRAWAL (−) | DEPOSIT (+) | BALANCE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 1003 60 |
| ACH | 11/30 | Deposit | | ✓ | | 1003 60 | 995 86 |
| ACH | 11/30 | FGSB | | ✓ | 250 00 | | 250 00 / 745 86 |
| ACH | 11/30 | FGSB | | ✓ | 739 44 | | 739 44 / 5 82 |
| ACH | 12/14 | Deposit | | ✓ | | 718 39 | 718 39 / 724 21 |
| ACH | 12/14 | FGSB | | ✓ | 200 00 | | 200 00 / 524 21 |
| ACH | 12/14 | FGSB | | ✓ | 500 00 | | 500 00 / 24 21 |
| | | | | | | | 7 99 |
| ACH | 12/17 | Net Flix | | ✓ | 7 99 | | 16 22 |
| ACH | 12/21 | INS Charge | | ✓ | 25 00 | 12/27 Balwl Statement | 25 00 / (8 78) |
| 1740 | 12/18 | Matzo Tools | | ✓ | 161 43 | | 161 43 / (170 21) |
| ACH | 12/28 | Deposit (FGPD) payroll | | ✓ | | 738 67 | 738 67 / 568 46 |
| ACH | 12/31 | FGSB | | ✓ | 171 98 | | 171 98 / 396 48 |
| ACH | 12/31 | FGSB | | ✓ | 364 63 | | 364 63 / 31 85 |
| ACH | 1/8 | NSF Charge | | ✓ | 25 00 | | 25 00 / 6 85 |

Transferencia = T  Depósito Directo = DD  Tarjeta de Débito = TD  Cajero Automático = CA  Pago Automático = PA  Pago de Préstamo = PP  Gasto = G  Deducible de Impuestos = DI

Exhibit 1 Page 206 of 263

YEAR/AÑO _____

Transfer = T     Direct Deposit = DB     Debit Card = DC     Toller Machine = ATM     Automatic Payment = AP     Loan Payment = LP     Expense = E     Tax Deductible = TD

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL (−) | DEPOSIT (+) | BALANCE |
|---|---|---|---|---|---|---|---|
| ACH | 1/11 | Deposit (FGPD) payroll | | ✓ | | 1067 73 | 4.85 / 1067 73 / 674 58 |
| 174 | 1/9 | Andys (ES Painting) (JAKEWARE) | | ✓ | 100 00 | | 100 00 / 574 58 |
| ACH | 1/11 | FGSB | | ✓ | 100 00 | | 100 00 / 474 58 |
| ACH | 1/11 | FGSB | | ✓ | 450 00 | | 450 00 / 24 58 |
| ACH | 1/15 | Net Flix | | ✓ | 7 99 | | 7 99 / 16 59 |
| ACH | 1/25 | Deposit (FG PD) payroll | | ✓ | | 583 76 | 583 76 / 600 35 |
| ACH | 1/16 | Matco | | ✓ | 80 00 | | 80 00 / 520 35 |
| ACH | 1/16 | Matco | | ✓ | 80 00 | | 80 00 / 440 35 |
| ACH | 1/25 | FGSB | | ✓ | 171 98 | | 171 98 / 268 37 |
| ACH | 1/25 | NSF Charge | | ✓ | 25 00 | | 25 00 / 243 37 |
| ACH | 1/28 | Matco | | ✓ | 80 00 | | 80 00 / 163 37 |
| ACH | 1/28 | FGSB | | ✓ | 364 63 | | 364 63 / (201 26) |
| ACH | 1/29 | INSF charge | | ✓ | 25 00 | | 25 00 / (226 26) |

Transferencia = T     Depósito Directo = DD     Tarjeta de Débito = TD     Cajero Automático = CA     Pago Automático = PA     Pago de Préstamo = PP     Gasto = G     Deducible de Impuestos = DI

Exhibit 1 Page 207 of 263

YEAR/AÑO _____
Transfer = T   Direct Deposit = DD   Debit Card = DC   Teller Machine = ATM   Automatic Payment = AP   Loan Payment = LP   Expense = E   Tax Deductible = TD

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION / DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | (−) PAYMENT/WITHDRAWAL | (+) DEPOSIT | BALANCE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 226 26 |
| 1742 | 1/27 | Andy's (Fuel) | | ✓ | 74 33 | | 74 33 / −(300 59) |
| ACH | 1/30 | NSF Charge | | ✓ | 25 00 | | 25 00 / −(325 59) |
| ACH | 1/31 | AT&T Cell Phones) | | ✓ | 621 86 | | 621 86 / −(947 45) |
| | 2/1 | Deposit (Income) | | ✓ | | 625 00 | 625 00 / −(322 45) |
| ACH | 2/1 | Classmates.com | | ✓ | 39 00 | | 39 00 / −(361 45) |
| ACH | 2/8 | Deposit (FGPD)payroll | | ✓ | | 633 37 | 633 37 / 271 92 |
| ACH | 2/8 | FGSB | | ✓ | 115 00 | | 115 00 / 156 92 |
| ACH | 2/8 | FGSB | | ✓ | 152 72 | | 152 72 / 4 20 |
| ACH | 2/20 | Deposit (FGPD)payroll | | ✓ | | 575 64 | 575 64 / 579 84 |
| ACH | 2/20 | FGSB | | ✓ | 144 52 | | 144 52 / 435 32 |
| ACH | 2/25 | Net-Flix | | ✓ | 7 99 | | 7 99 / 427 33 |
| ACH | 2/25 | Willie Matco Tools | | ✓ | 80 00 | | 80 00 / 160 00 / 267 33 |
| ACH | 2/25 | FGSB | | ✓ | 171 98 | | 171 98 / 95 35 |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 208 of 263

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCIÓN DE LA TRANSACCIÓN | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL CANTIDAD DEL PAGO O RETIRO | DEPOSIT | BALANCE |
|---|---|---|---|---|---|---|---|
| | | YEAR/AÑO — Transfer = T   Direct Deposit = DD   Debit Card = DC   Teller Machine = ATM   Automatic Payment = AP   Loan Payment = LP   Expense = E   Tax Deductible = TD | | | | Bank Statement | 915.55 |
| ACH 2/25 | | Telephone transfer fee | | ✓ | 3 00 | | 3 00 |
| ACH 2/28 | | Deposit (Advance) | | ✓ | | 764 63 | 92 35 |
| ACH 2/28 | | FGSB | | ✓ | 364 63 | | 856 98 |
| ACH 2/28 | | FGSB | | ✓ | 400 00 | | 364 63 |
| ACH 3/8 | | Deposit (FG PD) payroll | | ✓ | | 727 90 | 492 35 |
| ACH 3/8 | | FGSB | | ✓ | 100 00 | | 400 00 |
| | | | | | | | 92 35 |
| | | | | | | | 727 90 |
| | | | | | | | 820 25 |
| | | | | | | | 100 00 |
| | | | | | | | 720 25 |
| ACH 3/8 | | FGSB | | ✓ | 144 52 | | 144 52 |
| ACH 3/8 | | FGSB | | ✓ | 171 98 | | 575 73 |
| ACH 3/8 | | FGSB | | ✓ | 364 63 | | 171 98 |
| ACH 3/13 | | matco Tools | | ✓ | 80 00 | | 403 75 |
| ACH 3/22 | | Deposit (FG PD) payroll | | ✓ | | 600 06 | 364 63 |
| ACH 3/22 | | FGSB | | ✓ | 554 18 | Bal w/ statement | 80 00 |
| 3/22 | | Bal w/ statement | | | | | (40 88) |
| | | | | | | | 600 06 |
| | | | | | | | 559 18 |
| | | | | | | | 554 18 |
| | | | | | | | 5 00 |
| | | | | | | | 5 00 |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = ID

Exhibit 1 Page 209 of 263

YEAR/AÑO _____
Transfer = T    Direct Deposit = DD    Debit Card = DD    Teller Machine = ATM    Automatic Payment = AP    Loan Payment = LP    Expense = E    Tax Deductible = TD

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | (−) PAYMENT/WITHDRAWAL CANTIDAD DEL PAGO | (+) DEPOSIT CANTIDAD DEL DEPOSITO | BALANCE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 5 00 |
| ACH 3/26 | | Netflix | | ✓ | 7 99 | | 7 99 |
| | | | | | | | (− 2 99) |
| ACH 4/5 | | Deposit (FGPD) payroll | | ✓ | | 517 34 | 517 34 |
| | | | | | | | 514 35 |
| ACH 4/5 | | FGSB | | ✓ | 85 59 | | 85 59 |
| | | | | | | | 428 76 |
| ACH 4/5 | | FGSB | | ✓ | 144 52 | | 144 52 |
| | | | | | | | 284 24 |
| ACH 4/5 | | FGSB | | ✓ | 194 24 | | 194 24 |
| | | | | | | | 90 00 |
| ACH 4/10 | | Matco | | ✓ | 160 00 | | 160 00 |
| | | | | | | | − (70 00) |
| ACH 4/19 | | Deposit | | ✓ | | 602 56 | 602 56 |
| | | | | | | | 532 56 |
| ACH 4/19 | | FGSB | | ✓ | 80 00 | | 80 00 |
| | | | | | | | 452 56 |
| ACH 4/19 | | FGSB | | ✓ | 171 98 | | 171 98 |
| | | | | | | | 280 58 |
| ACH 4/19 | | FGSB | | ✓ | 279 63 | 4/23/13 Bal. w/ | 279 63 |
| | | | | | | Statement → | 95 |
| ACH 5/3 | | Deposit (FGPD) payroll | | ✓ | | 612 51 | 612 51 |
| | | | | | | | 613 46 |
| ACH 4/29 | | FGSB | | ✓ | 178 94 | | 178 94 |
| | | | | | | | 434 52 |
| ACH 5/3 | | FGSB | | ✓ | 144 52 | | 144 52 |
| | | | | | | | 290 00 |

Transferencia = T    Depósito Directo = DD    Tarjeta de Débito = TD    Cajero Automático = CA    Pago Automático = PA    Pago de Préstamo = PP    Gasto = G    Deducible de Impuestos = DI

Exhibit 1 Page 210 of 263

YEAR/AÑO ____

Transfer = T.    Direct Deposit = DD    Debit Card = DC    Teller Machine = ATM    Automatic Payment = AP    Loan Payment = LP    Expense = E    Tax Deductible = TD

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | (−) PAYMENT/WITHDRAWAL CANTIDAD DEL PAGO O RETIRO | (+) DEPOSIT CANTIDAD DEL DEPOSITO | BALANCE 2710.00 |
|---|---|---|---|---|---|---|---|
| ACH 5/3 | | FGSB | | ✓ | 194 34 | | 194 34 / 95 76 |
| ACH 5/6 | | Net Flix | | ✓ | 799 | | 7 99 / 87 77 |
| ACH 5/9 | | NSF Charge | | ✓ | 25 00 | | 25 00 / 62 77 |
| 1743 5/1 | | Matco | | ✓ | 160 00 | | 160 00 / -(97 23) |
| ACH 5/17 | | Deposit (FGPD) Payroll | | ✓ | | 597 85 | 597 85 / 500 62 |
| ACH 5/17 | | FGSB | | ✓ | 495 62 | | 495 62 / 5 00 |
| ACH 5/24 | | Deposit (Advance) | | ✓ | | 790 00 | 790 00 / 795 00 |
| ACH 5/24 | | FGSB | | ✓ | 171 98 | | 171 98 / 623 02 |
| ACH 5/24 | | FGSB | | ✓ | 250 00 | 5/28/13 Balance | 250 00 / 373 02 |
| ACH 5/24 | | FGSB | | ✓ | 364 53 | w/ Statement → | 364 53 / 8 49 |
| ACH 5/30 | | Deposit (Advance) | | ✓ | | 1900 00 | 1900 00 / 1908 49 |
| ACH 5/31 | | Deposit (FGBB Payroll) | | ✓ | | 736 47 | 736 47 / 2644 96 |
| ACH 5/31 | | Progressive Insurance | | ✓ | 75 00 | | 75 00 / 2569 96 |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 211 of 263

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | (−) PAYMENT/WITHDRAWAL | (+) DEPOSIT | BALANCE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 2989 96 |
| | | | | | | | 144 52 |
| ACH 5/31 | | FGSB | | ✓ | 144 52 | | 2845 44 |
| | | | | | | | 194 24 |
| ACH 5/31 | | FGSB | | ✓ | 194 24 | | 2231 20 |
| | | | | | | | 300 00 |
| ACH 5/31 | | FGSB | | ✓ | 300 00 | | 1931 20 |
| | | | | | | | 663 45 |
| ACH 5/31 | | AT&T | | ✓ | 663 65 | | 1267 55 |
| | | | | | | | 160 00 |
| ACH 6/3 | | Mateo | | ✓ | 160 00 | | 1107 55 |
| | | | | | | | 1022 00 |
| ACH 6/3 | | Progressive Insurance | | ✓ | 1022 00 | | 85 55 |
| | | | | | | | 17 96 |
| 1744 5/30 | | SB Marina | | ✓ | 17 96 | | 67 59 |
| | | | | | | | 35 07 |
| 1745 5/30 | | SB Marina | | ✓ | 35 07 | | 32 52 |
| | | | | | | | 792 56 |
| ACH 6/14 | | Deposit (FG Payroll) | | ✓ | | 792 56 | 825 08 |
| | | | | | | | 34 29 |
| 1746 6/6 | | Martin's | | ✓ | 34 29 | | 790 79 |
| | | | | | | | 25 00 |
| ACH 6/3 | | NSF Charge | | ✓ | 25 00 | | 765 79 |
| | | | | | | | 300 00 |
| 1747 6/4 | | OTC | | ✓ | 300 00 | | 465 79 |
| | | | | | | | 7 99 |
| ACH 6/5 | | Net Flix | | ✓ | 7 99 | | 457 80 |

Transferencia = T   Depósito Directo = DD   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 212 of 263

| YEAR/AÑO Transfer = T   Direct Deposit = DD   Debit Card = BC   Teller Machine = ATM   Automatic Payment = AP   Loan Payment = LP   Expense = E   Tax Deductible = TD | | | | | | | |
|---|---|---|---|---|---|---|---|
| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL CANTIDAD DEL PAGO O RETIRO (−) | DEPOSIT CANTIDAD DEL DEPOSITO (+) | BALANCE |
| 1748 | 6/18 | Andy's (Fuel) | | ✓ | 68 88 | | 457 80 / 68 88 / 388 92 |
| 1749 | 6/18 | APAC (Gravel) | | ✓ | 38 95 | | 38 95 / 349 97 |
| 1750 | 6/19 | Andy's | | ✓ | 23 07 | | 23 07 / 326 90 |
| ACH | 6/15 | NSF charge | | ✓ | 25 00 | | 25 00 / 301 90 |
| ACH | 6/17 | Matco | | ✓ | 80 00 | Bank w/ | 80 00 / 221 90 |
| ACH | 6/24 | FGSB | | ✓ | 220 00 | Statement wed 24 | 220 00 / 1 90 |
| ACH | 6/27 | Deposit (Advance) | | ✓ | | 536 61 | 536 61 / 538 51 |
| ACH | 6/28 | Deposit (FGPD Payroll) | | ✓ | | 570 70 | 570 70 / 1109 21 |
| ACH | 6/27 | FGSB | | ✓ | 511 28 | | 511 28 / 597 93 |
| ACH | 6/28 | FGSB | | ✓ | 171 98 | | 171 98 / 425 95 |
| ACH | 6/28 | FGSB | | ✓ | 364 63 | | 364 63 / 61 32 |
| ACH | 7/5 | Deposit (Advance) | | ✓ | | 403 00 | 403 00 / 464 32 |
| ACH | 7/12 | Deposit (FGPD Payroll) | | ✓ | | 716 36 | 716 36 / 1180 68 |

Transferencia = T   Depósito Directo = DB   Tarjeta de Débito = TD   Cajero Automático = CA   Pago Automático = PA   Pago de Préstamo = PP   Gasto = G   Deducible de Impuestos = DI

Exhibit 1 Page 213 of 263

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | T | PAYMENT/WITHDRAWAL CANTIDAD DEL PAGO O NET, IO | DEPOSIT CANTIDAD DEL DEPOSITO | BALANCE |
|---|---|---|---|---|---|---|---|
| | | YEAR/AÑO | | | | | 1180.68 |
| ACH | 7/1 | FGSB | ✓ | | 450 00 | | 450 00 |
| | | | | | | | 730 68 |
| ACH | 7/5 | Harland checks | ✓ | | 14 10 | | 14 10 |
| | | | | | | | 716 58 |
| ACH | 7/12 | FGSB | ✓ | | 144 52 | | 144 52 |
| | | | | | | | 572 06 |
| ACH | 7/12 | FGSB | ✓ | | 194 24 | | 194 24 |
| | | | | | | | 377 82 |
| ACH | 7/12 | FGSB | ✓ | | 300 00 | | 300 00 |
| | | | | | | | 77 82 |
| ACH | 7/12 | Deposit (FGSB Payroll) | ✓ | | | 688 07 | 688 07 |
| | | | | | | | 765 89 |
| D/C | 7/26 | O'Reillys | ✓ | | 12 54 | | 12 54 |
| | | | | | | | 753 35 |
| D/C | 7/26 | Andys | ✓ | | 29 12 | | 29 12 |
| | | | | | | | 724 23 |
| ACH | 7/26 | FGSB | ✓ | | 28 36 | | 28 36 |
| | | | | | | | 695 87 |
| ACH | 7/26 | FGSB | ✓ | | 144 52 | | 144 52 |
| | | | | | | | 551 35 |
| ACH | 7/26 | FGSB | ✓ | | 194 24 | | 194 24 |
| | | | | | | | 357 11 |
| D/C | 7/29 | Andys | ✓ | | 8 14 | | 8 14 |
| | | | | | | | 348 97 |
| ACH | 7/29 | FGSB | ✓ | | 364 63 | | 364 63 |
| | | | | | | | (15 66) |

Exhibit 1 Page 214 of 263

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL (−) CANTIDAD DEL PAGO O DEBITO | DEPOSIT (+) CANTIDAD DEL DEPOSITO | BALANCE |
|---|---|---|---|---|---|---|---|
| ACH 8/9 | | Deposit (Payroll) | | ✓ | | 666 72 | 666 73 1051 66 |
| ACH 8/23 | | Deposit (Payroll) | | ✓ | | 748 24 | 748 24 1399 30 |
| ACH 8/7 | | Matco Tools | | ✓ | 240 00 | | 240 00 1159 30 |
| ACH 8/9 | | FGSB | | ✓ | 400 00 | | 400 00 759 30 |
| ACH 8/23 | | FGSB | | ✓ | 65 00 | | 65 00 694 30 |
| ACH 8/23 | | FGSB | | ✓ | 144 52 | | 144 52 549 78 |
| ACH 8/23 | | FGSB | | ✓ | 329 44 | | 329 44 220 34 |
| ACH 8/6 | | Matco Tools | | ✓ | 160 00 | Bad w/ Statement | 160 00 60 34 |
| ACH 9/6 | | Deposit (Payroll) | | ✓ | | 560 25 | 560 25 620 59 |
| ACH 9/6 | | FGSB | | ✓ | 194 24 | | 194 24 426 35 |
| ACH 9/6 | | FGSB | | ✓ | 364 63 | | 364 63 61 72 |
| ~~ACH~~ | | ~~Deposit~~ | | ✓ | | ~~out~~ | ~~~~ |
| ACH 9/20 | | Deposit (Payroll) | | ✓ | | 759 64 | 759 64 821 36 |

YEAR/AÑO _____

| DATE FECHA | NUMBER NUMERO | TRANSACTION DESCRIPTION DESCRIPCION DE LA TRANSACCION | CODE CODIGO | ✓ T | PAYMENT/WITHDRAWAL (−) | DEPOSIT (+) | BALANCE |
|---|---|---|---|---|---|---|---|
| ACH 9/20 | | FGSB | | ✓ | 739 44 | Statement 912.44B | 739 44 / 81 92 |
| ACH 10/4 | | Deposit (Payroll) | | ✓ | | 465 20 | 465 20 / 547 12 |
| ACH 10/18 | | Deposit (Payroll) | | ✓ | 912.50 | 365 46 | 365 46 / 912 58 |
| ACH 9/27 | | FGSB | | ✓ | 171 98 | | 171 98 / 740 60 |
| ACH 10/4 | | FGSB | | ✓ | 144 52 | | 144 52 / 596 08 |
| ACH 10/4 | | FGSB | | ✓ | 400.00 | | 194 24 / 401 84 |

FIGURE HERE / UTILICE ESTE ESPACIO PARA HACER SUS CALCULOS

Exhibit 1 Page 216 of 263

**FORT GIBSON STATE BANK**
P.O. BOX 130
FORT GIBSON, OKLAHOMA 74434

Dec. 2013 ✓

U.S. POSTAGE ⟫ PITNEY BOWES

ZIP 74434   $ 000.46⁰
02 1W
0001384579 DEC 20 2013

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK   74401

Matco Tools 160.00 ✓

74401$9045

Exhibit 1 Page 217 of 263



STATEMENT OF ACCOUNT

## FT. GIBSON STATE BANK
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 1 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date    12/19/13          Page    1
Account Number           1025740
Enclosures

Effective February 01,2014 Fort Gibson State Bank's ATM will no longer be
equipped to accept deposits to checking accounts or savings accounts
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### S U M M A R Y   O F   A C C O U N T S

| Account No. | Type of Account | Current Balance |
|---|---|---|
| 1025740 | BASIC CHECKING | 179.98- |
| 65265 | Consumer Installment Loan | 36,626.84 |

---- CHECKING ACCOUNTS ----

BASIC CHECKING
| Account Number | 1025740 | Number of Images | 0 |
|---|---|---|---|
| Previous Balance | 4.73 | Statement Dates 11/26/13 thru 12/19/13 | |
| 3 Deposits/Credits | 1,571.14 | Days in the statement period | 24 |
| 7 Checks/Debits | 1,755.85 | Average Ledger | 49 |
| Service Charge | .00 | Average Collected | 49 |
| Interest Paid | .00 | | |
| Ending Balance | 179.98- | | |

|  | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft item fees year to date | $.00 | $175.00 |
| Return item fees year to date | $.00 | $.00 |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Deposits and Additions
Date     Description                                      Amount
11/27    PAYROLL DD TN OF FT GIBSON                       754.72 ✓
         73-0753448          11/27/13
         ID #-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
         TRACE #-103101660100025

Exhibit 1 Page 218 of 263



STATEMENT OF ACCOUNT

**FT. GIBSON STATE BANK**
Ft. Gibson, Oklahoma 74434
918-478-2437



Page: 2 of 2

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Date  12/19/13          Page    2
Account Number         1025740
Enclosures

BASIC CHECKING                          1025740   (Continued)

Deposits and Additions

| Date | Description | Amount |
|------|-------------|--------|
| 12/13 | PAYROLL DD TN OF FT GIBSON 73-0753448        12/13/13 ID #-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 TRACE #-103101660100025 | 791.42 |
| 12/16 | REVERSE NSF PAID ITEM(S) CHG | ~~25.00~~ |

Checks and Withdrawals

| Date | Description | Amount |
|------|-------------|--------|
| 11/27 | TRANSFER PER JR 1025740D-        65265L | 700.00 |
| 12/13 | transfer per Susan 1025740D-        65265L | 140.00 |
| 12/13 | transfer per Susan 1025740D-        64784L | 171.98 |
| 12/13 | transfer per Susan 1025740D-        65236L | 194.24 |
| 12/13 | NSF PAID ITEM(S) CHARGE | ~~25.00~~ |
| 12/16 | WILLIE ZEILER MATCO MUSKOGEE O POS PUR CK 12/14/13 19:27 | 160.00 |
| 12/16 | transfer per Susan 1025740D-        62495L | 364.63 |

Daily Balance Information

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| 11/26 | 4.73 | 12/13 | 319.65 |
| 11/27 | 59.45 | 12/16 | 179.98- |

Exhibit 1 Page 219 of 263

Fort Gibson State Bank
P. O. Box 130
Fort Gibson, Oklahoma 74434
918-478-2437

NOTICE OF NON-SUFFICIENT FUNDS
(918) 478-2437

DONNIE R YARBROUGH
2811 W DAVIS FIELD ROAD
MUSKOGEE OK  74401

Account    1025740        Date    12/13/13

Those ITEMS DENOTED WITH "PD" WERE PAID creating an overdraft that needs your
immediate attention.  The REMAINING ITEMS WERE RETURNED as Non-Sufficent Funds.

| Check # | Amount $ | Paid/Returned | Charge $ |
|---------|----------|---------------|----------|
|         | 364.63   | PD            |          |

Please deduct a handling charge of:—                    0.00
                         Current Balance:              319.65

Exhibit 1 Page 220 of 263

# EXHIBIT "Q"

Exhibit 1 Page 221 of 263

13

I mean, tell him what you think you know.  But make sure the record shows that you're --

MR. HENDRIX:  Estimating.  I think Charles Bynum owns -- this is for Three Rivers Bankshares, the top tier holding company --

Q.   (By Mr. Potts)  Uh-huh.

A.   -- is 7 1/2 percent; Harvey Chaffin I think is 8 1/2 or 9 1/2; Susan Plumb is 8 1/2 or 9 1/2; and I believe Gary Chapman is 10 or 10 1/2; and then I'm 5 percent.

Mr. Stockton owned approximately 57 percent -- or 58.  Like I said, it's a percentage plus or minus on all of those.

Q.   Understand.  Do you still own 5 percent?

A.   Yes.

Q.   Does Gary still own 10 1/2?

A.   Yes.

Q.   Does Susan still own 8 1/2?

A.   Yes.

Q.   Does Harvey own 8 1/2 still?

A.   Yes.

Q.   Mr. Bynum still owns 7 1/2?

A.   Yes.  And like I said, those percentages are estimates.

Q.   And the estate of Tony Stockton owns currently

Exhibit 1 Page 222 of 263

14

57 percent.

A.    Approximately 57 percent.

Q.    Now, you started out as collections.  Does that just mean someone's behind on a debt to the bank, and you pick up a phone and call them, or is it something more than that?

A.    That's pretty much what it is, yes.  Or we'll go visit.

Q.    Did you call all customers, or just certain officers' debts that were collected?  How did you determine which customers you were going to call?

A.    Past due accounts.

Q.    Regardless of whether they were Tony's accounts, Susan's accounts, somebody else?

A.    All loan officers.

Q.    Okay.  Do you ever recall calling on Danny Kizzia for an overdue account?

A.    I don't believe so, no.

Q.    Okay.  Would that indicate to you -- let me get a time frame.  When were you --

A.    I was a collector from 1998 to 2000.

Q.    Okay.  Not very long.

A.    No.

Q.    And after collections, what was your next job description?

Exhibit 1 Page 223 of 263

# EXHIBIT "R"

Exhibit 1 Page 224 of 263

**SEWELL & TAYLOR LLP**
CERTIFIED PUBLIC ACCOUNTANTS
5407 S. LEWIS AVENUE, SUITE 300
TULSA, OKLAHOMA 74105-6562
(918) 746-1811
-FACSIMILE-
(918) 746-1812

DAVID C. SEWELL
ORBIE D. TAYLOR

MEMBERS-AMERICAN INSTITUTE
OF CERTIFIED PUBLIC ACCOUNTANTS

September 25, 2018

The Board of Directors
FORT GIBSON STATE BANK
Fort Gibson, Oklahoma

At President Matt Hendrix's request, we have performed a forensic audit of loans administered by Vice President and Loan Officer Susan Chapman (Chapman) at Fort Gibson State Bank.

### Background

At the conclusion of our Directors' Examination on June 21, 2018, we discussed an unusual transaction of ▓▓▓▓▓▓▓▓▓▓ with Matt Hendrix regarding a loan that is being administered by Chapman. Matt Hendrix said he would check it out.

After we left the Bank, some employees started telling the Vice President and Compliance Officer, Linda Lindley, about other unusual loan transactions which Chapman was making. Linda told Matt Hendrix to come to her office to hear what the employees were telling her.

Shortly thereafter, Matt Hendrix, President, told us Chapman was terminated as of June 25, 2018 and requested we perform a forensic audit of her loans.

### Executive Summary



Exhibit 1 Page 225 of 263

# EXHIBIT "S"

Exhibit 1 Page 226 of 263

Exhibit 1 Page 227 of 263



**FIRSTAR** BANK.

**510 N. Main Street**
**Muskogee, OK 74401**

Return Service Requested

00000018 TF466N06082205302100 01 000000000 0000020 00

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

1000

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

108 EBIRSP1 74423



**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested



00000018 TF466N06082205302100 01 000000000 0000020 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

June 07, 2022

## PAYMENT DUE NOTICE

Billing Notice - A payment on your loan will be due. The amount due is itemized on the notice. Thank you.

### ACCOUNT INFORMATION

| | |
|---|---|
| Account Number: | XXXXXX0169 |
| Current Balance: | $273,636.28 |

### PAYMENT INFORMATION

| | |
|---|---|
| Due Date: | 07/27/2018 |
| Escrow Balance: | $0.00 |
| Past Due: | $78,598.57 |
| Total Billed: | $1,672.31 |
| Late Charge: | $1,337.91 |
| | |
| Total Due: | $81,608.79 |

Remit payments to:  FIRSTAR BANK
200 S Lee Street
PO Box 130
Fort Gibson OK 74434



Exhibit 1 Page 228 of 263

MEMBER
FDIC





FIRSTAR BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000035 TF466N020822205312900 01 000000000 0-000039 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

108 AES1SSP1 74423

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

Exhibit 1 Page 229 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000070 TF466N01082205312500 01 000000000 0000076 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

108 LBIQSPi 74423

Exhibit 1 Page 230 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**◆ FIRSTAR** BANK.

**510 N. Main Street**
**Muskogee, OK 74401**

Return Service Requested

00000029 TF466N12082105360900 01 000000000 0000031 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005



108 KBIQSP1 74423

Exhibit 1 Page 231 of 263

Exhibit 1 Page 232 of 263

**◆ FIRSTAR** BANK.

**510 N. Main Street**
**Muskogee, OK 74401**

Return Service Requested

00000103 TF466N11062105302500 01 000000000 0000108 001



DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

FIRST-CLASS MAIL
PRESORTED
**U.S. POSTAGE PAID**
FIS Output Solutions

108  J8IQSP1  74423

Exhibit 1 Page 233 of 263

FIRSTARBANK
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000024 TF466N10082105312300 01 000000000 000D027    OC

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

108 HBIQSP1 744    3

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000026 TF466N040B210535352100 01 000000000 0000027 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

15 CHETNP1 74423



0000

Exhibit 1 Page 234 of 263

TULSA OK 740

16 AUG 2021 PM 3 L

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

**510 N. Main Street
Muskogee, OK 74401**

Return Service Requested

00000058 TF466N08072105312900 01 000000000 0000063 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

15  FMAGNP1  74423

Exhibit 1 Page 235 of 263



FIRSTAR BANK.
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000030 TF466N070821053002400.01 000000000 0000030 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

Exhibit 1 Page 236 of 263

000000



**FIRSTAR BANK.**
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000028 TF466N061521053910000 01 0000000000 0000032 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

15 EMEBNP1 74423

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

Exhibit 1 Page 237 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

◆ **FIRSTAR** BANK.
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000068 TF466N05082105352200 01 000000000 00000072 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

15 DMEBNP1 74423



000⌁

Exhibit 1 Page 238 of 263



FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

FIRSTAR BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000027 TF466N01082105354300 01 000000000 00000029 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

56 LMAGNP1 74.423



Exhibit 1 Page 239 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

) FIRSTAR BANK

510 N. Main Street
Muskogee, OK 74401

Service Requested

) TF466N12082005353100 01 000000000 0000030

. KIZZIA
95TH ST E
S OK 74423-3005

56 KMGONP1 74423

Exhibit 1 Page 240 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

NK.

0000025 00

0

744423

Exhibit 1 Page 241 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions



**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000054 TF466N0507220531 46800 01 0000000000 0000060 00

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

108 DBIRSP1 74423

000

Exhibit 1 Page 242 of 263

Exhibit 1 Page 243 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions



**FIRSTAR**BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000017 TF466N04082205352800 01 000000000 0000020 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

108 CBIQSP1 74423

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000021 TF466N03082205303000 01 000000000 0000026 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

108 BBIRSP1 74423

Exhibit 1 Page 244 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000104 TF466N030720003S5900 01 0000000000 0000109 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65  BMEBNP1  74423




Exhibit 1 Page 245 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

◆ FIRSTAR BANK.
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000161 TF466N0208200003534400 01 0000000000 0000167001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

55  AMEBNP1  74423



Exhibit 1 Page 246 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000122 TF466N01112000354800 01 000000000 0000126 O01

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

0000122

65 LMIWNP1 74423

Exhibit 1 Page 247 of 263



**FIRSTAR BANK**

510 N. Main Street
Muskogee, OK 74401



NEOPOST          FIRST-CLASS
11/13/2019
US POSTAGE $000.50⁰

ZIP 74954
041 11 2F 395

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

\*L
\*Es
\*Pa
\*To
\*Bi
\*Lt

74423$3005 R001

Exhibit 1 Page 248 of 263



**⬥ FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000032 TF466N12131900355100 01 000000000 0000033 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

65  KMGONP1  74423

Exhibit 1 Page 249 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR BANK.**
510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000078 TF466N110720053653100 01 0000000000 0000084 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65 JKMETNP1 74423

000

Exhibit 1 Page 250 of 263

Exhibit 1 Page 251 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000031 TF466N05082000360400 01 000000000 0000032 001



DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65  DMETNP1  74423

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000029 TF466N07082005352700 01 000000000 0000031 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65 FMGDNP1 74423

Exhibit 1 Page 252 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000091 TF466N08082005353200 01 000000000 0000116 001



DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65  GMGDNP1  74423

Exhibit 1 Page 253 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

**510 N. Main Street**
**Muskogee, OK 74401**

Return Service Requested

00000135 TF466N09082010564100 01 000000000 0000141 0◯1



DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65 HMETNP1 74423

Exhibit 1 Page 254 of 263

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
FIS Output Solutions

**FIRSTAR** BANK.

510 N. Main Street
Muskogee, OK 74401

Return Service Requested

00000031 TF468N040B2000352800 01 000000000 0000033 001

DANIEL KIZZIA
7267 S 95TH ST E
BRAGGS OK 74423-3005

65 CMAGNP1 74423



Exhibit 1 Page 255 of 263

# EXHIBIT "T"

Exhibit 1 Page 256 of 263

## Note, Disclosure, and Security Agreement

| Lender | Borrower | |
|---|---|---|
| FORT GIBSON STATE BANK<br>PO BOX 130 - 200 SOUTH LEE ST<br>FORT GIBSON, OK 74434 | STEVEN L HINDS<br>TAWNYA D HINDS<br>324 N CAMDEN PLACE<br>MUSKOGEE OK 74403 | Loan Number _____ 63702<br>Loan Date 09/02/09<br>Maturity Date 09/17/14<br>Loan Amount 75,629.75<br>Renewal of _____ |

☐ Refer to the attached addendum for additional Borrowers and their signatures.

### Truth-in-Lending Disclosures

| Annual Percentage Rate<br>The cost of my credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 6.0327 % | $ 21,432.38 | $ 75,533.75 | $96,966.13 |

My Payment Schedule Will Be:

"e" means an estimate.

| Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | $ 543.29 | Monthly Beginning - 10/17/09 |
| 1 | $ 64,912.02 | SEPTEMBER 17, 2014 |
| | $ | |
| | $ | |

Demand. ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

Prepayment. If I pay off this note early, I ☐ may ☒ will not have to pay a minimum finance charge.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the additional finance charge.

☒ Late Charge. If a payment is late (more than __10__ days after due) I will be charged THE GREATER OF $20.50 OR 5% OF UNPAID AMOUNT OF PAYMENT

Security. I am giving a security interest in:
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ (brief description of other property) LAND ONLY MUSKOGEE OKLAHOMA

Filing Fees. $ 60.00 _____

Non-filing Insurance. $_____

☐ Required Deposit. The annual percentage rate does not take into account my required deposit.
☒ Assumption. Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
Contract Documents. I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

Promise to Pay. For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 75,629.75 _____,
plus interest from __SEPTEMBER 02, 2009__ at the rate of __6.00__ % per year until __SEPTEMBER 17, 2014__.
Interest accrues on a __Actual/365__ basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is __PURCHASE LAND__.

Payment. I will pay this note as follows:
☐ Interest due

Principal due

☒ This note has __60__ payments. The first payment will be in the amount of $ 543.29 and will be due __10/17/09__. A payment of $ 543.29 will be due on the __17th__ day of each __Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __09/17/14__.

Post-Maturity Interest. Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.

☐ Additional Finance Charge. I also agree to pay a fee of $_____. This fee ☐ is not refundable ☐ may be refundable upon prepayment. This fee will be ☐ paid in cash. ☐ paid pro rata over the term of the loan. ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ Minimum Finance Charge. I agree to pay a minimum finance charge of $_____ if I pay this note off before you have earned that much in finance charges.

☐ Returned Payment Fee. I agree to pay a service charge of $_____ for each payment (check or automatic payment) returned unpaid.

☐ Other Terms.

### Itemization of Amount Financed

| | |
|---|---|
| Amount given to me directly | $_____ |
| Amount paid on my (loan) account | $_____ |
| | $_____ |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | |
| To insurance companies | $_____ |
| To public officials | $_____ |
| __SEE SEPARATE ITEMIZATION__ | $_____ |
| | $_____ |
| (less) Prepaid Finance Charge(s) | $_____ |
| Amount Financed | $_____ |

### Security Agreement

Security. To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:
LAND ONLY MUSKOGEE OKLAHOMA

☒ All Debts. The Property will also serve as collateral for all present and future debts.

☐ Other Security. This Loan Agreement is secured by

ExPerT' Simple Interest Note, Disclosure, and Security Agreement

Consumer Loan - Not for Open End Credit

Exhibit 1 Page 257 of 263

CUSTOMER_____ **FT. GIBSON STATE BANK**

LOAN #_____ DATE _____

0 Prin/Int._____ 8 Diff. Int._____

Extra Prin. _____ 11 Late Chg. _____

2 Interest_____ 15 Advance _____

Total_____Payoff_____By_____

⑈7740⑈0000⑈

6:24-cv-00243-JFH-GLJ   Document 2-1   Filed in ED/OK on 07/12/24   Page 258 of 263

Exhibit 1 Page 258 of 263

# EXHIBIT "U"

Exhibit 1 Page 259 of 263

STATE OF OKLAHOMA
COUNTY OF MUSKOGEE SS
I, POLLY IRVING, County clerk, of the County and State aforesaid, hereby Certify that this is a true and correct copy of an instrument filed in the Office of County Clerk of Muskogee County.
02-28-2024 , Witness my hand and Seal this 09-03-2009
BY POLLY IRVING, COUNTY CLERK        DEPUTY

I-2009-010061 Book 4010 Pg: 126
09/03/2009 3:15 pm    Pg 0126-0129
Fee:  $ 19.00    Doc:    $ 0.00
Karen Anderson - Muskogee County Clerk
State of Oklahoma

**TREASURER'S ENDORSEMENT**
I hereby certify that I received $ 75.70 and issued receipt No. 524 therefore in payment of mortgage Tax on the within Mortgage. Dated this 3rd day of September 20 09.
Glen Scott, County Treasurer
By _____ Deputy

—— State of Oklahoma —— ———— Space Above This Line For Recording Data ————

After recording return to:    FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .....SEPTEMBER 02, 2009......... and the parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR:    STEVEN L HINDS
TAWNYA D HINDS                Wife
324 N CAMDEN PLACE
MUSKOGEE OK   74403

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER:    FORT GIBSON STATE BANK
PO BOX 130 - 200 SOUTH LEE ST
FORT GIBSON, OK 74434

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, with the power of sale, the following described property:
THE NORTH 614 FEET OF THE SW/4 OF THE NW/4 LESS THE SOUTH 218 FEET OF THE WEST 720 FEET THEROF IN SECTION 15, TOWNSHIP 14 NORTH, RANGE 19 EAST OF THE INDIAN BASE AND MERIDIAN, MUSKOGEE COUNTY, OKLAHOMA

The property is located in ...MUSKOGEE............................................ at ..........................................
(County)

..SOUTH 55TH ST EAST....................., MUSKOGEE............................., Oklahoma .74403..........
(Address)                (City)                (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ..75,629.75.................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances

Exhibit 1 Page 260 of 263

I-2009-010061  Book 4010  Pg:  127
09/03/2009 3:15 pm    Pg 0126-0129
Fee:   $ 19.00    Doc:    $ 0.00
Karen Anderson - Muskogee County Clerk
State of Oklahoma

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

13. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document

Exhibit 1 Page 261 of 263

I-2009-010061 Book 4010 Pg: 128
09/03/2009 3:15 pm   Pg 0128-0129
Fee:   $ 19.00    Doc:    $ 0.00
Karen Anderson - Muskogee County Clerk
State of Oklahoma

Security Instrument and any related documents, including the power to sell the Property. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

Lender has the power to sell the Property. If Lender invokes the power of sale, Lender shall give notice in the manner required by applicable law to Mortgagor and any other persons prescribed by law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied to the manner prescribed by applicable law.

15. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, (not to exceed 15% of the unpaid debt after default), court costs, and other legal expenses. This amount does not include attorneys' fees for a salaried employee of the Lender. This Security Instrument shall remain in effect until released.

16. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

17. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

18. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, M...

Exhibit 1 Page 262 of 263

I-2009-010061  Book 4010  Pg: 129
09/03/2009 3:15 pm    Pg 0126-0129
Fee:    $ 19.00    Doc:    $ 0.00
Karen Anderson - Muskogee County Clerk
State of Oklahoma

Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

22. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

23. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

24. **WAIVER OF APPRAISEMENT.** Appraisement of the Property is waived or not waived at Lender's option. Lender shall exercise this option before or at the time judgment is entered in any foreclosure.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Purchase Money Mortgage.** The Secured Debt includes money which is used in whole or in part to purchase the Property.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ............................................

☐ **Additional Terms.**



**NOTICE TO MORTGAGOR: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW LENDER TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Exhibit 1 Page 263 of 263