IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

JACKIE GAIL CURTIS, *et al.*,      )
                                         )
           Plaintiffs,        )
                                          )
       v.                    )       Case No. 24-CV-243-JFH-GLJ
                                          )
FIRSTAR FINANCIAL CORP. *et al.*,    )
                                          )
           Defendants.      )

## REPORT AND RECOMMENDATION

Plaintiffs filed this action alleging claims of racketeering and conspiracy in violation of the Racketeer Influenced and Corrupt Organization Act "(RICO") pursuant to 18 U.S.C. § 1961, *et seq.* and various state claims. On September 6, 2024, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 18]. Before the Court now is Defendant Susan Chapman's Motion for Summary Judgment [Docket No. 96] and Plaintiffs' Motion to File their Response Brief to Susan Chapman's Motion for Summary Judgment Out of Time Due To Excusable Neglect [Docket No. 101]. For the reasons stated below the undersigned Magistrate Judge recommends that the Motion for Leave to File Out of Time [Docket No. 101] be GRANTED and that the Motion for Summary Judgment [Docket No. 96] be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL BACKGROUND

Plaintiffs (Jackie Gail Curtis, Donnie R. Yarbrough, Cathy Yarbrough, Colton Yarbrough, Dalton Yarbrough, Jessica Yarbrough, individually and on behalf of herself

and all others similarly situated, Garret Kizzia, Robert Bruce Fisher, Sheila Kizzia, individually and as the personal representative of the estate of Billy Terrill Kizzia, Dan Ross, Danny Kizzia, Rita Ballinger, the estate of Joseph Schmidgall, Steven Hinds, on behalf of himself and all others similarly situated, and Tawnya Hinds) filed this action in the District Court for Muskogee County, Oklahoma against Defendants Firstar Financial Corporation, Firstar Bank, Fort Gibson State Bank ("FGSB"), Tony Stockton, Fort Gibson Bancshares, Inc., Three Rivers Bankshares, Inc, Susan Chapman individually and as vice president of FGSB, and Matt Hendrix, individually and as an officer of FGSB, alleging Defendants, collectively, conspired to steal Plaintiffs' money and property rights. Docket No. 2-1, at ¶¶ 1-35.

Particularly, Plaintiffs allege Susan Chapman, Matt Hendrix, and Tony Stockton, through their association with FGSB, "directed and controlled secret agreements with each other to defraud and steal money from over 140 bank customers in an amount in excess of four million seven hundred thousand dollars." Docket No. 2-1, p. 3. Plaintiffs assert the fraudulent conduct included, *inter alia*, fabricating loans in Plaintiffs' names for personal use by Defendants, advancing money on loans without authorization and fabricating receipts of said advances, diverting bank income and proceeds on collateral property, altering amounts and terms of loans, and forging signatures to cause loan proceeds to be paid to Defendants. Docket No, 2-1, at ¶ 35.

Plaintiffs asserted a total of eight causes of action, two of which were brought as a class action. *Id.* at ¶¶ 39-115. On January 3, 2025, Plaintiffs dismissed the class action claims against all Defendants. Docket No. 60. The claims of Plaintiffs Jessica Yarbrough,

Rita Ballinger, the Estate of Joseph Schmidgall, and Sheila Kizzia, individually and as administrator of the Estate of Billy Terril Kizzia, were dismissed on June 12, 2025, and, through a series of dismissals, the remaining Plaintiffs' claims against all other Defendants, except Defendant Susan Chapman, individually and as Vice President of FGSB, were dismissed. Docket Nos. 46, 60, 81 & 86. As such, only six causes of action remain, all alleged against Defendant Chapman: substantive racketeering in violation of 18 U.S.C. §§ 1962(c) & 1964 (Count I), (ii) racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) & 1964 (Count II), (iii) substantive racketeering in violation of 18 U.S.C. § 1962(c) (Count III), (iv) breach of contract (Count IV), (v) fraud (Count V), and (vi) intentional infliction of emotional distress (Count VI).

## PRELIMINARY MATTERS

_Motion to File Response Brief out of Time._ Defendant Susan Chapman's Motion for Summary Judgment was filed on January 9, 2026. Docket No. 96. Plaintiffs filed their response brief seven days out of time on January 30th, 2026. Docket No. 99. On February 4, 2026, Defendant Chapman filed her reply brief highlighting that Plaintiffs' reply brief was untimely. Docket No. 100. Seven days later Plaintiffs filed a motion requesting leave to file their response brief out of time.

Fed. R. Civ. P. 6(b)(1)(B), provides that "the court may, for good cause," extend a deadline after it has expired "if the party failed to act because of excusable neglect." The determination as to "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." _Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd. P'ship_, 507 U.S. 380, 395

(1993). Factors to be considered include "the danger or prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Plaintiffs maintain: (i) Defendant Chapman will not be prejudiced because she received a twenty-one day extension to file her motion for summary judgment to permit her counsel to spend time with his family, (ii) the seven day delay was only a third of the extension permitted to Defendant Chapman and would not impact any other previously set deadlines, (iii) Plaintiffs mis-calendared their response deadline "as a direct result of the several deadline extensions requested by the opposing party"; and (iv) Plaintiffs acted in good faith as exemplified by their lack of objection to Defendant Chapman's prior requests for extension during the holiday season. Docket No. 101, at pp. 3-4.

"[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect, [but] it is clear that 'excusable neglect under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant. . . . ." *Pioneer Inv. Servs. Co.*, 507 U.S. at 392. "[A]n inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (citing *United States v Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)). Plaintiffs' explanation as to why they missed the deadline is insufficient. However, inasmuch as it does not appear Plaintiffs acted in bad faith and Defendant Chapman has not been prejudiced by the delay, the undersigned Magistrate Judge finds and recommends

Plaintiffs' Motion to File their Response to Susan Chapman's Motion for Summary Judgment Out of Time Due to Excusable Neglect [Docket No. 101] be GRANTED and that Plaintiffs' Response to Susan Chapman's Motion for Summary Judgment [Docket No. 99] be deemed timely filed.

*LCvR 56.1.* Pursuant to Local Civil Rule 56.1(c), the "response brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR 56.1(c) (emphasis in original). Where the nonmovant fails to use the procedures set forth under LCvR 56.1(c), "[a]ll material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment[.]" LCvR 56.1(e). Plaintiffs' Response to Susan Chapman's Motion for Summary Judgment [Docket No. 99] fails to respond to or address, by correspondingly numbered paragraphs or otherwise, Defendant Chapman's undisputed facts. Docket No. 99. Indeed, although the response brief includes its own section of undisputed facts, it does not set forth whether the undisputed facts as provided in Defendant Chapman's Motion are disputed by Plaintiffs. As such, the undersigned Magistrate Judge finds Defendant's twelve (12) undisputed material facts are hereby deemed admitted and are accepted as true, to the extent they are supported by the evidence presented.

This determination, however, does not end the Court's inquiry. "Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If

Defendant fails to meet its "burden of demonstrating that no material issues of fact remain for trial . . . summary judgment is not appropriate, for '[n]o defense to an insufficient showing is required.'" *Reed v. Bennet*, 312 F.3d 1190, 1195 (10th Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970)).

## FACTUAL BACKGROUND

The undisputed facts in this case reflect that Defendant Susan Chapman was a loan officer at FGSB beginning in March 1999. Docket No. 96-2, at ¶ 3. Defendant Chapman's employment with FGSB was terminated on June 25, 2018. Docket No. 96, at p. 2, ¶ 3; Docket No, 96-2, at ¶ 1. Since her termination, Defendant Chapman has not (i) been employed or affiliated with FGSB or its successors, Firstar Financial Corporation and Firstar Bank, (ii) communicated with or coordinated with FGSB, Firstar Financial Corporation, Firstar Bank, Matt Hendrix, or any of the other Defendants initially named in this suit, and (iii) has not advised Plaintiffs regarding any financial matters. Docket No. 96, at p. 2, ¶¶ 3, 4, & 6. Prior to merging with Firstar Bank, but no later than October 21, 2019, FGSB informed Plaintiffs of amounts which were overdrawn and/or improperly advanced from their accounts. *Id*; Docket No. 96, at p. 2, ¶ 7; Docket No. 96-2, at ¶ 14. Plaintiffs filed this lawsuit on February 20, 2024. Docket No. 96, at p. 2, ¶ 8; Docket No. 2-1.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a fact is material when it 'might

affect the outcome of the suit under the governing [substantive] law.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (alterations in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157. "A movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claims." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 323). Where a movant points to a lack of evidence, "the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor." *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1167 (D. Colo. Mar. 28, 2016) (citing *Anderson*, 477 U.S. at 248). "[T]he nonmovant . . . may not simply rest upon its pleadings [but must] . . . go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. . . . [T]he facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. (internal citations omitted).

## ANALYSIS

*Substantive RICO Claims: 18 U.S.C. 1962(c)*. Defendant Chapman asserts she is entitled to summary judgment on Plaintiffs' substantive RICO claims (Counts I & III) because (i) they are barred by the statute of limitations, (ii) Plaintiffs fail to allege a RICO

"enterprise" distinct from the RICO "person," and (iii) Plaintiffs voluntarily dismissed all parties with whom Defendant Chapman allegedly conspired. The undersigned Magistrate Judge agrees with the first assertion and recommends summary judgment be granted in Defendant Chapman's favor on Counts I and III.

The statute of limitations for a civil RICO claim is four years. *Robert L. Kroenlein Trust ex rel. Alden v. Kirchefer*, 764 F.3d 1268, 1281 (10th Cir. 2014). Plaintiffs argue that the four-year limitation period does not begin to accrue until the Plaintiffs "discovered or reasonably should have discovered all the elements of the cause of action: the existence and source of the injury; and that the injury was part of a pattern of racketeering." Docket No. 99, at p. 9 (citing *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820 (10th Cir. 1990)). However, the Supreme Court overruled the "injury and pattern discovery rule" set forth in *Bath* twenty-six years ago and in doing so held that a civil RICO claim either accrues with the discovery of the injury or when the injury occurs—not when the plaintiff discovers both the injury and the pattern of RICO activity. *Rotella v. Wood*, 528 U.S. 549, 555, 558 (2000) ("The decision in *Khler* left two candidates favored by various Courts of Appeals: some form of the injury discovery rule (preferred by a majority of Circuits to have considered it), and the injury and pattern discovery rule. Today, guided by principles enunciated in *Klehr*, we eliminate the latter. . . . [I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.") (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)); *Robert L. Kroenlein Tr.*, 764 F.3d at 178 ("[A] plaintiff need not know all the elements required to bring a legal claim under civil RICO to start the limitations period

running. Thus, a RICO victim need not have actual knowledge of exactly who committed the RICO predicate act resulting in the injury for a civil RICO claim to accrue.").

Following *Rotella* a civil RICO claim accrues from the discovery of the injury (the injury-discovery rule) or the date when the injury occurred even where Plaintiffs are unaware of the injury (injury occurrence rule). *See Id.* at p. 1275. "The Tenth Circuit has not yet decided which rule applies in civil RICO cases." *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, 2025 WL 872972, at *14 (D.N.M. Mar. 19, 2025); *Robert L. Kroenlein*, 764 F.3d at 1277 ("We need not decide in this case which accrual governs civil RICO claims because Kroenlein's claims are barred under either the injury-occurrence or the injury-discovery rule.").

"In applying the injury-discovery rule, we ask not only when a plaintiff actually discovers his injury, but also when a reasonably diligent plaintiff would have discovered the injury." *Robert L. Kroenlein Tr.*, 764 F.3d at 1279 (citing *Rotella*, 528 U.S. at 552-53). Whether a reasonably diligent plaintiff would have discovered the injury is an objective inquiry, and the statute of limitations will not begin until "plaintiff either has actual or inquiry notice of the injury." *Id.* at 1279-80 (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 151, 151 (2d. Cir. 2012)). "[A] plaintiff is on inquiry notice whenever circumstances exist that would lead a reasonable [plaintiff] of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury." *Matthews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 251 (3d Cir. 2001). Again, "[t]he plaintiff[s] need not discover *all* elements of the fraudulent scheme to be on notice of the potential fraud." *Robert L. Kroenlein Tr.*, 764 F.3d at 1280.

Once inquiry notice has been established such that a reasonable person knows of facts that would suggest they have been injured, a duty to diligently investigate that injury arises. *Id.* Where a plaintiff investigates or begins to investigate when said duty arises, the Court "must determine 'when a reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence, and the statute of limitations begins to run on that date.'" *Id.* (quoting *Christie's Int'l PLC*, 699 F.3d at 153.). However, where no investigation occurs, knowledge of the injury is imputed to the day the duty arose. *Id.* In short, where (i) a plaintiff is put on inquiry notice of facts suggesting to a reasonable person that they have had been injured, and (ii) the plaintiff fails to inquire into said facts, the statute of limitations for a civil RICO claim begins to run on the day Plaintiff had inquiry notice.

"The Supreme Court define[s] a civil RICO 'injury' as the 'harm from the predicate acts' that constitute the racketeering activity." *Id.* (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 485 (1985)). Here, Plaintiffs' response brief asserts the RICO predicate acts were wire fraud, mail fraud, and bank fraud; however, Plaintiffs' petition asserts only the predicate act of mail fraud. Docket No. 99, at p. 12; Docket No. 2-1, at pp. 35-42. Regardless, the harm resulting from these predicate acts would be financial losses resulting from Defendant Chapman's alleged fraud. *See Robert L. Kroenlein Tr.*, 764 F.3d at 1278.

Defendant Chapman asserts all Plaintiffs were on notice of their injuries no later than October 21, 2019 and, in support of this, cites to an affidavit submitted by Defendant Chapman in which she attests Plaintiff Jackie Gail Curtis informed her that, prior to FGSB merging with Firstar Bank, all of the plaintiffs were called into FGSB and notified of any

improper advances or withdrawn amounts attributable to their accounts. Docket No. 96, at p. 7; Docket No. 96-2, at ¶ 14. Plaintiffs do not contest this fact, object to this evidence, or attach evidence to the contrary. Additionally, Plaintiffs do not set forth any evidence indicating Plaintiffs' ever inquired into the improper advances or withdrawn amounts. However, Plaintiffs maintain: (i) "[i]t appears genuine issues of fact also may exist as to whether plaintiffs 'exercised reasonable diligence' in attempting to uncover the fraud[,]" (ii) "defendant is still 'chargeable' with the state offense within the meaning of 18 U.S.C. § 1961(1)(A)[,]" and (iii) they "assert the doctrine of fraudulent concealment." Docket No. 99 at pp. 9-10 (citing *United States v. Licavoli*, 725 F.2d 1040, 1046-47 (6th Cir. 1980). Plaintiffs have not put forth any evidence to establish that genuine issues of fact exist as to whether Plaintiffs exercised reasonable diligence. *Licavoli*[1] addresses criminal RICO—not civil—and Plaintiffs fail to meet their burden to provide evidence of fraudulent concealment sufficient to withstand a motion for summary judgment. *Tunnell v. State Farm Fire & Casualty Co.*, 2024 WL 3606683, at *4 ("Plaintiff bears the burden to provide evidence of fraudulent concealment sufficient to withstand a motion for summary judgment.") (citing *Williams v. Borden, Inc.*, 637 F.2d 731, 739 (10th Cir. 1980)); *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1212 (W.D. Okla. 2021) (noting Plaintiffs "must not only show that [they] did not know the facts constituting a cause of action, but

---

[1] Particularly, *Licavoli* analyzes when a state crime may serve as a predicate act for a defendant to be convicted under RICO. 725 F.2d 1040, 1045-46 ("In order for a state crime, such as murder or conspiracy to serve as a predicate act, it must be 'chargeable under state law and punishable by imprisonment for more than one year' under 18 U.S.C. § 1961(1)(A). . . . Courts have held that regardless of the running of the state statute [of limitations] the defendant is still 'chargeable' with the state offense within the meaning of 18 U.S.C. § 1961(1)(A).").

that [they] exercise[d] reasonable diligence to ascertain said facts.") (internal quotation marks omitted).

Plaintiffs were put on inquiry notice of their injuries no later than October 21, 2019, and the record contains no facts indicating Plaintiffs made any investigation or inquiry into the circumstances surrounding their injury Therefore, under the injury-discovery rule, the four-year statute of limitations for Plaintiffs' civil RICO claims began to run on October 21, 2019. Plaintiffs filed this action four years, three months, and thirty days later on February 20, 2024.[2] *See* Docket No. 2-1.

---

[2] The undersigned Magistrate Judge notes that the expert report of Todd Cuffaro asserts Firstar Bank sent demands for payment on fraudulent loans throughout 2020 which Mr. Cuffaro maintains constitute mail fraud. Docket No. 99-3, at p. 20. "[S]ome Circuits have adopted a 'separate accrual' rule in civil RICO case, under which the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act. But . . . plaintiff[s] cannot use an independent new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr*, 521 U.S. at 189-90. Plaintiffs do not argue that Firstar Bank's "mail fraud" implicates the "separate accrual rule" such that their civil RICO claims against Defendant Chapman could be said to have accrued at a later date. In fact, Plaintiffs do not contest Defendant Chapman's evidence indicating Plaintiffs' civil RICO claims accrued at the latest on October 21, 2019. Rather, Plaintiffs argue the statute of limitations was tolled due to fraudulent concealment. Moreover, other than Mr. Cuffaro's report, which indicates he reviewed Firstar Bank's demands for payment, Plaintiffs do not attach any evidence that a predicate act occurred after October 21, 2019, and, even if they had, this would not reset the limitations clock as virtually all of the alleged predicate acts in this case occurred before 2019. *See Robert K. Kroenlein Tr.*, 764 F.3d at 1271-72 & 1280 (finding statute of limitations began to run in the fall of 2005 when the plaintiff became first aware of the injury despite the defendant engaging in wire fraud between 2005-2007); *San Miguel Hospital Corp. v. Publix Supermarket, Inc.*, 2025 WL 872972, at *20 (D.N.M. Mar. 19, 2025) ("Plaintiff pled that the vast majority of alleged illegal acts or misrepresentations by defendants occurred well before 2019 and stopped well before 2019. . . . [E]ven if Plaintiff had shown a predicate act occurred after October 16, 2019, this would not restart the limitations clock. . . . Any acts occurring in or after 2019 do not appear to be independent acts."); *Klehr*, 521 U.S. at 190 ("[T]he Klhers may point to new predicate acts that took place after August 1989 . . . . But that fact does not help them for . . . they have not shown how any new act could have caused them harm over and above the harm that the earlier acts caused.").

Hence, Plaintiffs' civil RICO claims are barred by the statute of limitations under the injury-discovery rule. Likewise, under the injury-occurrence rule—where the statute of limitations begins to run when the injury occurs regardless of Plaintiffs' knowledge—Plaintiffs' claims are barred as logic dictates the injuries must have occurred prior to their discovery. The undersigned Magistrate Judge therefore finds Plaintiffs' substantive RICO claims, Counts I and III, are barred by the four-year statute of limitations and recommends summary judgment be granted in favor of Defendant Chapman on these counts.[3] *See Whittington v. Moschetti*, 2009 WL 1010832, at *4 (D. Colo. Mar. 3, 2009) ("Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to plaintiff to establish a later accrual date or to show that there is a basis to toll the accrual date.") (citing *Aldrich v. McCulloch Props. Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

<u>*RICO Conspiracy.*</u> "Like the statute of limitations under the other civil RICO provisions, the statute of limitations for civil RICO conspiracy claims is four years[, and] . . . the [statute of limitations] analysis for civil RICO conspiracy claims is the same as that for [substantive] civil RICO claims brought under 18 U.S.C. § 1962(c)." *Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F. Supp. 2d 970, 983 (S.D. Iowa 2006) (citing *Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F. Supp. 60, 65 (D. Mass. 1996)); *Broccoli v.*

---

[3] Having found Defendant Chapman is entitled to summary judgment on Plaintiffs' RICO claims because no material issues of fact remain for trial as it pertains to whether these claims are time barred, in the interest of judicial economy the undersigned Magistrate Judge declines to delve into Defendant Chapman's arguments that (i) Plaintiffs fail to identify and provide evidence of a distinct RICO "person" and RICO "enterprise," and (ii) Plaintiffs cannot maintain an action against Defendant Chapman in light of their voluntary dismissal, with prejudice, as to the other alleged conspirators. In the event the District Judge finds Plaintiffs RICO claims are not barred by the statute of limitations the Motion can be re-referred for a supplemental Report and Recommendation to address Defendant Chapman's arguments as they relate to these claims.

*Ashworth*, 2024 WL 1199549, at *7 n. 4 (S.D.N.Y. Mar. 20, 2024); *See also Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (noting, in the context of a motion to dismiss, that "[i]f a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."). The statute of limitations analysis above applies here, and the undersigned Magistrate Judge thus finds Plaintiffs RICO conspiracy claim under 18 U.S.C. § 1962(d), Count II, is barred by the four-year statute of limitations and recommends summary judgment be grant on this claim.

<u>State Law Claims.</u> Plaintiffs' state claims for breach of contract, fraud, and intentional infliction of emotional distress, Counts IV, V, and VI, respectively, remain. Defendant Chapman asserts she is entitled to summary judgment on these claims as well. However, the undersigned Magistrate Judge finds that the Court should decline to exercise supplemental jurisdiction over these claims.

The concept of supplemental jurisdiction is found in 28 U.S.C.A § 1367(a) which provides, in pertinent part:

> in any civil action which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Nonetheless, "Section 1367(c) enables a federal district court to forgo exercising supplemental jurisdiction over a related state law claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) (quoting 28 U.S.C. § 1367(c)(3)). A federal district court should consider at every stage of the litigation "the value of judicial economy, convenience,

fairness and comity" to determine the appropriateness of maintaining jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (superseded on other grounds as recognized in *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)). "When all federal claims have been dismissed, the court may, and *usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *see also Gatson v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (affirming district court's decision to decline supplemental jurisdiction over state law negligence claim where summary judgment was granted as to the federal claims).

Moreover, the Court has experienced unprecedented caseloads and jurisdictional complexities in the past few years. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 635 (2022) (describing the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt v. Oklahoma*, 591 U.S. 894 (2020)); *United States v. Budder*, 601 F. Supp. 3d 1105, 1114-15 (E.D. Okla. 2022) (collecting cases where federal courts "noted *McGirt's*[4] tremendous impact"). Consequently, because of the administrative demands on this Court following the *McGirt* decision, the state-law issues that are best resolved by Oklahoma courts, and the general disfavor for retaining supplemental jurisdiction over state-law claims prior to trial, the undersigned Magistrate Judge finds declining to exercise supplemental jurisdiction appropriate in this case.[5]

---

[4] *McGirt v. Oklahoma*, 591 U.S. 894 (2020)
[5] Should the District Judge disagree and find it appropriate to retain jurisdiction over the state law claims, the Motion can be re-referred for a supplemental Report and Recommendation to address Defendant Chapman's arguments as they relate to these claims.

-15-

This case was removed from the District Court of Muskogee County, Oklahoma. Thus, the Court may dismiss Plaintiffs' remaining claims or remand the case to the state court for further proceedings. *See Sutton v. Kief Public Schools*, 2022 WL 17406373, at *9 (N.D. Okla. Dec. 2, 2022); *Robles v. City of Fort Wayne*, 113 F.3d 732, 738 (7th Cir. 1997) ("[I]t is clear that a district court retains the discretion to dismiss as well as to remand such claims."). Because "remand may best promote the values of economy, convenience, fairness and comity[,]" the undersigned Magistrate Judge recommends that the state law claims be remanded. *Carnegie-Mellon Univ.*, 848 U.S. at 353. Finally, to the extent Defendant Chapman's reply brief [Docket No. 100] includes a motion for sanctions based on Plaintiffs' failure to comply with the Federal Rules and this Court's Local Civil Rules, the undersigned Magistrate Judge finds it should be denied for failing to comply with Loc. Civ. R. 7.1(b) requiring each motion to be a separate pleading.

## CONCLUSION

Accordingly, the undersigned hereby RECOMMENDS that: (i) Plaintiffs' Motion to File Their Response to Susan Chapman's Motion for Summary Judgment Out of Time Due to Excusable Neglect [Docket No. 101] be GRANTED; (ii) Defendant Susan Chapman's Motion for Summary Judgment [Docket No. 96] be GRANTED IN PART, insofar as Defendant Chapman challenges Plaintiffs' federal claims and DENIED IN PART to the extent that Defendant Chapman challenges Plaintiffs' state claw claims; (iii) Plaintiffs' state law claims for breach of contract, fraud, and intentional infliction of emotional distress be REMANDED to the District Court of Muskogee County, Oklahoma, and (iv) Defendant Chapman's request for sanctions be DENIED. Any objections to this

Report and Recommendation must be filed within fourteen (14) days. Any objections and responses shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 25th day of June 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**